## IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN

**ESTATE OF GEORGE BERNARD WORRELL, JR.**

> **Plaintiff,**

**v.**

**THANG, INC., GEORGE CLINTON, SONY MUSIC ENTERTAINMENT, UNIVERSAL MUSIC GROUP, WARNER BROTHERS RECORDS, HDH RECORDS, WESTBOUND RECORDS AND SOUNDEXCHANGE, INC.**

> **Defendants,**

**Case No.**

**Hon.**

---

DANIEL D. QUICK (P48109)
Dickinson Wright PLLC
Attorneys for Plaintiff
2600 W. Big Beaver Road, Suite 300
Troy, MI 48084
(248) 433-7200 // Fax (844) 670-6009
dquick@dickinsonwright.com

---

## COMPLAINT FOR DECLARATORY RELIEF, INJUNCTIVE RELIEF, ACCOUNTING, AND JURY DEMAND

---

Plaintiff, the ESTATE OF GEORGE BERNARD WORRELL JR. (the "Plaintiff"), by and through its attorneys, Dickinson Wright PLLC, bring this

1

complaint (the "Complaint") against Defendants THANG, INC. (referred to hereafter as "Thang"), GEORGE CLINTON (hereafter "Clinton") ("Thang" and "Clinton" collectively referred to hereafter as "Defendants"), as well as SONY MUSIC ENTERTAINMENT, UNIVERSIAL MUSIC GROUP, WARNER BROTHERS RECORDS and WESTBOUND RECORDS (collectively referred to hereafter as the "Record Label Defendants") and SoundExchange, Inc. ("SoundExchange") and allege as follows:

## I. NATURE OF PLAINTIFF'S CLAIMS

1.     This is an action by Plaintiff, the Estate of George Bernard Worrell Jr., against the Defendants and Record Label Defendants for declaratory relief, accounting and injunction. The Estate of George Bernard Worrell Jr. is administered by George Bernard Worrell's widow, Judith Worrell (hereinafter "Ms. Worrell") who is the sole beneficiary of the estate.

2.     The Record Label Defendants are included in this Complaint in an abundance of caution as they have ownership interest in certain Works (as defined below) which are involved in this case for the reasons set forth below.

3.     Mr. Worrell who was professionally known as "Bernie Worrell" is a former bandmate of Clinton's and collaborated with Clinton as a songwriter, musician, producer, and performer on the majority of songs that were recorded in the 1970s and 1980s by Clinton and various bands and/or musical groups, including

"Parliament" and "Funkadelic," in which Clinton performed with Mr. Worrell and other musicians. The recordings, including audio and audiovisual recordings, jointly created by Mr. Worrell with Clinton, and/or which contain the results of Mr. Worrell's musical and/or vocal performances, or upon which his name, image or likeness appear in connection with Defendants, are hereinafter referred to as the "Works."

4.    The Works have sold millions of copies worldwide and have been reproduced and commercially exploited by Defendants and others, in many formats and media. On information and belief, the Works have generated millions of dollars in revenue.

5.    Despite the commercial success of the Works that were created together with Mr. Worrell, Defendants have refused to pay any royalties or other earnings from the Works to Plaintiff, and have denied any obligation to compensate Plaintiff, or indeed to compensate any of Clinton's other bandmates who Clinton recently had the audacity to describe as mere "side men", with no rights or interests to ownership or any entitlement to share artist royalties or earnings from their recorded work, even though Mr. Worrell and Clinton's other bandmates have been widely recognized as integral members of Parliament and Funkadelic, among other groups, as set forth below.

6.    On or about January 1, 1976, Defendants presented Mr. Worrell with a

recording contract to sign with Thang, Inc.  Mr. Worrell signed and delivered the agreement and Defendants led Mr. Worrell to believe that the contract was fully executed (hereinafter "The Agreement" or "Agreement").

7.     Pursuant to the terms and conditions of the Agreement Mr. Worrell was required to render his services as a musician, songwriter, recording artist and producer, individually and as a member of a group, exclusively to Thang, in the production of phonograph records. As consideration for his services in the creation and performance of recordings, Mr. Worrell was to receive ongoing royalty payments and accountings for all records sold, licensed, or otherwise exploited containing the Works.

