UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

ESTATE OF GEORGE BERNARD
WORRELL, JR.,

        Plaintiff,

v.

THANG, INC., GEORGE CLINTON,
SONY MUSIC ENTERTAINMENT,
UNIVERSAL MUSIC GROUP,
WARNER BROTHERS RECORDS,
HDH RECORDS, WESTBOUND
RECORDS AND SOUND
EXCHANGE, INC.

        Defendants.

Case No. 4:22 cv 11009

Hon. Shalina D. Kumar

Hon. Mag. David R. Grand

_____ /

DANIEL D. QUICK (P48109)
Dickinson Wright, PLLC
2600 W. Big Beaver Road
Suite 300
Troy, MI 48084
(248) 433-7200
dquick@dickinsonwright.com
Attorneys for Plaintiff

JAMES P. ALLEN, Sr. (P52885)
Allen Brothers, Attorneys and
Counselors, PLLC
401 N. Main St.
Royal Oak, MI 48067
(313) 962-7777
jamesallen@allenbrotherspllc.com
Counsel for Defendants Thang, Inc. and
George Clinton only

_____

## **DEFENDANTS THANG, INC. AND GEORGE CLINTON'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(6)**

    Defendants Thang Inc. and George Clinton, through their attorneys, Allen

Brothers, Attorneys & Counselors, PLLC by James P. Allen, Sr. for the reasons

stated in the attached brief in support respectfully move pursuant to FEDRCIVP

12(b)(6) to dismiss Plaintiff's Complaint with prejudice and with costs.


Respectfully submitted,

ALLEN BROTHERS, PLLC

/s/James P. Allen, Sr.
James P. Allen, Sr. (P52885)
Attorneys for Clinton and Thang
401 N. Main Street
Royal Oak, MI 48067
(313) 962-7777
jamesallen@allenbrotherspllc.com

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

ESTATE OF GEORGE BERNARD
WORRELL, JR.,

   Plaintiff,

v.

THANG, INC., GEORGE CLINTON,
SONY MUSIC ENTERTAINMENT,
UNIVERSAL MUSIC GROUP,
WARNER BROTHERS RECORDS,
HDH RECORDS, WESTBOUND
RECORDS AND SOUND
EXCHANGE, INC.

   Defendants.

Case No. 4:22 cv 11009

Hon. Shalina D. Kumar

Hon. Mag. David R. Grand

/

DANIEL D. QUICK (P48109)
Dickinson Wright, PLLC
2600 W. Big Beaver Road
Suite 300
Troy, MI 48084
(248) 433-7200
dquick@dickinsonwright.com
Attorneys for Plaintiff

JAMES P. ALLEN, Sr. (P52885)
Allen Brothers, Attorneys and
Counselors, PLLC
401 N. Main St.
Royal Oak, MI 48067
(313) 962-7777
jamesallen@allenbrotherspllc.com
Counsel for Defendants Thang, Inc. and
George Clinton only

**<u>DEFENDANTS THANG, INC. AND GEORGE CLINTON'S
BRIEF IN SUPPORT OF MOTION TO DISMISS
PURSUANT TO FED. R. CIV. P. 12(B)(6)</u>**

## TABLE OF CONTENTS

INDEX OF AUTHORITIES.............................................................iii

STATEMENT OF QUESTIONS PRESENTED AND CONTROLLING
AUTHORITY....................................................................................v

I.      INTRODUCTION ......................................................... 1

II.     STATEMENT OF FACTS ............................................. 3

III.    STANDARD OF REVIEW ............................................ 5

IV.     LEGAL ARGUMENT .................................................. 6

        A. THE COMPLAINT SHOULD BE DISMISSED UNDER THE
           RES JUDICATA DOCTRINE BECAUSE ITS CLAIMS ARE
           PRECLUDED BY THE PRIOR NEW YORK ACTION ...... 6

        B. PLAINTIFF'S ACCOUNTING ALLEGATIONS ARE
           WOEFULLY INSUFFICIENT AND REQUIRE DISMISSAL
           ................................................................................ 11

        C. PLAINTIFF CANNOT OBTAIN A DECLARATORY
           JUDGMENT BECAUSE IT HAS NO VALID UNDERLYING
           CLAIMS THAT A RULING COULD SETTLE AND WHICH
           ARE NOT FORECLOSED UNDER SUBSTANTIVE LAW
           BECAUSE THEY ARE BARRED BY THE APPLICABLE
           STATUTE OF LIMITATIONS SET FORTH IN 17 U. S. C. (b)

           ................................................................................ 14

        D. PLAINTIFF CANNOT SATISY ANY OF THE FIVE FACTORS
           NECESSARY TO OBTAIN DECLARATORY RELIEF...... 20

V.      CONCLUSION................................................................24

CERTIFICATE OF SERVICE .................................................25

# INDEX OF AUTHORITIES

## Cases

*Abbott v. Michigan*, 474 F.3d 324, 330 (6th Cir. 2007) ............................................ 6

*Amini v Oberlin Coll*, 259 F3d 493, 502 (6th Cir 2001).......................................... 4

*Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) ...................................................... 6

*Barany-Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir. 2008)................................ 5

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)............................................ 6

*Bradshaw v. Thompson*, 454 F.2d 75, 79 (6th Cir. 1972)...................................... 13

*Buck v. Thomas M. Cooley Law School*, 597 F.3d 812 (6th Cir. 2010) .................. 9

*Business Payment Sys., LLC v. Nat'l Processing Co.*, No. 3:10-CV-00669, 2012
   WL 6020400, at *17 (W.D. Ky. Dec. 3, 2012) .................................................. 13

*Cochran v. Mich. Reg'l Council of Carpenters of the United Bhd of Carpenters*,
   192 F. Supp.3d 861,866 (Ed Mich 2016) ............................................................ 17

