UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

ESTATE OF GEORGE BERNARD WORRELL, JR.,

    PLAINTIFF,    Case No. 4:22-cv-11009
             Hon. Shalina D. Kumar
             Hon. Mag. David R. Grand

v.

THANG, INC., GEORGE CLINTON, SONY
MUSIC ENTERTAINMENT, UNIVERSAL
MUSIC GROUP, WARNER BROTHERS RECORDS,
HDH RECORDS, WESTBOUND RECORDS, AND
SOUND EXCHANGE, INC.,

    DEFENDANTS.

---

JAMES P. ALLEN, SR. (P52885)
Allen Brothers, PLLC
401 N. Main Street
Royal Oak, MI 48067
(313) 962-7777
jamesallen@allenbrotherspllc.com
Attorneys for Defendants, Thang, Inc.
and George Clinton, only

---

## REPLY IN SUPPORT OF DEFENDANTS CLINTON AND THANG'S MOTION TO DISMISS PURSUANT TO FEDRCIVP 12(b)(6)

Plaintiff has now, for the first time, clearly articulated a theory of its case. Because, Plaintiff says, Defendant Clinton denied *he signed* a particular version of a contract purportedly signed by only one of its parties (i.e. Plaintiff's decedent) forty-four years earlier, that that denial somehow magically conferred in Plaintiff's decedent an ownership interest in dozens of copyrighted works, one he never asserted in his lifetime. The holes in this "reasoning" would keep all of the cheese makers in Switzerland busy for generations. Since seven pages is not enough room to list them all, Defendants Thang and Clinton limit themselves to the following three:

**1. THE NEW YORK SUPREME COURT'S 2020 DECISION REFUSING TO ENFORCE THE UNSIGNED VERSION OF THE PUTATIVE JANUARY 1, 1976 RECORDING CONTRACT DID NOT NULLIFY THE CONTRACTUAL AGREEMENTS BY WHICH THE PARTIES LIVED FOR OVER HALF A CENTURY.**

Clinton's January 10, 2020 declaration, far from disavowing that *any* recording contract existed between Plaintiff's decedent and Defendant Thang, merely states that *the version attached to Plaintiff's New York complaint* was not signed by anyone acting on Thang's behalf. This averment shouldn't have surprised Plaintiff. The signature line for Thang on the version attached to Plaintiff's New York Complaint, as Plaintiff clearly admits, is blank. Clinton's declaration goes further to state that, to the best of his recollection from 42 years earlier, he had never seen a copy of the purported contract signed by Thang. That is a far cry from saying that no contract of any sort existed between Worrell and Thang.

Fortunately, the sworn words of the living George Bernard Worrell provide some insight into the existence of *the* contracts governing the parties' relationship for decades. They also completely vitiate the rationale Plaintiff offers for its claim (i.e., that the New York Court's refusal to enforce an unsigned version of a contract magically grants the estate an ownership interest in the copyrighted works at issue). On December 4, 1981, Worrell verified, under oath, a complaint he filed alleging that he had two recording contracts, one with Thang, Inc. and one with another Clinton-owned company, Malbiz Music, Inc., to perform and provide "certain artistic musical services" and which assigned rights in compositions he wrote and composed. (See Exhibit A)

As Plaintiff correctly points out at ECF 34 PageID 221 Fn 1

> "The doctrine of judicial estoppel "prevent[s] a party from taking a position inconsistent with one successfully and unequivocally asserted by the same party in a prior proceeding. *Tennyson v Challenge Realty (In re Tennyson),* 313 B.R. 402, 406-07 (Bankr. W.D. Ky., 2004) (Citing *Reynolds v. Commissioner,* 806 F.2d 469, 472 (6th Cir. 1998))."

