UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ESTATE OF GEORGE WORRELL, JR.,                    Case No. 22-11009

     Plaintiff,                                                   F. Kay Behm
v.                                                                        United States District Judge

THANG, INC., and GEORGE CLINTON,

     Defendants.
_____ /

**OPINION AND ORDER GRANTING MOTION TO STRIKE REPLY (ECF No. 38)**
**AND DENYING MOTION TO DISMISS THE COMPLAINT (ECF No. 33)**

I.     **INTRODUCTION**

Plaintiff, the Estate of George Worrell, Jr., filed this copyright Complaint on

May 10, 2022. (ECF No. 1). Worrell was a bandmate and collaborator of George

Clinton, and his Estate alleges that Defendants have failed to pay royalties from

the musical works at issue. Worrell died in 2016 and conveyed all his intellectual

property to his wife, Ms. Worrell. The Estate filed suit in New York against the

Defendants alleging breach of contract and seeking unpaid royalties/earnings.

Clinton claimed in the New York suit that he never counter signed the parties'

agreement. The New York court found the contract unenforceable. However, by

renouncing the contract, the Complaint alleges that any of Worrell's rights

1

purportedly acquired by the record company were never transferred.  Thus, the Estate now brings this copyright action.

On September 8, 2022, Clinton and Thang filed a Motion to Dismiss and a response and reply were filed.  (ECF Nos. 33, 34, 37).[1]  The Estate filed a Motion to Strike the Reply, as containing matters outside the scope of the Complaint, which has also been fully briefed.  (ECF Nos. 38, 39, 40).  The court held a hearing on these motions via video teleconference on April 18, 2023.

For the reasons set forth below, the court **GRANTS** the Motion to Strike the Reply in part and Exhibit A and **DENIES** the Motion to Dismiss the Complaint.

## II.    FACTUAL BACKGROUND

Worrell, professionally known as "Bernie Worrell," was a former bandmate of Clinton's and collaborated with Clinton as a songwriter, musician, producer, and performer on the majority of songs that were recorded in the 1970s and 1980s by Clinton and various bands and/or musical groups, including "Parliament" and "Funkadelic," in which Clinton performed with Mr. Worrell and other musicians.  (ECF No. 1, ¶ 3).  According to the Complaint, the recordings, including audio and audiovisual recordings, were jointly created by Worrell with Clinton,

---

[1] The other Defendants in this matter – all major record companies – have not yet answered the Complaint.  They must file their answer or responsive pleading 30 days following the court's decision on the pending Motion to Dismiss.  (ECF No. 42).

and/or contain the results of Worrell's musical and/or vocal performances, or upon which his name, image or likeness appear in connection with Defendants. *Id*.

The Complaint alleges that on January 1, 1976, Defendants presented Worrell with a recording contract to sign with Thang, Inc.  (ECF No. 1, ¶ 6). Worrell signed and delivered the agreement and Defendants led Worrell to believe that the contract was fully executed ("Agreement").  *Id*.  Under the Agreement, Worrell rendered his services as a musician, songwriter, recording artist and producer, individually and as a member of a group, exclusively to Thang, in the production of phonograph records.  As consideration for his services in the creation and performance of recordings, Worrell was entitled to ongoing royalty payments and accountings for all records sold, licensed, or otherwise exploited containing the Works.  *Id*. at ¶ 7.

Worrell passed away on June 24, 2016.  In his will dated March 10, 2016, Worrell conveyed all tangible and intangible property including all intellectual property and rights to royalties to his wife, Ms. Worrell, who is the personal representative of the Estate.  (ECF No. 1, ¶ 8).  On May 10, 2019, the Estate filed suit in the State of New York against Defendants alleging Breach of Contract, Breach of Duty of Good Faith and Fair Dealing, and asking for Accounting and

3

Declaratory Relief seeking payment of royalties and earnings due pursuant to the

Agreement for the sale and exploitation of recordings embodying the Works that

had been jointly created by Worrell and Clinton, and which contained Worrell's

musical performances.  *Id*. at ¶ 10.

