UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ESTATE OF GEORGE BERNARD WORRELL, JR.,

    Plaintiff,

v.

THANG, INC., *et al.*,

    Defendants.
_____ /

Case No. 22-11009

F. Kay Behm
United States District Judge

<u>**ORDER GRANTING MOTION TO DISMISS (ECF No. 54)**</u>

**I.   INTRODUCTION**

Plaintiff, the Estate of George Worrell, Jr., (the Estate) filed this copyright Complaint on May 10, 2022. (ECF No. 1). Worrell was a bandmate and collaborator of George Clinton, and his Estate alleges that Defendants have failed to pay royalties from the musical works at issue. Worrell died in 2016 and conveyed all his intellectual property to his wife, Ms. Worrell. The Estate filed suit in New York against the Defendants alleging breach of contract and seeking unpaid royalties/earnings. Clinton claimed in the New York suit that he never counter signed the parties' agreement. The New York court found the contract unenforceable. However, by renouncing the contract, the Complaint alleges that

1

any of Worrell's rights purportedly acquired by the record company were never transferred. Thus, the Estate now brings this copyright action.

Defendant, SoundExchange, Inc. is a nonprofit collective rights management organization, which has been designated by the United States Congress to collect and distribute digital performance royalties for sound recordings. SoundExchange pays featured and non-featured artists and rights owners for non-interactive use of sound recordings under the statutory licenses set forth in 17 U.S.C. §§ 112 and 114. SoundExchange filed a motion to dismiss the Complaint, asserting that the Complaint does not contain sufficient facts to support any claim against it. (ECF No. 54). More specifically, SoundExchange argues that Count I fails as a matter of law because it is not a necessary party to this action. That is, if the court declares that Worrell co-owns the copyrights at issue, and Worrell otherwise complies with SoundExchange's registration and payment requirement, then SoundExchange will pay Worrell its share of the royalties collected, in accordance with its statutory obligations. SoundExchange also argues that Count II fails because the duty to account runs only between co-owners of a copyright. This matter is fully briefed, and the court held a hearing via video teleconference on November 8, 2023. (ECF Nos. 58, 61, 62). At the hearing, the court asked the parties to submit supplemental briefs on the issue of standing. The parties did so. (ECF Nos. 69, 70).

2

For the reasons set forth below, the court **GRANTS** the motion to dismiss because the Estate lacks standing to assert claims against SoundExchange and **DISMISSES** the claims against SoundExchange **WITHOUT PREJUDICE**. The court also **DENIES** SoundExchange's request for attorney fees under § 505 of the Copyright Act.

## II.     FACTUAL BACKGROUND

The court recounted the factual background pertaining to the Estate's claims in its Opinion and Order dated April 25, 2023 and that factual background need not be repeated here. However, further background regarding SoundExchange and its role in the copyright system is necessary to the court's analysis. Licensees making non-interactive use of sound recordings under the statutory licenses set forth in sections 112 and 114 of the Copyright Act are required to pay digital performance royalties for sound recordings to SoundExchange, which is the only "Collective designated by the Copyright Royalty Board to collect and distribute" such royalties. 37 C.F.R. §§ 380.2(a), 382.3(a); *see also* 37 C.F.R. §§ 380.4(d)(1), 382.5(d)(1) (designating SoundExchange "as the Collective to receive Statements of Account and royalty payments from Licensees and to distribute royalty payments to each Copyright Owner and Performer (or their respective designated agents) entitled to receive royalties under 17 U.S.C. 112(e) or 114(g)"). SoundExchange is required to "promptly distribute royalties

3

received from Licensees to Copyright Owners and Performers that are entitled thereto, or to their designated agents," but SoundExchange will "only be responsible for making distributions to those who provide the Collective with information as is necessary to identify and pay the correct recipient." 37 C.F.R. §§ 380.4(a)(1), 382.5(a)(1).

Under SoundExchange's governing internal policies, "overlaps" occur when multiple sound recording rights owners claim shares of a sound recording that exceed one-hundred percent for the same collection period. *See* "Understanding My Catalog: A Guide To 'Overlaps & Disputes,'" available at https://www.soundexchange.com/2019/11/06/understanding-my-catalog-a-guide-to-overlaps-disputes/, (last visited July 26, 2023). A sound recording becomes "disputed" when those sound recording rights owners, after being notified of an overlap, maintain their claims that exceed one hundred percent. *Id*. Once a sound recording is in "dispute" status with SoundExchange, all future royalties for that sound recording are put on hold and will not be distributed until the dispute is resolved. *Id*. SoundExchange makes clear that it "does not participate in the resolution process for disputed sound recordings." *Id*.