8.     On June 24, 2016, Mr. Worrell tragically passed away. In the Last Will of GeorgeBernard Worrell Jr., dated March 10, 2016, and executed in the State of Washington (the "Last Will"), Mr. Worrell conveyed all tangible and intangible property including all intellectual property and rights to royalties to his wife, Ms. Worrell. (A true and correct copy of Mr. Worrell's Last Will is attached to this Complaint as **Exhibit A.)**

9.     On May 1, 2019, Ms. Worrell received "LETTERS TESTAMENTARY" filed May 1, 2019, in the Superior Court of the State of Washington for Whatcom County appointing her the Executrix of Mr. Worrell's will. (A true and correct copy of the May 1, 2019 filed LETTERS

TESTAMENTARY are attached to this Complaint as **Exhibit B.)**

10.    On or about May 10, 2019, Plaintiff filed suit in the State of New York against the Defendants alleging Breach of Contract, Breach of Duty of Good Faith and Fair Dealing, and asking for Accounting and Declaratory Relief seeking payment of royalties and earnings due pursuant to the Agreement for the sale and exploitation of recordings embodying the Works that had been jointly created by Mr. Worrell and Clinton, and which contained Mr. Worrell's musical performances (the "New York Suit."). (A true and correct copy of the complaint in the New York Suit is attached hereto as **Exhibit C.)**

11.    Only after The New York suit was filed did Clinton, the sole owner and officer of Thang, Inc., unbeknownst to Mr. Worrell or Plaintiff, claim that he never countersigned the Agreement. Shockingly, in the New York Suit, Defendants submitted sworn testimony subject to the penalty of perjury that they did not believe that any contract existed between themselves and Mr. Worrell, as Clinton declared he had never signed the proposed written Agreement. (A true and correct copy of Clinton's Declaration is attached hereto as **Exhibit D).**

12.    Plaintiff first became aware of Defendants' claim that no contract existed between themselves and Mr. Worrell shortly after George Clinton's deposition in another matter on May 10, 2019.

13.    In 2021, the New York Supreme Court ruled that the Plaintiff and

Defendants did not have a contract due to the lack of bilateral execution—specifically, due to Clinton's declaration that he never signed the Agreement (the "New York Order"). The New York Supreme Court further determined that any testimony on the Plaintiff's behalf would be a violation of New York's Dead Man statute.

14.     Defendants' repudiation of the agreement with Mr. Worrell was a greed-driven attempt to get away without sharing any royalties or earnings from Works that Clinton and Mr. Worrell created together.  It is entirely wrong for Clinton to deny that Mr. Worrell played a key role in the creation, performance, and success of the Works, and it is despicable for Clinton to now claim that Clinton alone was the artist and sole creator of all Works recorded by the musical groups, including but not limited to Parliament and Funkadelic, and that he is therefore the only person entitled to any royalties or earnings from the recordings of those Works.

15.     By declaring Mr. Worrell's agreement to be null and void, however, Defendants have left themselves open to another problem – without the existence of that Agreement, any rights or interests purportedly acquired by Thang pursuant thereto, were never actually granted, assigned or transferred by Mr. Worrell to the Defendants, including, but not limited to, Mr. Worrell's copyright interests in the Works, or the rights to use his performance, name, image, and/or likeness in connection with the reproduction and exploitation thereof.

6

16.     Defendants cannot have it both ways. If, as Defendants declared in the New York Suit and as the Court confirmed pursuant to the New York Order, no contract existed between themselves and Mr. Worrell, then Mr. Worrell was at all times a joint owner of the master recordings of the Works whose interest therein now rightfully belongs to Plaintiff.

17.     A work will not be considered a "work made for hire" if it is not created by an employee or was not specially commissioned in an express written agreement by the parties that specifically states that such work is to be work made for hire. Absent a written agreement to the contrary, an independent contractor retains the copyright in his works. *See 17* US.C. 101.

18.     Mr. Worrell was not an employee of Defendants and is not a party to any binding, written agreement with Defendants with respect to the Works. Mr. Worrell never transferred, assigned, or conveyed any copyright ownership interests, performance rights, or right to use his name and image to Defendants in writing and never expressly repudiated his ownership interest in the recordings of the Works.

19.     Nonetheless, Defendants have been exploiting, licensing, and making millions from the master recordings of the Works without ever sharing the profits with their rightful co-owner, Mr. Worrell and Plaintiff. Upon information and belief, Defendants have entered into various agreements purporting to grant rights in the Works, including Mr. Worrell's and Plaintiff's interests therein, to third parties,

without authority to do so.

20.     Defendants have failed to account for and pay royalties and profits as more particularly set forth below to Mr. Worrell and Plaintiff.