*Complete Bldg. Show Co. v. Albertson*, 99 Ohio St. 11, 16 (1918)....................... 13

*Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 478 (1962)........................................... 13

*Davis v. DCB Fin. Corp.*, 259 F. Supp.2d 664, 674 (S.D. Ohio 2003) .................. 13

*Design Basics, LLCv. Chelsea Lumber Co.*, 977 F.Supp.2d 714,723 (723 (EDMI
   2013)..................................................................................................................... 21

*Executone of Columbus, Inc. v. Inter-Tel, Inc.*, No. 2:06-CV-00126, 2007 WL
   1144866, at *4 (S.D. Ohio Apr. 16, 2007) ......................................................... 13

*Fontbank, Inc. v. CompuServe, Inc.*, 138 Ohio App.3d 801, 814 (2000) .............. 13

*Gomba Music, Inc, v. Clarence Avant & Interior Music Corp*, 62 F.Supp.3d 632
   (EDMI 2014) ........................................................................................................ 20

*Grand Trunk Western R.R. Co. v. Consol. Rail Corp.* 746 F.2d 323, 325 (6th Cir.
   1984)..................................................................................................................... 16

*International Ass'n of Machinists and Aerospace Workers v TVA*, 108 F.3d 658,
   668 (6th Cir. 1997) .............................................................................................. 18

*Intn'l Ass'n of Machinists & Aerospace Workers v. Tenn Valley Auth 108 F.3d
   658, 668 (6th Cir. 1997)* ..................................................................................... 17

*Kirby v. Lake Shore & Michigan Southern R. Co.*, 120 U.S. 130, 134 (1887)....... 13

*Merchant v. Levy* 92 F.3d 51 (2nd Cir. 1996)........................................................ 20

*O'Brien v. City of Syracuse*, 429 N.E.2d 1158, 1159 (N.Y. 1981) ........................ 7

*OSI-Fostoria DC, LLC v. General Electric Capital Business Asset Funding Corp.*,
   2005 U.S. Dist Lexis 521 (NDOH 2005) ............................................................ 18

*Riverview Health Inst. v. Med. Mut. of Ohio*, 601 F.3d 505, 512 (6th Cir. 2010).... 5

*Roger Miller Music, Inc. v. Sony/ATV Publ'g, LLC,* 477 F.3d 383, 388 (6th Cir
   2007) ............................................................................................... 20

*Scottsdale Ins. Co. v. Flowers,* 513 F.3d 546, 557(6th Cir 2008) ........................ 23

*Toledo Museum of Art v. Ullin*, 477 F.Supp.2d 802 (ND Ohio 2006)................... 18

*Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 577-78 (6th Cir. 2008) ..... 7

*Zehentbauer v. Family Land LP v. Chesapeake Exploration, LLC*, 2016 WL
   3903392 (N.D. Ohio July 19, 2016) ................................................................. 13

**Statutes**

28 U.S.C. 1738). ...................................................................................................... 6

17 U.S.C. 504 (b) ................................................................................................... 14

28 U.S.C. 2201 ....................................................................................................... 16

Rules

Fed. R. Evid. 201 ..................................................................................................... 7

FEDRCIVP 12(b)(6)................................................................................................. 1

## STATEMENT OF QUESTIONS PRESENTED AND
## <u>MOST CONTROLLING AUTHORITIES</u>

**I.**   IS PLAINTIFF'S COMPLAINT BARRED BY THE DOCTRINE OF RES JUDICATA?

Defendants answer: YES

Plaintiff answers: NO

Most controlling/persuasive authority:
FedRCivP 12(b)(6)
*Winget v. JP Morgan Chase, N.A.*, 537 F.3d 565, 577-78 (6th Cir. 2008)
*Buck v. Thomas M. Cooley Law School*, 597 F.3d 75, 79 (6th Cir. 1972)

**II.**   SHOULD PLAINTIFF'S REQEST FOR AN ACCOUNTING BE DENIED?

Defendants answer: YES

Plaintiff answers: NO

Most controlling/persuasive authority:
FedRCivP 12(b)(6)
*Dairy Quuen, Inc. v. Wood*, 369 U.S. 469, 478 (1962)

**III.**   SHOULD PLAINTIFF'S REQUEST FOR DECLARATORY RELIEF BE DENIED?

Defendants answer: YES

Plaintiff answers: NO

Most controlling/persuasive authority:
FedRCivP 12(b)(6)
17 USC 504 (b)
*Grand Trunk Western R.R. Co. v. Consol. Rail Corp.*, 746 F.2d 323, 325 (6th Cir. 1984)
*Toledo Museum of Art v. Ullin*, 477 F.Supp. 2d 802 (ND Ohio 2006)

*Gomba Music, Inc. v. Clarence Avant & Interior Music Corp.,* 62
F.Supp.3d 632 (EDMI 2014)

## I.    **INTRODUCTION**

Defendants George Clinton ("Clinton") and Thang, Inc. ("Thang") move this Honorable Court pursuant to FEDRCIVP 12(b)(6) to dismiss the two-count Complaint of Plaintiff Estate of George Bernard Worrell, Jr. ("Worrell").  Both counts, Count I for Declaratory Relief and Count II for an accounting, are mere embellishments of the same counts the Supreme Court of the State of New York dismissed about 14 months before Plaintiff filed this action in the Eastern District of Michigan.  (See Exhibit A Order of Dismissal) However, no actionable legal theories underly either count. No count for breach of contract is pled. No cognizable claims sounding in tort such as fraud can be found. No specific copyright violations are detailed beyond blanket assertions that Clinton acted unethically.  Finally, there are not any other particularized common law or statutory violations pled in compliance with FedRCivP 8(a)(2)'s requirement of a "plain statement" of claim having enough "heft" to show plaintiff is entitled to relief. Perhaps more significantly, the "factual" allegations relate to conduct spanning across six or seven decades and clearly beyond any reasonable records retention or limitations periods.   Many key witnesses, including obviously the Plaintiff's decedent, are dead and unable to provide the testimony (or be subject to cross examination) necessary for Clinton to defend himself which, indeed, is one of the principal reasons courts strictly enforce statutes of limitation barring the stale

claims that Worrell never bothered to pursue, but presumably could have, when he was alive.