In this case, not only did Plaintiff's decedent prevail in the 1981 litigation enforcing his recording contracts, he successfully enforced them a year earlier in yet another case he admitted he settled (See ECF 1, Ex C, ¶ 26 Page ID 41), and perhaps in subsequent proceedings.[1] On its face, ¶ 40 of the present Complaint admits that the

---

[1] Defense counsel became aware of Exhibit A hereto in the process of compiling Defendants' initial disclosures. One of the problems with unsettling over a half century of commercial conduct between these parties is that there are decades of

parties had an oral contract for the period of time covering the creation of most of the works at issue. It specified that Worrell was paid weekly for his services along with a "percentage of royalties, if any, of the bands[sic] recordings." (See ECF 1 PageID 13 ¶ 40). The existence of these contracts, which Plaintiff cannot now deny and which the Court may properly consider in deciding the present motion, undermines Plaintiff's claims of ownership in the works at issue.

Plaintiff's failure to report any ownership interest in the copyrighted interest as required by Washington probate rule 11.44.015(1)(f) also undermines its belated claim of ownership in the copyrighted works. (See RCW 11.44.015(1)(f) attached as Exhibit B). Decades after the works were composed and properly registered, six years after Plaintiff's decedent death, almost three and a half years after the estate was opened, and three and a half years after Clinton first disavowed the unenforced version of the contract, Plaintiff has not filed *any* inventory, let alone one claiming an ownership interest in the copyrighted works. (See Exhibit C). Although Worrell never asserted an ownership interest while he was alive and his estate has, for years, followed suit, it wants this Court to declare what neither has, to this day, declared.

---

archived court documents that will need to be unearthed—if they can be---to get at the specifics of what is otherwise lost to time and faded memories. For now, as pointed out previously, the Court may take the prior court filings into consideration when deciding this motion under the doctrine set forth in *Amini v. Oberlin Coll,* 259 F.3d 493, 502 (6th Cir. 2001) (Courts may review "matters of public record" like court filings when deciding motions to dismiss filed pursuant to FEDRCIVP 12(b)(6).

In short, Plaintiff's decedent repeatedly acknowledged the existence of contractual agreements by which he provided his artistic services for the production of the works at issue. He successfully sued to enforce those contractual rights while he was alive. After receiving the benefits of those contracts during his lifetime, his estate now seeks to rewrite (or ignore) their terms altogether and, with a slick legal slight of hand, convert the estate's position from a paid musician for hire to one with an ownership interest in the copyrighted works. For the reasons stated below, Defendants should not, at the expense of potentially several hundred thousand dollars, engage in discovery of a claim having no legal merit.

## 2. COPYRIGHT OWNERSHIP CLAIMS ARE TIME-BARRED THREE YEARS AFTER THE WORK IS CREATED.

Plaintiff would have this Court believe that it took Worrell and his estate more than half a century to figure out that he had an ownership interest in the copyrighted works in this case. Unfortunately, that's a luxury that 17 U.S.C. 507(b) does not afford. The decision in *Gomba Music, Inc., v. Clarence Avant & Interior Music Corp.*, 62 F.Supp 3d 632, 644-5 (EDMI 2014) is, again, instructive. There, Judge Michelson, citing *Merchant v. Levy*, 92 F.3d 51, 56 (2nd Cir. 1996), found:

> A co-author knows that he or she created a work from the moment of its creation. Accordingly, co-authors are time-barred three years after accrual of their claim from seeking a declaration of co-ownership rights and any remedies that flow from such a declaration.

Plaintiff's claim is entirely premised on the dubious claim that Clinton's rejection of one version of an unsigned recording contract somehow retroactively conferred upon Plaintiff's decedent an ownership interest in copyrighted works. Plaintiff would have this court believe that its decedent somehow could not discern his ownership interest after what now appears to have been several successful trips to courthouses in New York and California to enforce other version(s) of the recording contract(s) that his estate now wants to ignore.