      In the New York lawsuit, Clinton claimed that he never countersigned the

Agreement.  According to the Complaint, Defendants submitted sworn testimony

that they did not believe that any contract existed between themselves and Mr.

Worrell, as Clinton declared he had never signed the proposed written

Agreement.  (ECF No. 1, ¶ 11; ECF No. 1-5).  Accordingly, the Estate alleges that it

first became aware of Defendants' claim that no contract existed between

themselves and Mr. Worrell shortly after Clinton's deposition in another matter

on May 10, 2019.  *Id.* at ¶ 12.  In 2021, the New York Supreme Court ruled that

Worrell and Defendants did not have a contract due to the lack of bilateral

execution—specifically, due to Clinton's declaration that he never signed the

Agreement.  The New York Supreme Court further determined that any testimony

on Worrell's behalf would be a violation of New York's Dead Man statute.  *Id*. at

¶ 13.

      The Complaint alleges that, because the Agreement was declared to be null

and void, Worrell never transferred his interests in the Works to Defendants.

(ECF No. 1, ¶ 15).  Thus, according to the Complaint, because Defendants declared

in the New York lawsuit and the state court confirmed in an order, no contract

existed between themselves and Worrell, then Worrell was a co-creator and joint

owner of the master recordings of the Works whose interest therein now

rightfully belongs to the Estate.  *Id*. at ¶ 16.   The first count of the Complaint asks

the court to declare that Worrell was a co-creator and joint owner of the Works,

and that the Estate has the right to continuing royalties.  (ECF No. 1, Count I).  The

second count of the Complaint seeks an accounting of the books and records of

Defendants related to royalties.  (*Id.*, Count II).

III.   **ANALYSIS**

    A.   <u>Motion to Strike Reply Brief</u>

The Estate moves to strike the reply brief in part and Exhibit A attached

thereto as falling outside the scope of the Complaint, proffering incomplete

documents, and for raising new issues for the first time in reply.

In the court's view, Defendants have impermissibly raised a new issue in

reply as it relates to the 1981 Complaint it attaches to the reply.  In their motion

to dismiss, Defendants raise three discrete issues.  First, they argue that the

Complaint should be dismissed because it is barred by *res judicata*, citing the

dismissal of an action in the New York state courts on March 1, 2021.  (ECF No.

33-2).  Second, Defendants claim that the allegations supporting the Estate's

claim for an accounting are insufficient.  And third, Defendants allege that

declaratory relief is unavailable because (1) there is no valid underlying claim; (2)

any underlying claim is foreclosed by the statute of limitations in 17 U.S.C.

§ 504(b)[2]; and (3) the Estate cannot satisfy the five factors necessary to obtain

declaratory relief.  (ECF No. 33).

    In their reply, Defendants argue that the New York court's recent decision

did not nullify *earlier* contracts between the parties, which Defendants maintain

govern the relationship between the parties, not the Copyright Act.  (ECF No. 37).

Defendants attach a verified complaint signed by Worrell in December 1981,

which refers to a contract between the parties, but which does not include a copy

of said agreement.  (ECF No. 37-2).  Defendants also argue that the Estate's

copyright claims are time barred based on 17 U.S.C. § 507(b).  Finally, Defendants

contend that the Estate's copyright ownership claim could have been litigated in

state court, thus supporting their *res judicata* argument.  This first argument falls

well outside the scope of the initial motion to dismiss.

---

[2] This subsection of the "Remedies for infringement" provision of the Copyright Act refers to "actual damages and profits", not a statute of limitations.  Perhaps Defendants intended to refer to § 507(b) as they did in the reply brief.