**Commented [CE1]:** Is it weird to have this be so far from the date of the issuance of the opinion?

The Complaint contains this single allegation involving SoundExchange:

> Upon information and belief, Defendant SoundExchange, Inc. is an independent non-profit organization organized and existing under the laws of

4

> the State of Delaware, with its headquarters at 733 10th Street, N.W. 10th Floor, Washington, DC, 20001. SoundExchange has been designated as the sole entity in the United States to collect digital performance royalties from statutory license users and to distribute those royalties to performing artists and copyright owners. Pursuant to this authority, SoundExchange collects statutory royalties from satellite radio, Internet radio, cable TV music channels, and other types of services for transmission of sound recordings, and distributes those royalties to artists and record companies.

(ECF No. 1, ¶ 28). Further, the Complaint requests the court enter the following relief as to SoundExchange:

> e. A declaration that Mr. Worrell was a co-creator, principal performer and producer of the Works and that Plaintiff is therefore entitled to collect Mr. Worrell's share of performer and producer royalties payable by SoundExchange and any other applicable societies and organizations throughout the world for the performance of sound recordings embodying the Works;
> * * *
> h. To enter a preliminary injunction requiring SoundExchange to deposit all money earned from exploiting the Works into the Court or mutually-agreed escrow account during the pendency of this Action;

(ECF No. 11, Prayer for Relief, PageID.21-22).

**III.　ANALYSIS**

　　A.　<u>Standard of Review</u>

While SoundExchange moves to dismiss this action under Rule 12(b)(6) for failure to state a claim on which relief may be granted, this court is obligated to

5

confirm jurisdiction before proceeding with any adjudication on the merits. *See e.g.*, *Chapman v. Tristar Prod., Inc.*, 940 F.3d 299, 304 (6th Cir. 2019) ("We are required in every case to determine—sua sponte if the parties do not raise the issue—whether we are authorized by Article III to adjudicate the dispute."); *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434 (2011) ("[F]ederal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either overlook or elect not to press."). While couched in terms of whether SoundExchange is an indispensable party, it is clear that the crux of its argument is really one of Article III standing.

     A challenge to a party's Article III standing invokes a federal court's subject matter jurisdiction and is properly raised under Federal Rule of Civil Procedure 12(b)(1). *In re Blasingame*, 585 B.R. 850, 858 (B.A.P. 6th Cir. 2018), aff'd, 920 F.3d 384 (6th Cir. 2019) (citing *Allstate Ins. Co. v. Global Med. Billing, Inc.*, 520 F. App'x 409, 410-11 (6th Cir. 2013) (unpublished) (citations omitted); *Kepley v. Lanz*, 715 F.3d 969, 972 (6th Cir. 2013)). As explained in *McQueary v. Colvin*, No. 15-00068, 2017 WL 63034, at *3 (W.D. Ky. Jan. 5, 2017), a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction "can challenge the sufficiency of the pleading itself (facial attack) or the factual existence of subject matter jurisdiction (factual attack)." *Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014) (citing

*United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994)). "A facial attack is a challenge to the sufficiency of the pleading itself. On such a motion, the court must take the material allegations of the petition as true and construed in the light most favorable to the nonmoving party." *McQueary*, at *3 (quoting *Ritchie*, 15 F.3d at 598); *see also Cartwright*, 751 F.3d at 759 ("A facial attack goes to the question of whether the plaintiff has alleged a basis for subject matter jurisdiction, and the Court takes the allegations of the complaint as true for purposes of the Rule 12(b)(1) analysis").

"A factual attack, on the other hand, is not a challenge to the sufficiency of the pleading's allegations, but a challenge to the factual existence of subject matter jurisdiction." *McQueary*, at *3 (quoting *Ritchie*, 15 F.3d at 598). And, where a plaintiff relies on evidence outside the complaint to support a standing claim, the challenge is factual, and the court instead must assess the factual basis for jurisdiction by weighing the evidence tendered. *Forgy v. Stumbo*, 378 F. Supp. 2d 774, 776 (E.D. Ky. 2005) (citing *DLX, Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004)); *see also Kardules v. City of Columbus*, 95 F.3d 1335, 1347 n. 4 (6th Cir. 1996) (The Sixth Circuit has recognized a district court's authority to consider extrinsic evidence when addressing the issue of standing.). Here, the court considers standing in the context of a facial attack, relying only on the four corners of the Complaint.