21.     Defendants have, and continually fail to keep appropriate records of monies received from the various agreements entered into between Thang, Clinton, or his other affiliated entities, on the one hand, and third-party record companies, distributors, and other parties on the other hand, from which Plaintiff and other recording artists and former bandmates of Clinton are to be paid, and upon information and belief have not and are not being paid. Defendants have concealed the sum of monies received under these agreements.

22.     Plaintiff now seeks declaratory relief against Defendants to establish that Mr. Worrell was, and Plaintiff is, a co-owner of the master recordings of the Works, entitled to all the rights, interests and benefits therefrom, including unpaid royalties, earnings, and accountings to date and going forward in perpetuity and the rights to directly administer, control and collect upon such interests.

23.     Plaintiff further seeks an injunction so Defendants cannot continue to exploit rights belonging to Plaintiff which they have no authority to profit from, use or license.

## II. PARTIES

24.     Plaintiff, the ESTATE OF GEORGE BERNARD WORRELL JR., is

the estate of deceased musician Bernie Worrell who was a resident of Everson, Washington, and died on June 24, 2016. Ms. Worrell is the widow of Mr. Worrell and Mr. Worrell's sole beneficiary. On May 1, 2019, Ms. Worrell petitioned the Superior Court of Washington for Whatcom County seeking an adjudication of testacy. The Court established Mr. Worrell's Will, executed on March 10, 2016, as Mr. Worrell's Last Will and Testament and admitted it to probate. The Court also appointed Ms. Worrell as the personal representative of the estate and issued Letters Testamentary appointing Ms. Worrell as Executrix and authorized her to execute Mr. Worrell's Will according to law.

25.     Upon information and belief, at relevant times Defendant GEORGE CLINTON and THANG, INC. had their principal place of business and main office in the Advance Building in Southfield Michigan.

26.     Upon information and belief, at relevant times herein mentioned, Defendant GEORGE CLINTON transacted business within the City of Detroit, and the State of Michigan. Clinton is an individual who, on information and belief, currently resides in the state of Florida. On information and belief, Clinton is the sole owner and officer of Thang.

27.     The Record Label Defendants are all record labels that conduct business throughout the world.

28.     Upon information and belief, Defendant SoundExchange, Inc. is an

independent non-profit organization organized and existing under the laws of the State of Delaware, with its headquarters at 733 10th Street, N.W. 10th Floor, Washington, DC, 20001. SoundExchange has been designated as the sole entity in the United States to collect digital performance royalties from statutory license users and to distribute those royalties to performing artists and copyright owners. Pursuant to this authority, SoundExchange collects statutory royalties from satellite radio, Internet radio, cable TV music channels, and other types of services for transmission of sound recordings, and distributes those royalties to artists and record companies.

## III. JURISIDICTION AND VENUE

29.    This Court has subject matter jurisdiction with respect to Plaintiff's copyright claim based upon 28 U.S.C. §§ 1331 and 1338(a) in that the controversy arises under the Copyright Act and Copyright Revision Act of 1976 (17 U.S.C. § 101 *et seq.*), which is within the exclusive jurisdiction of federal courts pursuant to 28 U.S.C. § 1331.

30.    This Court has personal jurisdiction over the Defendants and Record Label Defendants, consistent with the principles of due process and the Michigan Long Arm Statute, at least because Defendants and Record Label Defendants transacted business in this county and have offered their products or services for sale in this county. This Court has specific personal jurisdiction over the Record Label

Defendants due to the fact they have made the Works available in Michigan in numerous forms for years through avenues including but not limited to physical sales, digital downloads, internet streaming and licensing of the Works. Further, this Court has specific personal jurisdiction over the Defendants for numerous reasons, namely because, on information and belief, the acts giving rise to Plaintiff's cause of action occurred, predominantly in this district.

31.     At all relevant times Mr. Clinton resided in Brooklyn, Michigan.

32.     All or nearly all of the Works were created, written, and recorded in Detroit, Michigan, where Clinton lived during the time that the Parties were recording and performing together.

33.     From 1969 until 1980, Clinton and Worrell recorded together almost exclusively at United Sound Systems, Tera Shirma and Artie Fields Studios, all located in Detroit, Michigan.

34.     It follows that Defendants have purposefully availed themselves of the privilege of conducting business within this state and county, have established sufficient minimum contacts with this county such that they should reasonably and fairly anticipate being hauled into court in this county, and have purposefully directed activities at residents of the state and this county.