The rules of procedure prevent Defendant Clinton from refuting in this motion the gratuitous and vituperative assassination of his character set forth in the Complaint.  He will, for purposes of this motion, likewise leave unaddressed the bitter and inflammatory allegations set forth in the now-dismissed complaint filed in the state of New York attached to the one at bar and part of the record in this case.  None of the ugly allegations have any relevance to the stale requests for declaratory relief and an accounting. Indeed, the dismissed New York complaint's relevance to the case at bar stems mostly from its preclusive effect on the one shamelessly forum shopped to this Court for a second or perhaps now third bite at a very old and, by now, mushy apple.[1]

Having been rebuffed by the New York courts on a stale (and meritless) breach of contract claim, a claim that Clinton acted in bad faith, a request for declaratory judgment regarding Worrell's right to royalties and an accounting apparently of the very same damages Worrell seeks here, having taken no steps to enforce any copyright infringement in the last four decades of his life or assert new ownership

---

[1] Mr. Clinton will not respond in kind both because to do so would also run counter to the spirit of his art and his underlying personal ethos. Indeed, Mr. Clinton affirms, not just for the purpose of this motion but also in conformity with the civility principles of this Court, the genius of Plaintiff's decedent ("Mr. Worrell").  While Mr. Clinton sharply disagrees with the merits of the claims brought against him, he will not tarnish Mr. Worrell's memory or denigrate his musical talent.

in any works, and declining to raise his right hand to swear and tell the truth about any other claim at law or equity during his lifetime, Worrell's heir attempts the ultimate legal abracadabra by pulling from counsel's briefcase a jurisprudential rabbit that won't be found in any statute, treatise, Restatement or published decision from any court but, more importantly, in the pending Complaint.  Disguising ill-defined and long-expired claims as one for declaratory judgment cannot rescue them. The opportunistic effort to do so now over matters settled to the apparent satisfaction of all parties for decades places Mr. Clinton in a place of extreme prejudice as memories fade and witnesses and documents essential to Clinton's position have been lost to time.  Accordingly, for the reasons stated below, Defendants Clinton and Thang respectfully request that this court grant their motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim.

## II.   <u>STATEMENT OF FACTS</u>

The Complaint sets forth facts already rejected by the New York Supreme Court, if not explicitly, at least by implication in a motion Clinton filed to dismiss what is essentially the same case now repackaged and filed here. [2]  (<u>See</u> Ex C to

---

[2] When considering a 12(b)(6) motion, the court may review allegations in the complaint, matters of public record, orders, items appearing in the record of the case and exhibits attached. *Amini v Oberlin Coll*, 259 F3d 493, 502 (6th Cir 2001). Exhibit C to the Complaint, a New York state court action dismissed two years ago, alleges at paragraph 36 [PageID.44] that the present dispute over royalties was resolved, although no copy of that "settlement" appears anywhere.  Presumably, the claims herein are for breach of that settlement agreement which governed those payments thereafter and, as set forth below, would have long ago been time-barred.

Complaint PageID 32-54) Nevertheless, for this motion, all facts are accepted as true. According to both Complaints, Mr. Clinton recruited Mr. Worrell from an artist, Maxine Brown, in the mid-1960's having travelled to the backstage of the Apollo Theater in Harlem to persuade Mr. Worrell to join Mr. Clinton's band, Parliament.[3] Mr. Worrell, sensing that Ms. Brown's style of music was no longer in vogue, left her to join Mr. Clinton's band and, for about a decade when most of the works at issue in this case (Ex D to the Complaint, PageID 55-63) were composed, produced, and performed, worked under an oral agreement. Under it, Mr. Worrell received $200 dollars per week to perform live with Mr. Clinton's various bands as well as a percentage of royalties. (See ¶ ¶ 39-40 PageID 12-13)

According to the Complaint in this case and the now-dismissed New York action, Plaintiff claims that, on January 1, 1976, Worrell received a recording contract with Thang, the same contract that Plaintiff admits the New York Supreme Court refused to enforce. Worrell claims at ¶ 43 [PageID 13-14] that he received no royalties or any other earnings under the January 1, 1976 "contract". Conveniently missing from the Complaint before this Court, however, is the part

---

[3] Note: Paragraph 39 of the current Complaint in this case places the meeting in the mid-1960's which is consistent with the history of the band and the remaining allegations in both the current complaint and the dismissed New York complaint attached to it. However, most likely due to a typographical error, paragraph 17 of the New York complaint [PageID38] mistakenly places the meeting in the mid-1970's which would have been well into Worrell's tenure with Mr. Clinton's bands and is presumed to be a typographical error by Worrell's New York lawyers.

of the story set forth in ¶¶ 34-36 of the New York Complaint (Page ID 43-44) which the Court may consider as part of this motion.   According to those omitted paragraphs, Worrell waited 4 years to demand an accounting of the January 1, 1976 "contract," filed suit, and on September 9, 1982 "accepted $20,000 to dismiss the litigation and generally release Thang and Clinton from any claims for moneys owed as of that date of the settlement agreement." [PageID 43-44]. Over thirty-seven years later, three years after Worrell died, his estate filed suit in New York to, once again, claim Worrell did not receive his share of royalties for work, the vast majority of which was created during the term of the oral contract. That New York action, concerning the same transactions between and among the same parties involved in this action, was dismissed. (See Ex. A)