This is not a case where Clinton disavowed that *any* recording contract existed between Defendants (as well as other companies). As demonstrated above, the existence of recording contracts was established long before Worrell's estate filed its 2020 New York State complaint. Like the Plaintiffs in *Merchant,* Worrell surely would have known long before his death whether he had co-ownership in the copyrighted works as a co-author *from the moment of creation.* For all of its bluster and libel, the Complaint does not even attempt to allege that Clinton concealed his position with respect to one version of a unilaterally signed recording contract. Indeed, such a position would be a logical absurdity. How could Clinton hide his failure to execute a draft contract in Worrell's possession?

The only published Sixth Circuit decision on when a party is deemed to have constructive knowledge of a copyright claim is *Gomba Music's* favorable treatment of the Second Circuit's *Merchant* decision which strongly suggests that where, as

here, a plaintiff pursues an ownership claim, the clock starts running upon creation of the work because co-authors know they create a work from the moment of its creation. At the very least, Plaintiff had several trips to court in the 1980's where he had every opportunity to discover Clinton's position regarding the parties' respective business relationships. Importantly, *Gomba* appears to endorse the approach taken by the Sixth Circuit in securities fraud cases regarding when a plaintiff has sufficient notice of a claim for the statute of limitation to begin. *Id.,* at 645; See also *Harner v. Prudential-Bache Sec. Inc.,* 35 F.3d 565 (table), [published in full text format at 1994 U.S. App. LEXIS 25266], 1994 WL 494871, *4 (6th Cir. 1994). (The plaintiff only need possess a "low level of awareness" of claim; "he need not fully learn of the alleged wrongdoing. Knowledge of all facts is not required to set off the prescriptive clock. Thus, the clock begins to tick when a plaintiff senses the 'storm warnings,' not when he hears thunder and sees lightening.")

Accordingly, if the Court finds that Clinton's 2020 rejection of one version of an unsigned contract conferred upon Worrell ownership over the copyrighted works in spite of his sworn assertions to the contrary, 17 U.S.C 507(b) gave him three years from the date of the works' creation to assert his ownership rights. Since none of the works at issue here was created within the statute of limitations, Plaintiff's Complaint is barred by the statute of limitations.

**3. SIMPLY BECAUSE A SUIT IS PREDICATED ON RIGHTS CONFERRED BY THE COPYRIGHT ACT DOES NOT MEAN IT "ARISES UNDER"**

**THE COPYRIGHT ACT FOR PURPOSES OF ESTABLISHING EXCLUSIVE FEDERAL JURISDICTION UNDER 28 U.S.C. 1338(a).**

Cases involving claims of ownership in copyrighted works, such as the one at bar, are appropriately adjudicated in state courts. *Peay v. Morton*, 571 F.Supp. 108 (MD Tenn 1983) is instructive. In *Peay* a songwriter sued in federal court asserting ownership interest in a song later released by a band. Defendant moved to dismiss claiming that federal courts lacked subject matter jurisdiction to determine issues of ownership in copyrighted works. The Court concluded, where the "essence of the plaintiff's claim" is a declaratory judgment action to establish the plaintiff's ownership in a copyrighted work, jurisdiction remains with the state courts. Citing, *Keith v. Scruggs*, 507 F. Supp. 968, 970 (SDNY 1981). *Peay* appears to be in line with a long line of cases holding that "Congress left a considerable residue of power [to] pass on 'copyright questions'", including questions arising in contract and title and ownership disputes. *Cresci v. Music Publishers Holding Corp.,* 210 F.Supp 253 at 260 (SDNY 1962). Accordingly, since the issue of Plaintiff's ownership in the copyrighted works could have been raised in the New York action, res judicata bars the nearly identical claim for declaratory relief herein.

Respectfully submitted,
/s/JAMES P. ALLEN SR.
James P. Allen Sr., (P52885)
Attorneys for Thang and Clinton
401 N. Main Street
Royal Oak, MI 48067
(313) 962-7777

- 8 -

## CERTIFICATE OF SERVICE

I hereby certify that on October 12, 2022, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send notification of such filing to the attorneys of record.

/s/Veronica Durr
401 N. Main Street
Royal Oak, MI 48067
(313) 962-7777
vdurr@allenbrotherspllc.com