It is well-settled that "this court will not consider arguments that are raised for the first time in a reply brief." *Appalachian Railcar Servs., Inc. v. Boatright Enters., Inc.*, 602 F. Supp. 2d 829, 872 n. 24 (W.D. Mich. 2008) (Maloney, J.) (citing *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008) ("We have found issues to be waived when they are raised for the first time in ... replies to responses.")). The "remedy for dealing with new evidence first appearing in a reply is that we will not consider issues or evidence raised for the first time in [a] reply." *Am. Traffic Solutions, Inc. v. Redflex Traffic Sys., Inc.*, 2009 WL 775104, *1 (D. Ariz. Mar. 20, 2009) (citing *Gadda v. State Bar of Calif.*, 511 F.3d 933, 937 n. 2 (9th Cir. 2007)). Nothing in the initial motion to dismiss would have put the Estate on notice that Defendants sought to dismiss the Complaint based on the 1981 verified complaint or any of the agreements referenced therein.[3] Defendants do not directly address the argument that they first raised this issue in the reply. Instead, they contend that they have directly responded to the Estate's "delayed characterization" of this case. Defendants' argument suggests

---

[3] While Defendants now suggest that it only denounced the unsigned contract attached to the New York complaint, and not any *other* contracts, it is not clear that the agreement referenced in the 1981 complaint is in fact any different than the agreement referenced in the New York action, given that both agreements purport to have been made in January 1976. (ECF No. 37-2); (ECF No. 1, ¶ 6). This, however, is not an issue the court can sort out in the context of a motion to dismiss and is best left to discovery and summary judgment.

that they could not have discerned the basis of the Estate's claim from the

Complaint.

Yet, the Complaint makes clear its theory that Defendants denounced the

existence of any contract with Worrell, (ECF No. 1, ¶¶ 10-12), and that such

denunciation meant that no contract existed between the parties, making Worrell

a co-creator of and joint owner in all the recordings at issue.  (ECF No. 1, ¶ 16).

Thus, the court finds suspect Defendants' claim that the Estate did not make clear

its theory until it filed the response to the motion to dismiss.  At the hearing,

counsel clarified that he did not have access to the 1981 complaint when he filed

the Motion to Dismiss.  However, the court still finds that attaching the 1981

complaint to the reply, which alludes to yet another contract, is well outside the

scope of the arguments raised in the Motion to Dismiss.  As such, this argument

and evidence will not be considered in the context of the pending Motion to

Dismiss.  Given the foregoing conclusion, the court need not consider the other

arguments the Estate raises in support of its motion to strike the reply.

    B.    <u>Motion to Dismiss</u>

        *1.    Standard of Review*

In deciding a motion to dismiss under Rule 12(b)(6), the court "must

construe the complaint in the light most favorable to the [nonmoving party] ...

[and] accept all well-pled factual allegations as true*." League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007); *see also Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 562 (6th Cir. 2003).  The complaint must provide "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  Moreover, the complaint must "contain[ ] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009).

A complaint is subject to dismissal for failure to state a claim if the allegations, taken as true, show the plaintiff is not entitled to relief, such as "when an affirmative defense ... appears on its face." *Jones v. Bock*, 549 U.S. 199, 215 (2007) (quotation marks omitted).  A claim has "facial plausibility" when the nonmoving party pleads facts that "allow[ ] the court to draw the reasonable inference that the [moving party] is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. However, a claim does not have "facial plausibility" when the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Id*. at 679.  The factual allegations "must do more than create

speculation or suspicion of a legally cognizable cause of action; they must show entitlement to relief." *League of United Latin Am. Citizens*, 500 F.3d at 527. Showing entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).

As a general rule, a court cannot consider matters outside the four corners of the complaint when ruling on a motion to dismiss under Rule 12(b)(6). *Clark v. Walt Disney Co*., 642 F. Supp. 2d 775, 781 (S.D. Ohio 2009).  However, a court may consider material "incorporated into the complaint by reference," *Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 551 U.S. 308, 322 (2007), and may consider documents that a defendant attaches to a motion to dismiss if the documents are referred to in the complaint and are central to the plaintiff's claims.  *Weiner v. Klais & Co., Inc*., 108 F.3d 86, 89 (6th Cir. 1997).