B.  <u>Standing</u>

SoundExchange initially argued that Count I (Declaratory Judgment) does not implicate SoundExchange, because SoundExchange neither purports to own nor exploits the copyrighted works in any way.  Further explaining its argument, SoundExchange asserted that it was not a necessary party to this action, citing cases denying motions to join indispensable parties where the moving party has not shown that the purported indispensable party claims an interest in the copyright.  As such, any declaration as to the co-ownership of the disputed works is between the Estate and the other Defendants.  SoundExchange also argued that the claim for an accounting is irrelevant as to SoundExchange because such a claim is viable only against a co-owner of a copyright.

In response, the Estate alludes to its position that it has supplied all necessary information to SoundExchange for payment and that SoundExchange has refused to pay the Estate.  (ECF No. 58, PageID.569-70, PageID.573).  However, these allegations are not contained in the Complaint.  At most, the Complaint contains a statement that all "Defendants have refused to pay any royalties or other earnings from the Works to Plaintiff, and have denied any obligation to compensate Plaintiff, or indeed to compensate any of Clinton's other bandmates who Clinton recently had the audacity to describe as mere 'side men', with no rights or interests to ownership or any entitlement to share artist

8

royalties or earnings from their recorded work, even though Mr. Worrell and Clinton's other bandmates have been widely recognized as integral members of Parliament and Funkadelic, among other groups, as set forth below." (ECF No. 1, ¶ 5). The Estate also claims that its accounting claim against SoundExchange arises under state law, not the Copyright Act.

While SoundExchange's motion speaks in terms of indispensable parties, in the court's view, the problem with the Estate's claims is one of Article III standing. As such, the court requested supplemental briefs from the parties on standing, which the parties provided. (ECF Nos. 69, 70). To meet the requirements for Article III standing, a plaintiff has the burden to establish that he has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial ruling." *Dickson v. Direct Energy, LP*, 69 F.4th 338, 342–43 (6th Cir. 2023) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)). At the pleading stage, the standing inquiry asks whether the complaint "clearly ... allege[s] facts demonstrating each element" of the standing inquiry. *Id*. (quotation marks omitted).

The case of *WTGD 105.1 FM v. SoundExchange, Inc.*, 88 F.Supp.3d 580 (W.D. Va. 2015) is instructive. As explained in *WTDG*, the Copyright Act permits radio stations to broadcast copyrighted sound recordings within a 150-mile radius

of the station's radio broadcast transmitter. *Id.* at 582. If a station transmits recordings beyond that radius, it must pay for the privilege of using any copyrighted sound recording. *Id*. It can do so by paying royalties either directly to the copyright owner or obtaining a statutory license. *Id*. SoundExchange is the sole collector of royalties due under statutory licenses. *Id*. The plaintiffs in *WTDG* were three radio stations who planned to implement geofencing technology that would allow them to transmit broadcasting only within the 150-mile radius of their transmitters. *Id*. Before investing in such technology, they sought a declaratory judgment that the technology would exempt them from copyright liability. *Id*. The magistrate judge recommended granting SoundExchange's motion to dismiss under Rule 12(b)(1) because the stations sought a declaration that their geofencing technology would make them exempt under the Copyright Act, not just exempt from royalties due under the statutory licenses; thus, the proper party defendant would be the copyright owners, not SoundExchange. *Id*. at 583. The injury was the stations' fear of incurring liability for infringing copyright owners' rights of public performance and reproduction if they simulcast exclusively to their local listeners without first obtaining statutory licenses. *Id*. Accordingly, the magistrate judge concluded that any cognizable injury under the Copyright Act would be traceable to the copyright owners, not SoundExchange. *Id*.

The district court agreed with the magistrate judge's analysis and concluded that the stations' allegations did not arise from any request that the court interpret or enforce the claimed contract – i.e., the statutory license; instead, the stations sought a declaration that its plan would satisfy an exemption from infringement liability under the Copyright Act. *Id*. at 585. The real issue, according to the district court, did not concern the terms of the statutory licenses administered by SoundExchange; rather the entire issue was based on the Copyright Act exemption. *Id.* Thus, the court concluded that the magistrate judge correctly found that the alleged injury was not fairly traceable to SoundExchange and instead the threatened injury was "copyright infringement traceable to the individual copyright owners, rather than breach of the terms of a statutory license administered by SoundExchange." *Id*.