35.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1400(a) because Defendants are all subject to personal jurisdiction in this Judicial

District and have committed acts within this Judicial District giving rise to Plaintiff's claims and causes of action.

## IV. COMMON FACTS

36.    All allegations contained in the foregoing paragraphs are incorporated and adopted by reference as if fully set forth herein.

37.    George Bernard Worrell, Jr. was an accomplished and acclaimed professional musician, musical performer, and composer, who recorded numerous albums and produced, wrote, or co-wrote hundreds of musical compositions which have been reproduced, distributed, sold and exploited throughout the United States and the world.

38.    In the early 1970s, Mr. Worrell was supporting his mother and immediate family, including, Ms. Worrell and their son Bassl, by playing music and performing as a professional musician in New Jersey. Mr. Worrell was attending college and performing in churches making a name for himself as an "incredible" musician. George Clinton heard about a genius musician in New Jersey and pursued meeting Mr. Worrell so that he would write and create music with him.

39.    In the mid-1960s, Mr. Worrell began touring with R&B artist Maxine Brown and performed with her as part of her band. Mr. Worrell was playing and touring in Bermuda    with Maxine Brown when Clinton finally contacted him by telephone and asked him to start a new band called Funkadelic. Clinton invited Mr.

Worrell to meet him in person. Mr. Worrell met with Clinton, in person, backstage at the Apollo Theater in New York City. At that time, Maxine Brown's style of music was waning in popularity and Mr. Worrell saw making music with Clinton as a great opportunity for him and his family.

40.   Initially, Clinton and Mr. Worrell worked under an oral contract whereby Mr. Worrell was to be paid $200 a week for live performances and a percentage of royalties, if any, of the bands recordings.

41.   Eventually, on January 1, 1976, Mr. Worrell endeavored to enter into the written Agreement that was offered by Thang and was led to believe, by Clinton, that the Agreement was effective and binding.

42.   Under the terms of the Agreement, the status of which was the determinative factor in the New York Case, as consideration for a purported grant of rights by Mr. Worrell, Defendants owed Mr. Worrell and Mr. Worrell would have been entitled to receive royalties and earnings for the exploitation of years of sound recordings which Mr. Worrell wrote, recorded, and produced with Clinton, including seminal works such as "Atomic Dog", "Flash Light", "Aqua Boogie", and many others.

43.   Clinton has since denied entering into the Agreement and has failed to pay any royalties or other earnings to Mr. Worrell or Plaintiff pursuant to the Agreement or for Mr. Worrell's contribution to the Works. Accordingly, as noted

above, Mr. Worrell retained his ownership interest, including copyrights, derived from his joint authorship and creation of the Works and also reserved all rights to the use of his performance, name and likeness in connection therewith. Since the payment of royalties and accountings were the consideration for these rights, and Defendants have now disavowed the Agreement under which those monies would have been paid, Defendants cannot avail themselves of the benefits of the bargain set forth in the Agreement.

44.    There can be no dispute that Mr. Worrell was an integral part of Clinton's musical career and success. Mr. Worrell performed or was associated with nearly all of Clinton's musical endeavors. Mr. Worrell performed, wrote, and produced on all albums by the groups Parliament and Funkadelic. He also performed, wrote, and produced on albums by nearly all of Clinton's other musical acts, including but not limited to, The Brides of Funkenstein, Parlet, Bootsy's Rubber Band, Fred Wesley & the Horny Horns, and Eddie Hazel's album "Game, Dames and Guitar Thangs."

45.    Professor Ellen Exner of The New England Conservatory of Music stated that "Worrell's virtuosic instrumental commentary, encyclopedic command of musical styles, contagious bass lines, in combination with the extra-terrestrial soundscape he pioneered with his Moog synthesizers, not only created P-Funk's signature sound, they functioned as the glue holding the multifarious ensemble

together. The infusion of classical idioms into P-Funk's eclectic blend, although seldom described, was among Worrell's essential contributions."

46.    A partial and by no means exhaustive list of the many recordings Mr. Worrell was integral in creating is attached hereto as **Exhibit E.**

47.    Upon information and belief, Defendants have entered into numerous lucrative third-party agreements including simultaneously running agreements with Casablanca Records and Warner Bros. Records, purporting to grant to those third parties rights in recordings that are jointly owned by Mr. Worrell and now Plaintiff, and which contain Mr. Worrell's name, likeness and performance. However, as noted above, Defendants had and have no basis in law or fact to grant these rights on Mr. Worrell's behalf since they never were obtained by Defendants.