## III.   <u>STANDARD OF REVIEW</u>

A motion to dismiss under FedRCivP 12(b)(6) tests the sufficiency of the complaint. *Riverview Health Inst. v. Med. Mut. of Ohio*, 601 F.3d 505, 512 (6th Cir. 2010). Whether dismissal is appropriate depends primarily on the allegations in the complaint. *Barany-Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir. 2008). As a rule, the Court must assume the veracity of the allegations in the complaint. *Riverview Health*, 601 F.3d at 512. But application of the general rule is limited to allegations comprised of well-pleaded facts. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). Allegations comprised of labels and conclusions, formulaic recitals of elements, unadorned accusations, or naked assertions are not entitled to a presumption of

truth. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). Clinton and Thang assert that Plaintiff's claims cannot survive application of these standards, and thus this Honorable Court should grant Defendants' Motion to Dismiss.

## IV.  **LEGAL ARGUMENT**

### A. **THE COMPLAINT SHOULD BE DISMISSED UNDER THE RES JUDICATA DOCTRINE BECAUSE ITS CLAIMS ARE PRECLUDED BY THE PRIOR NEW YORK ACTION[4]**

Under the legal doctrine known as "res judicata" or "claim preclusion," once a party litigates claims to a final judgment in one court, it is barred from bringing a new action raising any claims that were brought or that could have been brought in the first action against the same parties. That is precisely what Plaintiff is trying to do here, and well settled principles of res judicata bar this action. Because the first action was litigated in the New York state court system, this Court must apply the New York law of claim preclusion. *See, e.g.*, *Abbott v. Michigan*, 474 F.3d 324, 330 (6th Cir. 2007) ("Federal courts must give the same preclusive effect to a state-court judgment as that judgment receives in the rendering state.") (citing 28 U.S.C. 1738).

New York "has adopted the transactional analysis in deciding res judicata issues." *O'Brien v. City of Syracuse*, 429 N.E.2d 1158, 1159 (N.Y. 1981). Under

---

[4] The claims might also be precluded by prior litigation between these parties in the 1980's and referenced in the Complaint, but the records of that case, including the release that settled it, have not been found. Defendant reserves the right to revisit this issue if the records are located.

that approach, "once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy." *Id.*

The Sixth Circuit has articulated the elements of res judicata as follows:

> (1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their "privies"; (3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; and (4) an identity of the causes of action.

*Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 577-78 (6th Cir. 2008); *accord O'Brien*, *supra*. Accepting all the allegations in the Complaint as true, each of those elements is established here as a matter of law.

***First***, the New York state court issued a final decision on the merits. Although the Complaint did not attach a copy of the New York court's final order, the Complaint does describe the contents of that order. *See* Complaint ¶ 13, ECF 1, PageID5-6. We have attached a copy of the order to this Motion (*see* Ex. A); this Court may take judicial notice of the order to evaluate it on a Rule 12 motion. *See* Fed. R. Evid. 201; *Buck*, infra, *Amini*, supra.

***Second***, the parties in the two suits are identical for res judicata purposes: the Plaintiff Estate of Worrell, Defendant Clinton, and Defendant Thang, Inc. were parties in both actions.

The ***third*** and ***fourth*** elements are closely related. The third element asks whether an issue in the second case was or could have been litigated in the first

action. The fourth element, "identity of the causes of action," is the Sixth Circuit's phrase for the "transactional test" adopted by the New York courts: "The final element of res judicata requires an 'identity of claims,' which is satisfied if the claims arose out of the same transaction or series of transactions, or if the claims arose out of the same core of operative facts." *Winget*, 537 F.3d at 580 (internal quotation marks omitted). Those elements are easily satisfied here.

The New York suit sought Plaintiff's share of royalties to the Works based on contract theory, but it also included other claims. The second count alleged a breach of duty of good faith and fair dealing "[i]n addition to the express duties set forth in an express contract." ECF 1-4, PageID83.[5] The third count was for ***declaratory relief*** concerning whether Plaintiff had a continuing right to receive royalties for the exploitation of sound recordings he helped to create. *See id.* at PageID84. The fourth count was for an ***accounting***. *See id.* at PageID84-85. This case seeks identical relief (*i.e.*, declaratory judgment and accounting) under non-contractual theories of recovery which, as just shown, were also present in the New York action. Even if the Estate chose to focus on a contract theory in New York, that was merely a strategic choice. It knew its only version of the alleged contract

---

[5] This Count bares a strong resemblance, in fact, to the allegation contained in ¶ 61 of the Complaint at bar in that the elements for violation of the covenant of good faith and fair dealing closely follow those required to establish a breach of a fiduciary obligation. If it was conceivable that Defendants breached the covenant of good faith and fair dealing, surely Worrell had sufficient notice of any potential claim for breach of fiduciary duty and could have included it.

was unsigned.  It discovered Defendants' position that there was no valid contract "shortly after" it filed the New York action and more than a year before the state court's order of dismissal.  *See* ECF 1, ¶¶ 10, 12, PageID5.  Being aware that the contract theory was highly speculative so early in the litigation, it had every opportunity to add additional non-contractual theories of recovery; it chose not to do so.  There can be no disputing that this case arises from the same transaction or series of transactions as the New York case.  One can only speculate about the decision Worrell's lawyers made to include a count for violating an implied covenant of good faith and fair dealing but failed to plead a violation of the fiduciary obligation that is the thin thread on which the present case now hangs.