### 2. Res Judicata/Claim Preclusion

Notably, "the standards set out in Rule 12(b)(6) typically set a high hurdle for the application of res judicata ..." *Hanger Prosthetics & Orthotics East, Inc. v. Henson*, 299 F. App'x 547, 555-56 (6th Cir. 2008) (applying Tennessee law of claim preclusion).  It can be proper to reach the issue where "the relevant facts are

uncontroverted." *Id*. at 556.  Defendants argue that the Estate's Complaint is

barred by *res judicata* or claim preclusion because its claims were or could have

been brought in the New York action.  The burden of showing *res judicata* bars a

claim is on the party asserting the defense.  *Abbott v. Michigan*, 474 F.3d 324, 331

(6th Cir. 2007).  The parties agree that New York preclusion law applies because

the court must give the same preclusive effect to a state-court judgement as that

judgment would receive in the rendering state.  *Id*. at 330.  "In New York, res

judicata, or claim preclusion, bars successive litigation based upon the 'same

transaction or series of connected transactions' if: (i) there is a judgment on the

merits rendered by a court of competent jurisdiction, and (ii) the party against

whom the doctrine is invoked was a party to the previous action, or in privity with

a party who was."  *Matter of People of the State of N.Y., by Eliot Spitzer, as

Attorney Gen. v. Applied Card Sys., Inc.*, 11 N.Y.3d 105, 122 (2008).

Defendants contend that New York follows a transactional analysis and any

claim arising out of the same transaction or series of transactions is barred even

where a different theory is asserted, or different remedy sought.  *O'Brien v. City

of Syracuse*, 429 N.E.2d 1158, 1159 (N.Y. 1981).  The Estate maintains that,

regardless of any transactional analysis, the rule of jurisdictional competency bars

the application of claim preclusion here.   In its claim preclusion jurisprudence,

New York has adopted "the position of the Restatement (Second) of Judgments that res judicata is inapplicable where the plaintiff 'was unable to ... seek a certain remedy or form of relief in the first action because of the limitations on the subject matter jurisdiction of the courts or restrictions on their authority to entertain ... multiple remedies or forms of relief in a single action, and the plaintiff desires in the second action ... to seek that remedy or form of relief.'" *Parker v. Blauvelt Volunteer Fire Co.*, 93 N.Y.2d 343, 349 (1999) (citing Restatement [Second] of Judgments § 26(1)(c)).  Accordingly, the Estate argues that, because the New York state courts did not have jurisdiction over the Estate's claim under the Copyright Act, the claims at issue in this lawsuit could not have been brought in the New York action and, thus, cannot be barred by claim preclusion.

Defendants counter that claims of ownership in copyrighted works, like that asserted here, may be adjudicated in state court.  *See Peay v. Morton*, 471 F. Supp. 108 (M.D. Tenn. 1983).  It is true, as the Sixth Circuit explains, that not all claims of co-ownership arise under the Copyright Act.  *Severe Records, LLC v. Rich*, 658 F.3d 571, 581 (6th Cir. 2011) (citing *Cambridge Literary Props., Ltd. v. W. Goebel Porzellanfabrik G.m.b.H. & Co. Kg.*, 510 F.3d 77, 81 (1st Cir. 2007)).  For example, when the issue of co-ownership may be determined by the terms of a

contract governed by state law or through other ownership interests governed by state law, the dispute does not require application of the Copyright Act.  *Id*. However, where co-ownership results from "purported statutory co-authorship" the question of co-ownership is governed by the Copyright Act.  *Severe Records*, 656 F.3d at 581 (quoting *Cambridge Literary Props.*, 510 F.3d at 81) (citing 3 M. Nimmer & D. Nimmer, Nimmer on Copyright § 12.01[A][1][b] (2007) (endorsing the view that in an action seeking declaratory judgment of plaintiff as co-author and for an accounting, federal jurisdiction is exclusive because "copyright ownership by reason of one's status as co-author arises directly from the terms of the Copyright Act itself")).  The Sixth Circuit also pointed to several authorities holding that federal district courts have *exclusive* jurisdiction to determine joint authorship of copyrighted work.  *Severe Records*, 656 F.3d at 582 (collecting cases).