Similarly here, the injury alleged by the Estate falls under the Copyright Act, as this court concluded in its Opinion and Order dated April 25, 2023. (ECF No. 46, PageID.343) ("Here, however, co-ownership and co-authorship are contested and that is an issue that must be resolved under the Copyright Act."). More specifically, the Estate alleges that Worrell is the co-author and co-owner of the works at issue and is therefore entitled to an equitable division of the profits/royalties and an accounting of those profits. Just as in *WTGD*, the Estate's alleged injury here arises from Defendants Clinton and Thang's denial of the

11

Worrell's co-ownership/co-authorship rights under the Copyright Act, not the administrative services provided by SoundExchange in "collect[ing] digital performance royalties from statutory license users and to distribut[ing] those royalties to performing artists and copyright owners." (ECF No. 1, ¶ 28). Even as to the accounting claim, it does not appear that SoundExchange could have a legal duty to account to the Estate unless and until its claim as co-owner has been conclusively established.[1] Thus, the Estate's alleged injury is only fairly traceable to Defendants Clinton and Thang, not to SoundExchange. Accordingly, the Estate does not have Article III standing to assert its claims against SoundExchange and those claims must be dismissed without prejudice. *See e.g.*, *Thompson v. Love's Travel Stops & Country Stores, Inc*., 748 F. App'x 6, 11 (6th Cir. 2018) (When courts find that they lack standing and therefore must dismiss a case due to lack of subject matter jurisdiction, they dismiss the case without prejudice because they did not reach the merits of the plaintiff's claim.); *Revere v. Wilmington Fin*., 406 F.

---

[1] Under Michigan law, "[t]he maintenance of an accounting action depends on the right of the plaintiff to demand an accounting by the defendant and on the duty of the defendant to keep and render an account to the plaintiff. An accounting action lies against one who has received or been entrusted with money of another, where it was that person's duty to account for the money in question such as in a trust relationship, and to pay it to the person to whom it belonged or to a third person." 8 Mich. Pl. & Pr. § 59:8 (2d ed.) (footnotes and citations omitted). As it stands now, the Complaint does not identify any relationship between the Estate and SoundExchange sufficient to support an accounting claim. And again, there is no apparent duty for SoundExchange to account for any royalties until there has been a legal determination that Worrell is the co-owner of the disputed copyrighted works.

12

App'x 936, 937 (6th Cir. 2011) ("Dismissal for lack of subject-matter jurisdiction should normally be without prejudice, since by definition the court lacks power to reach the merits of the case.") (citing *Ernst v. Rising*, 427 F.3d 351, 366 (6th Cir. 2005)).

The Estate's reliance on *Risto v. Screen Actors Guild-Am. Fed'n of Television & Radio Artists*, 2020 WL 5518600 (C.D. Cal. Sept. 14, 2020) in support of its standing argument is unavailing. The Estate cites this case for the proposition that parties entitled to royalties have standing to sue the fund administrator. However, the issue in *Risto* was not the distribution of royalties, *per se*. There, the SAG-AFTRA Intellectual Property Rights Distribution Fund (the Fund) entered into a Data Purchase and Services Agreement with the SAG-AFTRA and AFM Unions. *Risto v. Screen Actors Guild-Am. Fed'n of Television & Radio Artists*, Case No. 18-07141 (C.D. Cal., ECF No. 26, First Amended Complaint, ¶ 11). Pursuant to the Services Agreement, the Fund paid the Unions a 3% service fee, thereby reducing the amount of royalties distributed to the class. *Id*. According to the Amended Complaint, the agreement between the Unions and the Fund for a 3% service fee constituted a breach of fiduciary duty by the Trustees of the Fund and the retention of royalties via the service fees was wrongful and constituted conversion. (Case No. 18-07141, ECF No. 26, Counts I, II, IV). The court found that "non-featured performers who are entitled by statute to royalties held by the

13

Fund from which the Service Fee has been deducted have experienced a concrete injury giving rise to Article III standing, even if they have not yet received distributions of those royalties." *Risto*, 2020 WL 5518600, at *7. The court further opined that each of the non-featured performers suffered an "injury in fact" that was neither conjectural nor hypothetical based on their statutory entitlement to specific, allocated royalties from which the Service Fee has been deducted. *Id*. The concrete injury occurred when the fee was deducted from royalties owed to a Fund beneficiary, even if the beneficiary has not yet received payment of his share of those royalties. *Id*. The facts of *Risto* are quite unlike those presented here, where the Estate cannot show an entitlement to royalties unless and until the court determines that the Estate is a co-owner/co-author of the Works at issue. Thus, *Risto* does not resurrect the Estate's claim against SoundExchange from the lack of Article III standing.