48.    Furthermore, Mr. Worrell's performances have since been used and sold in various compilation albums and re-releases since the 1970s. Versions of Parliament albums have been re-released as recently as 2016. No monies received from any re-releases or compilations containing Mr. Worrell's performances have been paid to Mr. Worrell or his Estate. The performances have also been sampled and used to create derivative works for which Mr. Worrell should have and Plaintiff should receive compensation.

49.    On information and belief, Clinton has even sold sample packs of instrumentals containing Mr. Worrell's musical performances, without Mr.

Clinton's own vocal performance, for the specific use of being sampled in other artists' works. Mr. Worrell and Plaintiff have received zero compensation from the sale of these sample packs, or any use of the recordings containing his performances in derivative works.

50.     Worrell and Plaintiff have received no compensation from all of the above-mentioned agreements and exploitations of the Works, and Defendants have the gall to claim that no compensation is or will be owed because there is no agreement which requires Defendants to pay Plaintiff any monies.

51.     Upon information and belief Defendants have also failed or refused to pay royalties or other monies to Clinton's other bandmates, musicians and performers who were integral to the creation, recording and performance of many of the Works.

52.     Defendants cannot insinuate for decades that they had entered into the Agreement with Mr. Worrell and then subsequently and conveniently declare there was no contract, without dealing with the consequences and reality of such: since the Agreement was never fully executed, and the New York Court has conclusively determined that there was no agreement between Mr. Worrell and Defendants, there is no written grant or assignment of rights and no express repudiation by Mr. Worrell of such rights. Therefore, due to Mr. Worrell's undeniable and integral co-authorship and creation of the Works, he was, and Plaintiff remains, a co-owner thereof

16

pursuant to US Copyright law as more particularly set forth above.

53.     Plaintiff now seeks the Courts declaration of Plaintiff's ownership share in the Works, some of which the Record Label Defendants own or have an ownership share in, together with accounting and payment of monies received by Defendants and the Record Label Defendants for the exploitation of the Works, as well an injunction preventing Defendants and the Record Label Defendants from further exploiting the Works, including Mr. Worrell's name, image and/or performance as embodied therein, and preventing Defendants and/or the Record Label Defendants from wrongfully purporting to control and administer Plaintiff's ownership interest in the Works.

54.     It is well documented that Clinton has a history of deceit, and delinquency when it comes to the performance of contracts that he has entered into on behalf of himself or his companies. Although Clinton did not participate, a recent documentary titled, "Tear the Roof Off: The Untold Story of Parliament Funkadelic" strips away the façade of the Funkadelic and Parliament collective euphoria and illustrates the nefarious, continuous, and deceitful actions of Clinton in relation to these monumental music acts.

55.     Clinton created Thang to enter into multiple simultaneous record contracts, which was not common and normally would never occur. As mentioned above, Defendants had simultaneous agreements with both Casablanca Records and

Warner Bros. Records, among others, for the production of albums under various artist names. This allowed Clinton to have a constant stream of revenue and prolific production of music, receiving hundreds of thousands of dollars in advances and royalties.  Then, rather than share these advances and royalties with all the other musicians, artists and producers who collaborated with him to write, create and record the music, he was able to pocket the money because he was the sole party in contractual privity with Casablanca Records, Warner Bros. Records, and others.

56.    When it came to royalties for the records, Mr. Worrell and Clinton's other fellow band members never received payment or accounting statements. Without royalty statements, Mr. Worrell and the band members had no way of knowing how much money was actually coming in and how much they should be owed. Clinton used Thang to funnel the money to himself where he could spend it how he pleased. He would make oral promises to band members or manipulate them into giving up rights in order to receive payment.

57.    All of Clinton's conduct illustrates a continued pattern of deceit, and manipulation which has resulted in Mr. Worrell, his Estate, and the majority of his fellow bandmembers receiving minimal or zero compensation for the years of work they performed as members of Parliament, Funkadelic, or Clinton's other acts.

## V. CAUSES OF ACTION

## COUNT I – DECLARATORY RELIEF

58.    All allegations contained in the foregoing paragraphs are incorporated andadopted by reference as if fully set forth herein.

59.    There is a dispute between Plaintiff, Defendants and the Record Label Defendants concerning whether or not Plaintiff has a continuing right to receive royalties for the exploitation of the sound recordings containing Mr. Worrell's performances and whether Plaintiff is a co-owner of the Works.