Res judicata is ordinarily raised at summary judgment, but the Sixth Circuit routinely affirms Rule 12 dismissals on res judicata grounds where applicability of the doctrine is clear from the Complaint, its attachments, and other judicially noticeable sources.  *Buck v. Thomas M. Cooley Law School*, 597 F.3d 812 (6th Cir. 2010), is remarkably on point.  Buck, a law student at Cooley, struggled with her coursework and was ultimately expelled.  She filed suit in Michigan state court, alleging, among other theories, that Cooley failed to offer assistance, failed to provide accommodations for her disability, and deprived her of due process.  *Id.* at 814.  The state court issued a temporary restraining order, later converted into a preliminary injunction, that allowed Buck to resume classes.  *Id.*  After returning to class, Buck encountered other conduct at Cooley she considered actionable.

9

Because her favorable judgment in the state-court action had been reversed on appeal, Buck filed a new suit in federal court, making claims under the Americans with Disabilities Act and other theories.  *Id.* at 816.  Cooley moved to dismiss Buck's complaint on res judicata grounds. The district court granted the motion. *Id.*

The Sixth Circuit affirmed.  In *Buck*, the pleadings from the state-court action had not been attached to the federal complaint. The Sixth Circuit nevertheless considered them at the Rule 12 stage because "[a]lthough typically courts are limited to the pleadings when faced with a motion under Rule 12(b)(6), a court may take judicial notice of other court proceedings without converting the motion into one for summary judgment." *Id.* at 816 (citing *Winget*, 537 F.3d at 576).  Similarly unpersuasive was Buck's argument "that her federal complaint alleges many facts that had not occurred at the time that she had filed her state court complaint. She correctly observes that these facts were not—and could not have been—included in plaintiff's original state court complaint when it was filed in 2002." *Id.* at 817. The Sixth Circuit noted that Buck could have easily amended her complaint in state court to add these later-occurring facts. *Id.* at 817-18.  Under these circumstances, the Sixth Circuit affirmed Rule 12 dismissal of Buck's complaint on res judicata grounds. *Id.* at 819.  *Winget, supra,* is another example of the Sixth Circuit affirming a Rule 12 dismissal on res judicata grounds.

In this case, the Complaint and its attachments clearly takes a shot that it should have taken in the prior suit between these same parties about these same transactions.  The judgment in the New York suit precludes the present suit, and the Complaint should be dismissed with prejudice.

### B. PLAINTIFF'S ACCOUNTING ALLEGATIONS ARE WOEFULLY INSUFFICIENT AND REQUIRE DISMISSAL

The second count in Plaintiff's Complaint is styled **"Count II – Accounting."** ECF 1, PageID20.  It contains two (2) paragraphs, but the first one (paragraph 64) merely "incorporates" other paragraphs.  *Id.*  The second contains the entire basis:

> 65.     As a co-owner of the copyright in and to the Works, Plaintiff seeks an accounting of the books and records of Defendants and Record Label Defendants related to all royalties, advances, and other monies received for the sale and exploitation of the Works from any and all sources.

*Id.* at 20-21.  This says literally ***nothing***, mandating dismissal.

Instead of pleading an established basis for any relief, Plaintiff has merely informed the Defendants that it "seeks an accounting."  Federal notice pleading standards are liberal but pleading "gimme an accounting" is not even close to the required specificity.  Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief," so as to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests."  But as *Twombly* explains, a plaintiff's obligation under Rule 8(a)(2) requires "that the 'plain statement' possess enough heft to 'sho[w] that the pleader is entitled to relief.'"  127 S. Ct. at 1966.  Factual allegations in a complaint must

at least reasonably suggest, rather than simply be consistent with, the essential elements of the claim (*id.* at 1965-66). The problem is even more fundamental because Plaintiff has styled the count vaguely as "Accounting," but there are different causes of action for Equitable Accounting and Accounting at Law. Which one is intended here? What is the substantive basis in the law for providing such relief? Is it based on federal law? New York state law? Michigan state law? The Complaint provides no clues to the answers to these questions, and Defendants cannot respond or properly frame defenses as the count is pled.

It is not Defendants' burden to set forth the elements of both possible variants of accounting and to show why Plaintiff has failed to even try to allege them. For expediency, Defendants assume that the Plaintiff was trying to claim entitlement to the more common Equitable Accounting. Again, the Complaint is facially defective, and Defendants should not even have to point to specific, missing elements when no elements of any sort are pled. But the lack of those elements is so stark as to justify dismissal.

An accounting claim "must set forth operative facts which, when construed in the plaintiff's favor, establish a right to the requested relief." *Davis v. DCB Fin. Corp.*, 259 F. Supp.2d 664, 674 (S.D. Ohio 2003) (citing *Fontbank, Inc. v. CompuServe, Inc.*, 138 Ohio App.3d 801, 814 (2000)). "The necessary prerequisite to the right to maintain a suit for an equitable accounting, like all other equitable remedies, is ... the absence of an adequate remedy at law." *Dairy Queen, Inc. v.*

*Wood*, 369 U.S. 469, 478 (1962). *See also Bradshaw v. Thompson*, 454 F.2d 75, 79 (6th Cir. 1972); *Complete Bldg. Show Co. v. Albertson*, 99 Ohio St. 11, 16 (1918); *Executone of Columbus, Inc. v. Inter-Tel, Inc.*, No. 2:06-CV-00126, 2007 WL 1144866, at *4 (S.D. Ohio Apr. 16, 2007). The Supreme Court explained in *Dairy Queen* that to maintain suit for equitable accounting, "the plaintiff must… show that the 'accounts between the parties' are of such a 'complicated nature' that only a court of equity can satisfactorily unravel them." *Dairy Queen*, 369 U.S. at 478 (quoting *Kirby v. Lake Shore & Michigan Southern R. Co.*, 120 U.S. 130, 134 (1887)). *See also Business Payment Sys., LLC v. Nat'l Processing Co.*, No. 3:10-CV-00669, 2012 WL 6020400, at *17 (W.D. Ky. Dec. 3, 2012).