In the present case, given Defendants' repudiation of the parties' purported contract, the Estate now brings a claim asserting that Defendants owe royalties from the sales of the Works based on the Estate's claimed co-ownership *and* co-authorship.  *See e.g.*, ECF No. 1, ¶ 3 (The recordings were "jointly created" by Worrell with Clinton); ¶ 5 (The Works were "created together with Mr. Worrell…"); ¶ 14 (Defendants repudiation of the contract was an attempt to avoid

sharing royalties or earnings from the Works that "Clinton and Mr. Worrell created together."); ¶ 43 (Since Clinton denied entering into the contract and Worrell retained his ownership/copyright interests derived "from his joint authorship and creation of the Works", Defendants cannot avail themselves of the benefits of the bargain contained the disavowed agreement.); ¶ 52 ("Therefore, due to Mr. Worrell's undeniable and integral co-authorship and creation of the Works, he was, and Plaintiff remains, a co-owner thereof pursuant to US Copyright law.").  The fact that co-authorship/co-ownership is disputed in this case means that the claims arise under federal copyright law, not state law. "***When co-ownership is conceded***, and the only issue is the contractual or equitable division of profits, there is no copyright law issue; a claim for an accounting of profits arises under state, not federal law."  *Heriot v. Byrne*, 2008 WL 5397496, at *3 (N.D. Ill. Dec. 23, 2008) (emphasis in original) (citing *Gaiman v. McFarlane*, 360 F.3d 644, 652 (7th Cir. 2004)).  Here, however, co-ownership and co-authorship are contested and that is an issue that must be resolved under the Copyright Act.  *Id*.  Thus, the claims set forth in the Complaint arise under federal copyright law and could not have been brought in the New York lawsuit.  For this reason, *res judicata* does not bar the Estate's claims.  Given this conclusion, the court need not address the Estate's alternate argument that the claims in this

case do not arise from the same transaction or core of operative facts as those in the New York action.

### 2.   *Declaratory Judgment and Accounting Claims*

Defendants argue that the Estate has no valid declaratory judgment claim because there are no valid underlying claims that a declaratory ruling could settle, and any underlying claims are barred by the statute of limitations.  In response, the Estate argues that it plainly seeks a declaration that Worrell is a co-owner and co-author of the Works.  Further, the Estate contends that its claim is timely because this suit was filed within the three-year statute of limitations, which began to accrue when Defendants repudiated the contract in the New York action.

As to Defendants' first argument, the court finds the present circumstances are similar to those in *Moore v. HorrorHound LTD, LLC*, No. 3:14-CV-836, 2015 WL 5083948, at *5 (E.D. Va. Aug. 27, 2015).  There, the defendant argued that the plaintiff's proposed amended complaint was futile because it did not assert a plausible claim for declaratory judgment.  *Id*.  The plaintiff argued that the proposed amended complaint was not futile because it properly stated a claim for a "declaratory judgment of joint authorship under the Copyright Act and claims for accompanying remedies resulting therefrom."  *Id*.  To decide this question, the

court undertook to determine whether, if the plaintiff were found to be a joint

author of the original work, he would be entitled to profits from the derivative

works at issue.  *Id*.  The court turned to applicable federal copyright law, noting

that the Copyright Act defines a "joint work" as "a work prepared by two or more

authors with the intention that their contributions be merged into inseparable or

interdependent parts of a unitary whole."  *Id.* (quoting 17 U.S.C. § 101).  The

Copyright Act further provides that "[t]he authors of a joint work are coowners of

copyright in the work."  17 U.S.C. § 201(a); *see also Custom Dynamics, LLC v.