    C.    <u>Attorney Fees</u>

SoundExchange seeks attorney fees and costs under the fee-shifting provision of the Copyright Act. "The Copyright Act provides that '[i]n any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States' and that 'the court may also award a reasonable attorney's fee to the prevailing party as part of the costs.'" *Nat'l Bus. Dev. Servs. v. Am. Credit Educ. & Consulting, Inc.*, 299 F. App'x

509, 512 (6th Cir. 2008) (quoting 17 U.S.C. § 505).  Although "the decision to grant attorney's fees remains within the trial court's discretion," in copyright cases "[t]he grant of fees and costs 'is the rule rather than the exception and they should be awarded routinely.'"  *Balsley v. LFP, Inc.*, 691 F.3d 747, 773 (6th Cir. 2012) (quoting *Bridgeport Music, Inc. v. WB Music Corp. (WB Music II)*, 520 F.3d 588, 592 (6th Cir. 2008)).  Courts "utilize four non-exclusive factors to determine whether to award attorney's fees in a copyright action."  *Balsley*, 691 F.3d at 773 (internal citation and quotation marks omitted).  "These four factors include: 'frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case)[,] and the need in particular circumstances to advance considerations of compensation and deterrence.'"  *Id*. (quoting *WB Music II*, 520 F.3d at 588).

    Before the court has a duty to evaluate the foregoing factors, SoundExchange must establish itself as a prevailing party.  However, where a claim is dismissed for lack of standing, the defendant is not a "prevailing party" because the merits of the plaintiff's claim have not been decided and the dismissal is without prejudice.  *See e.g.*, *H.R. Techs., Inc. v. Astechnologies, Inc.*, 275 F.3d 1378, 1384 (Fed. Cir. 2002) (Where claim was dismissed for lack of standing, the defendants are not "prevailing parties" under the Patent Act.); *Sream, Inc. v. Cary Tobacco I, Inc.*, 2017 WL 6408981, at *3 (S.D. Fla. Aug. 2, 2017),

15

report and recommendation adopted, 2017 WL 6408996 (S.D. Fla. Aug. 17, 2017) (Defendant was not a "prevailing party" under the Lanham Act because the action was only dismissed without prejudice based on a lack of standing/subject matter jurisdiction.); *see also Oscar v. Alaska Dep't of Educ. & Early Dem*, 541 F.3d 978, 981 (9th Cir. 2008) (holding defendant was not a "prevailing party" under IDEA based on dismissal without prejudice because the plaintiff was free to re-file the case); *Keene Corp. v. Cass*, 908 F.2d 293, 298 (8th Cir. 1990) ("To be a prevailing party [for purposes of 42 U.S.C. § 1988] ... a party must succeed on some claim or significant issue in the litigation which achieves some benefit the parties sought"); *Szabo Food Serv. Inc. v. Canteen Corp.*, 823 F.2d 1073, 1076–77 (7th Cir. 1987) (holding that defendant was not "prevailing party" where complaint was dismissed without prejudice because "dismissal without prejudice ... does not decide the case on the merits ... The defendant remains at risk."). Here too, the dismissal of the claim against SoundExchange is based on lack of Article III standing and is without prejudice. Accordingly, the court concludes that SoundExchange is not a prevailing party for purposes of § 505 and thus, is not entitled to attorney fees.

**IV. CONCLUSION**

For the reasons set forth above, the court **GRANTS** the motion to dismiss because the Estate lacks standing to assert claims against SoundExchange,

16

**DISMISSES** the claims against SoundExchange **WITHOUT PREJUDICE,** and **DENIES** SoundExchange's request for attorney fees under § 505 of the Copyright Act.

    **SO ORDERED**.

Date: January 23, 2024        s/F. Kay Behm
                                      F. Kay Behm
                                      United States District Judge