60.    Clinton used Thang as a method to control all royalties, advances, and monies received from the exploitation of any sound recording produced by his various groups, including Parliament and Funkadelic, as a means to retain the proceeds from the records, and as a way not to pay or distribute the proceeds to his band members, including Mr. Worrell. Rather than have each band, including all of their members, sign a recording contract with Casablanca Records, Warner Bros. Records, or any of the other various recording companies who released Funkadelic or Parliament music, as is customary, Clinton used Thang to   contract with these third-party entities.

61.    Joint authors under copyright have fiduciary duties to each other and there are limitations on what any one owner can do. Defendants have specifically acted in bad faith by trampling Mr. Worrell and Plaintiffs rights when contracting with third parties to exploit the sound recordings embodying the Works. However,

Clinton negotiated these agreements with only his own interests in mind. To this day, the Works are being re-released and used in projects which Clinton has collected on and not shared with Mr. Worrell or others. Clinton also used any opportunity to renegotiate or settle disagreements with third parties to his sole benefit rather than act to the benefit of Mr. Worrell, whose rights were impacted.

62.     Furthermore, Clinton never kept adequate accountings or records for Mr. Worrell to keep track of and determine what he was and Plaintiff is rightfully owed. Clinton's lack of accountings of money received from Casablanca, Warner Bros., and others has been noted as far back as 1980. Defendants must account and pay for royalties owed to date, as well as, into the future.

63.     Among other relief, Plaintiff is entitled to a declaration that Mr. Worrell was a co-creator and joint owner in the musical recordings of the Works and that such interests now belong to Plaintiff, and that Mr. Worrell, and now Plaintiff, have a right to receive royalties and earnings and accountings in connection with those rights, now and into the future and to directly administer and control Mr. Worrell's portion of those interests.

## COUNT II – ACCOUNTING

64.     All allegations contained in the foregoing paragraphs are incorporated and adopted by reference as if fully set forth herein.

65.     As a co-owner of the copyright in and to the Works, Plaintiff seeks an

accounting of the books and records of Defendants and Record Label Defendants related to all royalties, advances, and other monies received for the sale and exploitation of the Works from any and all sources.

## JURY DEMAND

66.     Plaintiff demands a jury trial on all causes of action and issues triable to a jury.

## PRAYER FOR RELIEF

67. Plaintiff prays for:

a. A judgment in favor of Plaintiff and against Defendants for the amount of damages proven at trial;

b. A judgment in favor of Plaintiff and against Defendants awarding punitive or exemplary damages to the fullest extent permitted by law;

c. A judgment in favor of Plaintiff and against Defendants awarding Plaintiff the costs, attorney's fees, and reasonable expenses of litigation to the fullest extent permitted by law;

d. A declaration that Plaintiff is a co-owner of all rights and interests in and to the Works, including worldwide copyrights therein, and thus has a continuing right to directly administer and control the use and exploitation of those interests, and to collect and receive royalties and other monies arising from the sale and exploitation thereof;

e. A declaration that Mr. Worrell was a co-creator, principal performer and producer of the Works and that Plaintiff is therefore entitled to collect Mr. Worrell's share of performer and producer royalties payable by SoundExchange and any other applicable societies and organizations throughout the world for the performance of sound recordings embodying the Works;

f. A declaration that Defendants have no right to use, reproduce, publish or authorize others to use, reproduce, publish or exploit the Works or any other recordings, including audio and/or audiovisual recordings, containing Worrell's name, image or likeness;

g. A preliminary injunction to prevent Defendants and Record Label Defendants from further entering into any third-party agreements with respect to the Works and any use of Mr. Worrell's performance, name, image and likeness until the final judgement in this Action is reached to prevent further irreparable harm to Plaintiff;

h. To enter a preliminary injunction requiring SoundExchange to deposit all money earned from exploiting the Works into the Court or mutually-agreed escrow account during the pendency of this Action;

i. Orders authorizing a full accounting of the sums due to Plaintiff pursuant to the exploitation of all Works; and

j.  Such other relief as the Court deems just and proper.


Respectfully submitted:



DICKINSON WRIGHT PLLC

 */s/ Daniel D. Quick*
Daniel D. Quick (P48109)
*Attorneys for Plaintiff*
2600 W. Big Beaver Road, Suite 300
Troy, MI 48084
(248) 433-7200

Dated: May 10, 2022