Most recently, this reasoning was used in *Zehentbauer v. Family Land LP v. Chesapeake Exploration, LLC*, 2016 WL 3903392 (N.D. Ohio July 19, 2016), to dismiss a claim for accounting. In addition to the failure to plead one or more of the recognized bases and the lack of adequate legal remedy, the Court rejected accounting, reasoning *Dairy-Queen* and discovery rules render it virtually impossible to establish lack of adequate legal remedy. *Id.* at *5. The general point is that the Supreme Court's *Dairy Queen* decision all but eliminates equitable accounting in favor of using modern, expanded discovery in conjunction with jury trials and legal damages. *Id.* Here, the Plaintiff has not even tried to plead a basis consistent with *Dairy Queen*, and it has not pled an entitlement to any damages for which an accounting might be necessary. Dismissal is appropriate.

## C. PLAINTIFF CANNOT OBTAIN A DECLARATORY JUDGMENT BECAUSE IT HAS NO VALID UNDERLYING CLAIMS THAT A RULING COULD SETTLE AND WHICH ARE NOT FORECLOSED UNDER SUBSTANTIVE LAW BECAUSE THEY ARE BARRED BY THE APPLICABLE STATUTE OF LIMITATIONS SET FORTH IN 17 U.S.C. 504 (b)

The Complaint is perhaps most notable for what it does not contain. It seeks a declaratory judgment boldly proclaiming that Clinton and Thang have engaged in unspecified and amorphous wrongful conduct dating "as far back as 1980" (¶ 62, PageID 20) without providing the slightest tether to any live statutory or common law claim that this alleged conduct violated: no contract breached within the statute of limitations; no claim of fraud pled with sufficient specificity; no provision of the Copyright Act cited or specific act taken in derogation of it, with its three year statute of limitations (see 17 U.S.C. 504(b)) is anywhere mentioned; no statutory or common law conversion claim. All of the non-particularized wrongful conduct is alleged to have been so open and ubiquitous that Plaintiff can make no claim for concealment. In short, there is nothing—not a single defined substantive legal theory over which Plaintiff, Clinton, and Thang can be said to have an actual dispute and for which this Court can enter any determination, let alone a declaratory judgment.

Paragraph 61 (PageID 19) hints at a breach of the fiduciary duties owed between joint copyright owners, but conveniently there is no clue as to the dates when this breach occurred, how specifically the conduct violated a fiduciary (or other)

obligation, what third parties were involved, what ill-gotten benefits Defendants received, how the rights of Plaintiff were illegally infringed, what specific works were even involved, or what even in the most general terms Defendants actually did to violate the act.  Plaintiff makes a half-hearted effort to throw a blunderbuss seven-page spreadsheet (PageID 89-96) against the wall with every conceivable track on which he may have played a note hoping something will stick, but the Court and Defendants are left with a mere guess as to which of these works, most of them 40-50 years old, was improperly infringed, by whom, when and how. Significantly, ¶ 60 of the Complaint alleges that Clinton used Thang as the artifice to damage Worrell.  However, Thang was dissolved in 1991 nearly three decades before the expiration of the applicable three-year statute of limitations for copyright claims. (see Ex. B) If, as we must, assume that allegation's truth, Worrell cannot establish any wrongful act within the statute of limitations.

Clearly, Plaintiffs should not be entitled to inflict hundreds of thousands of dollars in discovery costs to leverage a settlement out of such generalized, threadbare, and amorphous allegations in the hopes that they might turn something---anything---up to justify hauling Defendants into court to rehash ancient history. While the Court and Defendants are bound to view factual allegations in a light most favorable to Plaintiffs at this stage of the litigation, the same is not true of ill-defined legal theories and unspecified factual averments, especially considering the

rather lengthy arc of time the Complaint covers. Any other result would strain the rules of pleading far past their fair and reasonable limits.

This sort of pleading falls far short of what *Grand Trunk Western R.R. Co. v. Consol. Rail Corp.* 746 F.2d 323, 325 (6th Cir. 1984), says the Declaratory Judgment Act, 28 U.S.C. 2201, requires for the issuance of such a judgment. Before the Court can apply *Grand Trunk's* five-part test for entry of a declaratory judgment it must make the threshold determination about whether any substantive claims are "foreclosed." Aside from the difficulty in this case of determining precisely what those substantive claims may be from examining the mish-mash of ugly accusations leveled against Mr. Clinton, Plaintiff will have serious difficulty overcoming the above preclusive legal doctrine of *res judicata* and the statutes of limitations that foreclose any of the reasonably anticipatable substantive claims that Worrell can assert nearly half a century after the works in question were created and 40 years after Worrell, Clinton and Thang entered into an agreement that settled all prior claims between them  (See ¶ 36 of NY Complaint (Ex C to Complaint at bar) PageID 44) and that Worrell lived without further enforcement for the last 35 years of his life.

All of Worrell's claims are time-barred. Claims for declaratory relief cannot magically resurrect expired claims. As this District has repeatedly found, "A request for declaratory relief is barred to the same extent that a claim for substantive relief on which it is based would be barred." *Cochran v. Mich. Reg'l Council of*

*Carpenters of the United Bhd of Carpenters,* 192 F. Supp.3d 861,866 (E.D. Mich 2016) (citing *Int'l Ass'n of Machinists & Aerospace Workers v. Tenn Valley Auth,* 108 F.3d 658, 668 (6th Cir. 1997) ("The Sixth Circuit has held that a declaratory judgment claim can be subject to a limitations period." Contrary holdings would "allow a plaintiff to 'mak[e] a mockery of the statute of limitations *by the simple expedient of creative labeling.'*) (emphasis supplied).