Radiantz LED Lighting, Inc.*, 535 F. Supp. 2d 542, 550 (E.D. N.C. 2008) ("Where two

parties engage in a joint effort to create a copyrighted work, they are joint owners

of the resulting copyright.") (citations omitted).  *Moore* went on to explain that

while joint authorship of a pre-existing work does not automatically make the

joint authors co-owners of the derivative work, *Weissman v. Freeman*, 868 F.2d

1313, 1317 (2d Cir. 1989), "a joint owner is [still] under a duty to account to the

other joint owners of the [pre-existing] work for a rateable share of the profits

realized from his use of the work."  *Moore*, at *5 (quoting 1–6 Nimmer on

Copyright § 6.12); *see also Thomson v. Larson*, 147 F.3d 195, 199 (2d Cir. 1998)

("[E]ach joint author has the right to use or to license the work as he or she

wishes, subject only to the obligation to account to the other joint owner for any

profits that are made."); *Weissmann*, 868 F.2d at 1318 (citation omitted) ("The only duty joint owners have with respect to their joint work is to account for profits from its use.").  The court, noting that the proposed amended complaint sought a declaratory judgment that the parties were joint authors, concluded that a claim for declaratory judgment was stated because, if the plaintiff were found to be a joint author, the proposed amended complaint properly requested the plaintiff's pro rata share of the profits that the defendant enjoyed from the original joint work, along with profits that the defendant enjoyed from the derivative work.  *Id.* at *6.  While *Moore* focused in part on derivative works, the main premise applies here:  if Worrell is found to be a joint author of the Works at issue in this case, the Estate is entitled to its share of any royalties or other applicable income from the Works.   Thus, a proper claim for declaratory judgment is stated.

The parties disagree on whether the court should exercise its discretion to allow the declaratory judgment claim to move forward under the factors set forth in *Grand Trunk Western Railroad Co. v. Cons. Rail Corp.*, 746 F.2d 323 (6th Cir. 1984), which are as follows:

> (1) whether the declaratory action would settle the controversy;

17

(2) whether the declaratory action would serve a useful
purpose in clarifying the legal relations in issue;

(3) whether the declaratory remedy is being used merely
for the purpose of "procedural fencing" or "to provide
an arena for a race for res judicata;"

(4) whether the use of a declaratory action would
increase friction between our federal and state courts
and improperly encroach upon state jurisdiction; and

(5) whether there is an alternative remedy which is
better or more effective.

*Id*. at 326.  Defendants contend that the first factor weighs in their favor because

the controversy was settled in their favor in the New York action.  As discussed

above, the court concludes otherwise.  In the court's view, given that co-

authorship/co-ownership is disputed, and the only way to resolve such a matter is

through a declaratory judgment action, this factor weighs in the Estate's favor.

The second factor covers similar ground and weighs in the Estate's favor.  As to

the third factor, the court finds no basis to conclude that this lawsuit is based on

procedural fencing or was brought to improperly obtain a ruling for *res judicata*

purposes.  The fourth factor also weighs in the Estate's favor given that the

federal courts have exclusive jurisdiction over co-authorship/co-ownership

disputes under the Copyright Act.  Finally, there appears to be no alternative

remedy and a declaratory judgment action in federal court is the Estate's

exclusive remedy for adjudicating a co-authorship/co-ownership dispute under the Copyright Act.  Thus, the court concludes that all the of *Grand Trunk* factors weigh in favor of allowing this declaratory judgment claim to go forward.

Next, the court finds unavailing Defendant's contention that the allegations supporting the Estate's accounting claim are inadequate.  Defendants claim not to understand what type of accounting is sought – equitable or at law – or the substantive basis for such a claim – New York, federal or Michigan law.  As explained in *Heriot* and *Gaiman*, where co-authorship/co-ownership is disputed, as is the case here, a claim for an accounting of profits arises under federal copyright law, not state law.  *Heriot*, at *4 (citing *Gaiman*, 360 F.3d at 652). Fundamental to joint authorship and ownership is the duty to account.  This is so because co-authors to a joint work are to "be treated generally as tenants in common, with each co[-]owner having an independent right to use or license the use of a work, subject to a duty of accounting to the other co[-]owners for any profits."  *Valle-Vega v. Los Magnifikos, Inc.*, 2021 WL 5750597, *4 (D.P.R. July 1, 2021) (quoting *Davis v. Blige*, 505 F.3d 90, 98 (2d Cir. 2007) (internal quotation marks omitted)).  The court finds that the Complaint states a claim for an accounting of profits under the Copyright Act and gives Defendants sufficient notice of that claim.