Consider *Toledo Museum of Art v. Ullin,* 477 F.Supp.2d 802 (ND Ohio 2006), an action brought by the heirs of a woman who, in 1939, sold a Gauguin painting to art dealers during Nazi persecution. The Toledo Art Museum legally obtained title to the painting and never hid the prior ownership or provenance of the painting. Of particular note, while the woman did obtain compensation for many of her wartime losses in the 38 years between the sale of the painting and her death, she never pursued a claim against the Toledo Art Museum. Nearly thirty years after her death, her distant heirs sought declaratory relief to establish ownership in the art. The museum moved to dismiss under 12(b)(6).

In granting the museum's motion, the District Court, citing *OSI-Fostoria DC, LLC v. General Electric Capital Business Asset Funding Corp.,* 2005 U.S. Dist Lexis 521 (N.D. Ohio 2005), held that "[a]ctions for declaratory judgment are neither legal nor equitable claims but are considered to be *sui generis*" and "must accompany the substantive claim for which the declaratory judgment is sought." The court noted further, that the "Sixth Circuit has held that '[b]ecause a

declaratory judgment is a procedural device used to vindicate substantive rights, it is time-barred only if relief on a direct claim would also be barred." (Citing *International Ass'n of Machinists and Aerospace Workers v. TVA*, 108 F.3d 658, 668 (6th Cir. 1997)).

Simply put, Plaintiff's undefined backdoor copyright claims are time-barred by statute (17 U.S.C. 504(b)). Likewise, earlier attempts to enforce contracts, according to the allegations in the Plaintiff's complaints (current complaint paragraphs 13-15 PageID 5-6, NY Complaint paragraph 36 PageID 44) have either been dismissed or settled with general releases. Finally, it is not the job of this Court or Defendants to conjure the specific live substantive claim that would re-animate the Plaintiff's expired claims. Like the decedent in *Ullin,* this was a task that even Mr. Worrell himself declined to undertake while alive. Notably, the *Ullin* court was not swayed by the sympathetic story her heirs surely were able to tell, noting specifically that, if plaintiff's decedent in that case "believed she had a claim to the painting, she could have investigated and brought suit" when she was alive. She lived 20 years after the sale and did nothing to challenge it even though "she knew better than anyone the facts surrounding her own purported sale."

This is an especially critical line of reasoning in a case like the present one where it appears that the Plaintiff wants to resurrect long-lapsed claims under 17 U.S.C 504(b). It remains to be seen whether Plaintiff is asserting claims for

ownership[6] or infringement of copyright or both because, of course, none have been directly stated. Either way, both claims are time-barred. None of the works that Plaintiff has listed on his final exhibit (PageID 89-96) was created within the three-year statute of limitations set forth in 17 U.S.C. 504(b) and, indeed, as the Complaint concedes, Mr. Worrell died in 2016, long outside of the statute of limitations for any co-ownership claim. The Sixth Circuit has repeatedly held, moreover, "when claims for both infringement and ownership are alleged, the infringement claim is timely only if the corresponding ownership claim is also timely." See *Gomba Music, Inc. v. Clarence Avant & Interior Music Corp,* 62 F.Supp.3d 632 (E.D.Mich 2014), citing *Roger Miller Music, Inc. v. Sony/ATV Publ'g, LLC,* 477 F.3d 383, 388 (6th Cir 2007).

*Gomba* notes that cases often turn on when a party is chargeable with knowledge of a claim but that there is "little Sixth Circuit case law on when a party has constructive knowledge of a copyright claim." *Id.,* at 645 (Citing *Design Basics,*

---

[6] To the extent Worrell seeks to assert any previously unasserted ownership claims, it is clear that they would have long ago expired. Only where a Plaintiff's ownership status is "uncertain" can they avoid strict application of 17 U.S.C. 504(b)'s strict 3-year statute of limitations. *Id.,* at 644. According to Judge Michelson citing *Merchant v. Levy* 92 F.3d 51 (2nd Cir. 1996), there is no uncertainty of ownership of a copyright when ownership rights are based on co-authorship because co-authors know that they "jointly created a work from the moment of its creation." *Id.* Since it can be fairly said that Plaintiff could not have created any protected work after he died, the very latest he could have a live ownership claim would have been in 2019, three years after his death. *Gomba 62 F.Supp.3d at.,* 644-645, *Merchant* 92 F.3d at 56.

*LLC v. Chelsea Lumber Co.*, 977 F.Supp.2d 714,723 (723 (E.D.Mich 2013). Here, the allegations of any would-be infringement or wrongful denial of ownership are so ubiquitous--quite explicitly occurring more than three years before the instant Complaint and even included in the 2019 New York complaint, Worrell can hardly claim ignorance/concealment of any potential copyright violations.

Thus, while the Court in *Gomba* denied defendant's motion to dismiss, the grounds---fraudulent concealment---clearly do not apply here.   If Plaintiff's allegations in the Complaint and its exhibits are to be believed as they must for purposes of this motion, Clinton and Thang alleged acts in derogation of Worrell's rights were so pervasive and so long-standing his estate cannot now conveniently claim ignorance of them.   It also cannot avoid the three-year statute of limitations Congress enacted in 17 U.S.C. 504(b). Moreover, Clinton is alleged to have acted through an entity, Thang, that ceased to exist in 1991, 28 years before the expiration of the statute of limitations (See Ex B).   With no substantive claims falling within the applicable statute of limitations, Plaintiff can obtain no declaratory relief related to them.