Finally, the court must address Defendants' contention that the Estate's claims fail because any claim under the Copyright Act is barred the statute of limitations.  Defendants say that any claim of co-authorship or co-ownership expired three years after the Works were created, which was decades ago.  According to Defendants, *Gomba Music, Inc. v. Avant*, 62 F. Supp. 3d (E.D. Mich. 2014) stands for the proposition that a claim for co-authorship/co-ownership accrues at the time the works were created.  *Gomba* hardly stands for this proposition.  There, the court examined an issue about when a party is chargeable with constructive knowledge of a copyright claim, which does not appear to be an issue in this case.  *Id*. at 645.

With claims of co-ownership, the Sixth Circuit has articulated a different test than that identified by Defendants.  As explained in *Everly v. Everly*, 958 F.3d 442, 450 (6th Cir. 2020), a claim for ownership, "accrues only once, and if an action is not brought within three years of accrual, it is forever barred."  *Roger Miller Music v. Sony/ATV Publ'g*, 477 F.3d 383, 390 (6th Cir. 2007) (quoting *Zuill v. Shanahan*, 80 F.3d 1366, 1369 (9th Cir. 1996)).  To determine the accrual date of a claim for copyright ownership between co-authors, "the statutory period for any action to establish ownership begins to run whenever there is a 'plain and express repudiation' of ownership by one party as against the other."  *Everly*, 958 F.3d at

20

450 (quoting *Ritchie v. Williams*, 395 F.3d 283, 288 n.5 (6th Cir. 2005)); and citing

*Wilson v. Dynatone Publ'g Co.*, 892 F.3d 112, 118 (2d Cir. 2018); *Gaiman v.*

*McFarlane*, 360 F.3d 644, 653 (7th Cir. 2004) ("[T]he copyright statute of

limitations starts to run when the plaintiff learns, or should as a reasonable

person have learned, that the defendant was violating his rights, in this case by

repudiating [the plaintiff's] ownership of copyright." (internal citations omitted));

*Zuill v. Shanahan*, 80 F.3d 1366, 1369 (9th Cir. 1996) ("[C]laims of co-ownership,

as distinct from claims of infringement, accrue when plain and express

repudiation of co-ownership is communicated to the claimant, and are barred

three years from the time of the repudiation.").

In this case, the Complaint alleges that there was no repudiation of

Worrell's ownership/authorship rights until Clinton filed his Declaration on

January 10, 2020, in the New York action disavowing the existence of a binding

agreement between Worrell and Clinton.  (ECF No. 1, ¶ 11; ECF No. 1-5).  The

cases cited by Defendants are inapposite and merely stand for the unremarkable

proposition that co-owners are barred from seeking a declaration of the co-

ownership of their rights more than three years after the *accrual* of their claim.

Here, the accrual, as alleged in the Complaint, was the date of the repudiation.

Thus, for purposes of a motion to dismiss, the claims asserted in this lawsuit are

timely, because they accrued for the first time in January 2020.  Defendants'

attempts to dispute the factual allegations in the Complaint are best left to a

motion for summary judgment on the issue of statute of limitations.  As the Sixth

Circuit has admonished, "a motion under Rule 12(b)(6), which considers only the

allegations in the complaint, is generally an inappropriate vehicle for dismissing a

claim based upon the statute of limitations," unless "the allegations in the

complaint affirmatively show that the claim is time-barred," which is not the case

here.  *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012).

## IV.   CONCLUSION

For the reasons set forth above, the Motion to Strike the Reply in part and

Exhibit A is **GRANTED**, and the Motion to Dismiss the Complaint is **DENIED**.

**SO ORDERED**.

Date: April 25, 2023                              s/F. Kay Behm
                                                  F. Kay Behm
                                                  United States District Judge