### D. **PLAINTIFF CANNOT SATISFY ANY OF THE FIVE FACTORS NECESSARY TO OBTAIN DECLARATORY RELIEF**

*Grand Trunk* supra. at 16 sets forth the five factor test federal courts typically follow when deciding claims for declaratory relief.   When applying the test, courts ask whether the requested declaratory judgment will "serve a useful purpose" and

if it will "terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Grand Trunk*, 746 F.2d at 326.   It should, once again, be noted that, for nearly half a century during Mr. Worrell's lifetime, there was no uncertainty, insecurity, or controversy that gave rise to *any proceeding* and the only "useful purpose" at this late date will be to enrich the lawyers at the expense of the litigants.

As to the *Grand Trunk* test itself, the first factor asks whether "declaratory relief would settle the controversy." *Id.,* at 326.   This factor must be resolved in Defendants' favor as the controversy at issue here was settled by the New York Supreme Court fourteen months before Plaintiff filed the present Complaint.   As set forth above, the facts and circumstances presently before this Court were all extant and, with any amount of diligence, discernable during the pendency of the New York litigation.   Plaintiff selected that forum.   Plaintiff included the claims it included in its complaint and withheld others, by choice or negligence.   A final judgment entered, fair and square.   Plaintiff did not appeal.

Plaintiff appears to rely on the affidavit Clinton filed in the New York case disavowing the purported January 1, 1976 contract as the grounds on which this action is based, as if that was some kind of newly discovered evidence.   (See Page ID 87-88). However, the date of the affidavit is January 10, 2020[7], 14 months

---

[7] ¶ 12 of the Complaint actually places the date of discovery as May, 2019, twelve days before the New York action was filed.

before the New York Court dismissed that case, more than enough time for Plaintiff to amend that complaint to assert the exact same claim that is indirectly being asserted here with Plaintiff attempting to use the Declaratory Judgment Act as some artifice or bypass switch around res judicata and the statute of limitation. Simply put, declaratory relief at this late stage is many years too late. It won't settle "the controversy" as "the controversy" was conclusively settled when the New York court issued its final judgment and Plaintiff elected not to appeal.

The second factor---whether declaratory action would help clarify the legal relations in issue---is frequently merged with the first. See *Scottsdale Ins. Co. v. Flowers,* 513 F.3d 546, 557(6th Cir 2008). By pure logic, if a declaratory judgment resolves a controversy, it almost always clarifies the issues between parties. Here again, the concern is upon finality surrounding the discrete issues being presented to the court. Those issues, as explained above, were either already presented or could have been presented to the state court which fully and finally adjudicated them. This factor weighs heavily in Defendants' favor.

The third factor focuses on whether the declaratory remedy is being used for "procedural fencing" or "forum manipulation". *Grand Trunk., 746 F.2d* at 326. This factor is almost too obvious to elucidate any further given the foregoing analysis. When is enough enough? Plaintiff placed this exact same set of facts--- some of the paragraphs of the complaints are nearly identical---before another forum. Defendants invested significant resources defending the case as Plaintiff

prosecuted it.   The Court ruled.   In common playground parlance, the current federal Complaint is little more than an attempted "do over," one not provided for in any reasonably available rule of procedure or published precedent.

The Court must determine whether issuing a declaratory judgment would "increase friction" when considering the fourth *Grand Trunk* factor.   What could increase friction between state and federal courts more than allowing a federal court to disturb the final judgment of a state court adjudicating the very same set of facts and same legal theories that were brought or could have been brought and decided only 14 months earlier?   The fact that the current federal Complaint contains fleeting reference to copyright violations, a matter admittedly of federal providence, is of no moment.   While federal jurisdiction may attach to copyright claims, state courts are not prohibited from exercising jurisdiction.   Indeed, had Plaintiffs originally pleaded a copyright violation in the New York action and Defendants failed to timely and properly remove the matter, a judgment in favor of the Plaintiff would have been enforceable against the Defendants.   Applying this factor against Defendants under the circumstances would constitute the ultimate example of letting the Plaintiff have the cake and eat it too.

The final factor asks whether a better or more effective remedy exists than declaratory relief.   Some courts have, when examining this factor, simply asked whether it's simply better to wait for the state action to play out in the forum plaintiff chose and thereby make moot any request for declaratory relief.

*Bituminous Cas. Corp. v. J L Lumber Co.,* 373 F.3d 807, 815 (6th Cir. 2004).  In the case at bar, the Court need not wait.  A remedy was ordered 14 months before Plaintiff recycled and shopped this latest iteration of this case to this forum.  The "remedy" was dismissal of what amounts to claims based on volumes of ancient history that a court of competent jurisdiction fully and fairly adjudicated.

While the Sixth Circuit has given sparse guidance on how these five factors are to be balanced,[8] because they all militate in Defendants' favor, declaratory relief should not issue and Plaintiff's complaint should be dismissed.

## V.   **CONCLUSION**

For the foregoing reasons, this Honorable Court should dismiss Plaintiff's Complaint.  Notwithstanding the needless and cheap assassination of Defendant Clinton's character, Plaintiff's chosen forum to air over a half century of dirty laundry rendered judgment. It appropriately closed the books on that chapter of a talented musician's life. This Court should respect that judgment.

Respectfully submitted,
/s/James P. Allen, Sr.
James P. Allen Sr. (P52885)
Attorney for Clinton and Thang
401 N. Main Street
Royal Oak, MI 48067
(313) 962-7777
jamesallen@allenbrotherspllc.com

---

[8] See *Scottsdale*, supra., at 563.

## CERTIFICATE OF SERVICE

I hereby certify that on September 8, 2022, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send notification of such filing to the attorneys of record.

/s/Veronica Durr
401 N. Main Street
Royal Oak, MI 48067
(313) 962-7777
vdurr@allenbrotherspllc.com