## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

ESTATE OF GEORGE BERNARD
WORRELL, JR.,

   Plaintiff,

v.

THANG, INC. and GEORGE
CLINTON,

   Defendants.

Case No. 4:22-cv-11009-FKB-DRG

District Judge F. Kay Behm

Magistrate Judge David R. Grand

| DICKINSON WRIGHT PLLC | SCHENK & BRUETSCH PLC |
|---|---|
| Daniel D. Quick (P48109) | James P. Allen, Sr. (P52885) |
| 2600 W. Big Beaver Road | Peter E. Doyle (P81815) |
| Suite 300 | 211 W. Fort Street, Suite 1410 |
| Troy, MI 48084 | Detroit, MI 48226 |
| (248) 433-7200 | (313) 774-1000 |
| dquick@dickinsonwright.com | james.allen@sbdetroit.com |
| *Attorneys for Plaintiff* | peter.doyle@sbdetroit.com |
| | *Attorneys for Defendants* |

## DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS PURSUANT TO FRCP 12(c)

Defendants Thang, Inc. and George Clinton ("Defendants") move for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). In support of this motion, Defendants rely on the attached brief and state as follows:

1.  Count I seeks a declaration that George Bernard Worrell is a joint author of the disputed sound recordings.

1

2.     Defendants are entitled to judgment on the pleadings with respect to Count I because the Complaint fails to allege the requisite shared intent for joint authorship.

3.     Further, contrary to the Complaint's allegations, the absence of a work-for-hire agreement does not automatically create joint authorship status.

4.     Count II seeks an accounting of the books and records related to the disputed sound recordings.

5.     Defendants are entitled to judgment on the pleadings with respect to Count II because Plaintiff cannot establish joint authorship and thus cannot maintain an accounting claim.

6.     In accordance with LR 7.1(a), Defendants have previously explained the above legal bases for this motion, and Plaintiff does not concur.

WHEREFORE, Defendants request the Court enter judgment on the pleadings in Defendants' favor.

Dated: June 30, 2024                    Respectfully submitted,

SCHENK & BRUETSCH PLC
By: /s/ James P. Allen
James P. Allen, Sr. (P52885)
Peter E. Doyle (P81815)

211 W. Fort Street, Suite 1410
Detroit, MI 48226
(313) 774-1000
james.allen@sbdetroit.com
peter.doyle@sbdetroit.com
*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

ESTATE OF GEORGE BERNARD
WORRELL, JR.,

      Plaintiff,

v.

THANG, INC. and GEORGE
CLINTON,

      Defendants.

Case No. 4:22-cv-11009-FKB-DRG

District Judge F. Kay Behm

Magistrate Judge David R. Grand

| | |
|---|---|
| DICKINSON WRIGHT PLLC | SCHENK & BRUETSCH PLC |
| Daniel D. Quick (P48109) | James P. Allen, Sr. (P52885) |
| 2600 W. Big Beaver Road | Peter E. Doyle (P81815) |
| Suite 300 | 211 W. Fort Street, Suite 1410 |
| Troy, MI 48084 | Detroit, MI 48226 |
| (248) 433-7200 | (313) 774-1000 |
| dquick@dickinsonwright.com | james.allen@sbdetroit.com |
| *Attorneys for Plaintiff* | peter.doyle@sbdetroit.com |
| | *Attorneys for Defendants* |

## BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS PURSUANT TO FRCP 12(c)

## **TABLE OF CONTENTS**

ISSUES PRESENTED ............................................................... v

CONTROLLING OR MOST APPROPRIATE AUTHORITY ................. vi

INTRODUCTION .................................................................... 1

FACTUAL SUMMARY ............................................................. 3

LEGAL STANDARD ................................................................ 7

ARGUMENT .......................................................................... 8

    A. Defendants are entitled to judgment on the pleadings because the Complaint fails to allege that Worrell intended to be a joint author of the Works ............................................................... 8

    B. The Complaint lacks any allegations that could create a factual indicia that Worrell intended to be a joint author of the Works. ... 10

    C. Plaintiff cannot cure the Complaint's deficiencies by adding conclusory assertions of Worrell's authorship intent. ................... 12

    D. The alleged lack of an agreement with Worrell does not automatically create joint authorship. ........................................ 13

    E. The accounting claim fails. ......................................... 18

CONCLUSION ...................................................................... 18

## <u>ISSUES PRESENTED</u>

1. Whether Defendants are entitled to judgment on the pleadings where the Complaint fails to allege or infer any mutual intent of joint authorship?

   Defendants answer:     Yes.
   Plaintiff answers:      No.

2. Whether the absence of a signed work-for-hire agreement automatically confers joint author status?

   Defendants answer:     No.
   Plaintiff answers:      Yes.

## **CONTROLLING OR MOST APPROPRIATE AUTHORITY**

17 U.S.C.S. § 101

*Childress v. Taylor*, 945 F.2d 500 (2d Cir. 1991)

*Corwin v. Quinonez*, 858 F. Supp. 2d 903 (N.D. Ohio 2012)

## **INTRODUCTION**

Plaintiff Estate of George Bernard Worrell, Jr. ("Plaintiff") initiated this action against Thang, Inc. ("Thang") and George Clinton ("Clinton") (collectively, "Defendants") seeking a declaration that George Bernard Worrell ("Worrell") is a joint author of 264 sound recordings created over 40 years ago ("the Works"), including all song titles listed in Exhibit E of the Complaint. Worrell previously sued Thang and Clinton in New York in 2019, alleging breach of an unsigned agreement. In that action, Clinton submitted a declaration noting that he did not sign the agreement and had no knowledge of anyone else signing it on behalf of Thang. Solely based on that testimony, Plaintiff now requests this Court order the U.S. Register of Copyrights to amend 264 archived U.S. copyright registration certificates that are decades old. The Complaint rests on conclusory allegations and a theory that is contrary to established copyright law.

George Clinton is an American bandleader who formed the Parliaments in the 1960s. Following his initial chart-topping success, Clinton created the music production company Thang, which entered into numerous contracts with record companies to produce sound recordings

for them to distribute and sell. Thang hired local musicians to work for the company in creating music. Around 1969, Thang hired Worrell as a weekly-paid keyboardist. Worrell performed on songs for the Parliaments and other musical acts.

Importantly, the Complaint does not allege that Defendants are the authors or owners of the Works at issue in this case. Those Works are sound recordings that Thang tendered to the record labels in the form of master sound recordings at the time of publication. The record labels who contracted with Thang then deemed themselves the owners of the tapes and subsequently identified themselves as owners and/or authors of the Works on U.S. Copyright registrations. The songwriters, including Clinton and Worrell, retained joint authorship of the compositions embodied on the sound recordings, where applicable.

The validity of the authorship and claimant information listed on the actual copyright registration certificates is not at issue here. Plaintiff is simply asking for a declaration that Plaintiff's understanding of U.S. Copyright law is correct. But Plaintiff cannot adequately explain why joint authorship would arise under the alleged facts. Rather, Plaintiff claims *ipse dixit* to have gained joint authorship of the Works via a legal

fallacy: If Defendants cannot produce a written work-for-hire agreement signed by Worrell from 1969, then Worrell is now legally a joint author of all the Works. But if Plaintiff's statement was correct law, then subcontractors everywhere would have the power to write themselves into the authorship field of any U.S. copyright registration, no matter how old, if the subcontractor agreement was unsigned. Plaintiff's theory is unsupportable.

The standard for joint authorship is clear. A claimant must show objective manifestations of a shared intent to be coauthors of the work at the time the work was created. The Complaint has not alleged and cannot establish the critical elements of joint authorship. The Court should find the facts stated in the Complaint do not create joint authorship of the disputed sound recordings and enter judgment on the pleadings in favor of Defendants.

## FACTUAL SUMMARY

Around 1969, Thang hired Worrell as a keyboard player and paid him $200 per week.[1] ECF No. 1, ¶ 40. Plaintiff alleges Worrell

---

[1] Adjusted for inflation, $200 is equivalent to $1,711.55 today, which equates to an annual salary of approximately $89,000. *See* Consumer Price Index Inflation Calculator, at https://www.officialdata.org/us/inflation/1969?amount=200.

"collaborated with Clinton ... on the majority of the songs that were recorded in the 1970s and 1980s by Clinton and various bands and/or musical groups ... in which Clinton performed with Mr. Worrell and other musicians." *Id.*, ¶ 3. Plaintiff defines the "Works" at issue broadly as "audio and audiovisual recordings, jointly created by Mr. Worrell with Clinton, and/or which contain the results of Mr. Worrell's musical and/or vocal performances, or upon which his name, image, or likeness appear in connection with Defendants." *Id.* The specific alleged Works are listed in Exhibit E of the Complaint. *Id.*, PageID.89.

The Complaint does not dispute that Worrell and Clinton composed musical compositions while together at Thang. Nor does it dispute that Worrell and Clinton registered as joint authors in the U.S. Copyright Office certain original music they composed together. Indeed, the Court may take judicial notice of the copyright registrations for each of the Works identifying Worrell or others as authors of the musical compositions.

The distinction between musical compositions and sound recordings is relevant here. The Complaint does not make allegations with respect to the former, ones where Worrell owns a musical

4

composition copyright. Instead, Plaintiff now wants ownership of all sound recording copyrights as well.[2]

The Complaint does not allege that Worrell intended to be a joint author of the sound recordings, a critical requirement for stating a joint authorship claim. While admitting that Worrell entered into an oral agreement with Thang in 1969 to provide musical services, the Complaint is based entirely on testimony from a prior litigation (the "New York Suit") where Clinton stated that he did not sign a purported agreement with Worrell in 1976. ECF No. 1, ¶ 11. In that declaration, Clinton noted that the alleged agreement attached as an exhibit to the complaint in the New York Suit was not signed by Thang. *Id.*, PageID.87. Clinton further testified that "the alleged agreement is dated 44 years ago, and to the best of my knowledge and recollection, I did not sign the original or a copy of the document either on behalf of Thang, Inc. or

---

[2] Under copyright law, "[s]ound recordings and their underlying musical compositions are separate works with their own distinct copyrights." *Bridgeport Music, Inc. v. Still N the Water Publ'g*, 327 F.3d 472, 475 n.3 (6th Cir. 2003) citing 17 U.S.C. § 102 (a)(2). (7). Further, "it was not until 1971 that sound recordings were subject to a separate copyright." *Bridgeport Music, Inc. v. Dimension Films*, 401 F.3d 647, 656 (6th Cir. 2004).

myself. I also have no knowledge of anyone else having signed this purported agreement for on behalf of Thang, Inc." *Id.*, PageID.87-88.

This current lawsuit is an attempt by Plaintiff to grab new rights years after Worrell's passing, while making needless personal attacks on Clinton's character. *See e.g.*, *id.* at ¶ 54. But aside from the fact that the alleged non-existence of an agreement in 1976 would have no legal impact on works published prior to 1976, the Complaint does not make any factual allegations regarding the sound recording copyright registration certificates for the listed Works. Nor does it allege that Clinton and Thang registered themselves as authors or owners of the Works at the time of publication. Rather, the parties who filed such copyright registrations have been dismissed from this case.

The Complaint initially included defendants Sony Music Entertainment, Universal Music Group, Warner Brothers Records, HDH Records, and Westbound Records (collectively, the "Record Label Defendants"). Plaintiff concedes that it seeks ownership interest in Works in "which the Record Label Defendants own or have an ownership share." ECF No. 1, ¶ 53. But Plaintiff voluntarily dismissed each of the Record Label Defendants from this case, leaving Clinton and Thang to

defend ownership claims relating to copyright registrations that Defendants did not file. *See* ECF Nos. 67, 71, and 72.

## LEGAL STANDARD

A party may move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c). Motions under Rule 12(c) are typically analyzed under the same standard as motions to dismiss under Rule 12(b)(6). *Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 549-50 (6th Cir. 2008). As such, "all well-pleaded material allegations...of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Id.* (*citing JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007)).

Although the decision "rests primarily upon the allegations of the complaint, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint also may be taken into account." *Barany-Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir. 2008) quoting *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001). The court "need not accept the plaintiff's legal conclusions or unwarranted factual inferences as true." *Id.* (citation omitted). To withstand a Rule

12(c) motion for judgment on the pleadings, "a complaint must contain direct or inferential allegations respecting all the material elements under some viable legal theory." *Id.*

## ARGUMENT

### A. Defendants are entitled to judgment on the pleadings because the Complaint fails to allege that Worrell intended to be a joint author of the Works.

A motion for judgment on the pleadings under Rule 12(c) is designed to dispose of cases before trial where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts. This case should be dismissed because the Complaint does not contain sufficient factual allegations to establish a claim for joint authorship of the Works.

Under copyright law, a "joint work" is a "work prepared by two or more authors **with the intention** that their contributions be merged into inseparable or interdependent parts of a unitary whole." 17 U.S.C.S. § 101 (emphasis added). Where joint authorship is in question, courts in the Sixth Circuit apply the test set forth in *Childress v. Taylor*, 945 F.2d 500 (2d Cir. 1991). *See Corwin v. Quinonez*, 858 F. Supp. 2d 903, 910 (N.D. Ohio 2012) (listing courts in the Sixth Circuit that have applied the

*Childress* test); *Tang v. Putruss*, 521 F. Supp. 2d 600, 606 (E.D. Mich. 2007).[3]

To succeed on a joint authorship claim, *Childress* requires the claiming party to show the authors intended to be joint authors at the outset. *Childress*, 945 F.2d at 509.

It is not sufficient for the moving party to make a factual allegation of its own intent. The Complaint must allege that the putative co-authors made "objective manifestations of a shared intent to be coauthors" of the work. *Aalmuhammed v. Lee*, 202 F.3d 1227, 1234 (9th Cir. 2000). Each putative author "must intend to contribute to a joint work" at the time the work is created. *Childress*, 945 F.2d at 508. The Complaint must allege that this is "the intent of all the putative co-authors, not just the person claiming co-authorship." *Richlin v. MGM Pictures*, 2006 U.S. Dist. LEXIS 103960, at *9 (C.D. Cal. Jan. 30, 2006) citing *Childress*, 945 F.2d at 508.

---

[3] *See also, Dorchen/Martin Assocs. v. Brook of Cheboygan, Inc.*, No. 11-10561, 2012 U.S. Dist. LEXIS 177940, at *8 (E.D. Mich. Dec. 17, 2012) ("this Court believes *Childress* states the appropriate test for determining joint authorship."); *Act, Inc. v. Worldwide Interactive Network*, No. 3:18-cv-186, 2020 U.S. Dist. LEXIS 260069, at *50 (E.D. Tenn. Mar. 10, 2020).

The Complaint makes no allegations regarding the parties' intent. The Complaint does not allege that Worrell intended to share joint authorship with any Defendants (Clinton, Thang, or the now-dismissed Record Label Defendants), nor is there any allegation that any Defendant demonstrated the requisite intent of co-authorship. The Complaint relies solely on the conclusory assertion that if "no contract existed between [Defendants] and Mr. Worrell" then Worrell has an ownership interest in the Works "derived from his joint authorship." ECF No. 1, ¶¶ 16, 43. The Court should reject Plaintiff's bare legal conclusions. Without the requisite intent element, Plaintiff has not presented a triable issue regarding a fact that could give rise to a joint authorship claim.

**B. The Complaint lacks any allegations that could create a factual indicia that Worrell intended to be a joint author of the Works.**

Not only does the Complaint fail to allege that Worell intended joint authorship, the factual allegations do not even imply that Worrell intended to be a joint author of the Works when he made his alleged contributions.

With respect to intent, "it is not enough that the parties intend their contributions to be merged into inseparable or interdependent parts of a

unitary whole." *Corwin*, 858 F. Supp. 2d at 912. (citation omitted). Rather, the "parties must entertain in their minds the concept of joint authorship." *Id.* quoting *Childress*, 945 F.2d at 508. "This requirement of mutual intent recognizes that, since co-authors are afforded equal rights in the co-authored work, the equal sharing of rights should be reserved for relationships in which all participants fully intend to be joint authors." *Thomson v. Larson*, 147 F.3d 195, 201 (2d Cir. 1998).

There are no allegations implying that all parties fully intended that Worrell be a joint author of each of the Works. Nor are there any allegations that the parties actually controlling the Works at the time of their recording intended joint authorship. The Complaint asserts that Thang entered into contracts with various record labels to produce sound recordings. ECF No. 1, ¶ 60. Those record labels then deemed themselves the owners of the recordings and named themselves owner and/or authors of the Works on U.S. Copyright Office registrations.[4] But there

---

[4] Based on the lack of intent alleged in the Complaint, the Court may dispose of this case without taking judicial notice of all 264 sound recording copyright registrations filed by the record labels at the time of recording. But if Plaintiff does challenge any copyright registration, the Court may take notice of the registration. Under 17 U.S.C. § 410(c), in any judicial proceedings the certificate of a registration made before or within five years after first publication of the work shall constitute *prima facie* evidence of the validity of the copyright and of the facts stated in the certificate. The registration creates a rebuttable presumption of validity and it is

are no alleged facts to infer that Worrell, as one of several musicians performing on the Works, was intended to be a joint author. Thus, even if it is undisputed that Worrell performed on the Works, that alone would not inure joint author status onto Worrell without the requisite demonstration of mutual intent.

### C. Plaintiff cannot cure the Complaint's deficiencies by adding conclusory assertions of Worrell's authorship intent.

Plaintiff cannot save its Complaint by amending it to add an allegation that Worrell had always intended joint ownership in the Works from the day he began performing for Thang under the alleged 1969 oral contract. Indeed, sound recording copyrights did not even exist at that time. [5]

---

Plaintiff's burden to show that the copyright is not valid. *Corwin*, 858 F. Supp. 2d at 913. Moreover, any such challenge would require the Record Label Defendants to defend their own copyright registrations.

[5] In 1969, when Worrell began working for Thang, sound recording copyrights did not exist under Federal Copyright law. The only copyrightable musical work was the composition. Before modern times, the record label company with physical possession of a master tape for a sound recording had the natural right to make physical copies of records. In 1972, Congress amended the U.S. Copyright Act to create federal copyright protection in sound recordings fixed on or after February 15, 1972. In 2018, Congress passed the Music Modernization Act effectively federalizing protection for sound recordings fixed before February 15, 1972, and many sound recording owners re-filed early registrations to affirm their ownership. *See 8.21 Continual Grappling with Sound Recordings, 2 Nimmer on Copyright § 8.21*.

Even if, hypothetically, Plaintiff could produce some sworn statement signed by Worrell stating he intended to be joint authors of all sound recordings (in addition to the musical composition registrations of the Works), the newfound testimony would not be enough to maintain this action. Plaintiff must factually allege and prove that all participants shared a mutual intention to be joint authors with Worrell. But "idle assertions" of joint authorship or contentions that "songs were improperly registered as 'works for hire'" are insufficient to establish an ownership interest in the alleged songs. *MOB Music Publ'g v. Zanzibar on the Waterfront, LLC*, 698 F. Supp. 2d 197, 204 (D.D.C. 2010).

### D. The alleged lack of an agreement with Worrell does not automatically create joint authorship.

The absence of a work-for-hire agreement does not automatically generate joint authorship status under U.S. Copyright law. Courts have frequently rejected the theory underpinning Plaintiff's claims.

For instance, in *Hemby v. Winans*, No. 3:06-0979, 2010 U.S. Dist. LEXIS 20283 (M.D. Tenn. Mar. 5, 2010), the plaintiff asserted joint authorship of sound recordings he co-created and produced together with the defendant Winans, a gospel quartet in Detroit, Michigan. *Id.* at *1. The plaintiff had not been paid for his production services rendered on

13

the sound recordings because he never signed the producer agreement. *Id.* at *6. Thus, the plaintiff "invoked the Copyright Act seeking fifty percent of Defendants' copyright in the sound recordings and the profits from their exploitation." *Id.* The court granted judgment for the defendants, finding that while "Plaintiff insists he was a co-producer, but the Copyright Act specifically requires joint authors to intend to consider the work a joint work." *Id.* citing 17 U.S.C. § 101. The plaintiff failed to "provide any evidence of the parties' mutual intent to be joint authors." *Id*. The court further awarded defendants attorneys' fees because the "policies of the Copyright Act are violated when a defendant is forced to engage counsel and expend resources in defending an unreasonable claim." *Id.* Moreover, the court did not want to "encourage participants to ignore the legal requirement of signed contracts to establish joint ownership, and to award attorney fees discourages such unreasonable conduct." *Id.* at *7 citing *Earth Flag Ltd. v. Alamo Flag Co.*, 154 F. Supp. 2d 663, 668 (S.D.N.Y. 2001).

Similarly, in *Corwin v. Quinonez*, 858 F. Supp. 2d 903 (N.D. Ohio 2012), plaintiff sought a declaratory judgment and accounting of profits that he and the defendant were joint owners of 31 songs created during

14

their membership in a band. *Id.* at 904. The court entered judgment in favor of defendant because even though the plaintiff's guitar performance was fixed onto the sound recordings, there was insufficient showing that the defendant intended for plaintiff to be a co-author of the finished recordings at the outset. *Id.* at *912. The plaintiff's only evidence was a written affidavit asserting that the defendant had acknowledged the plaintiff's contributions and then repudiated his co-ownership of the works. *Id.* at 911. The court found the affidavit amounted only to "conclusory allegations and naked conclusions of law." *Id.*  In other words, a statement that intent existed is the bare minimum to state a claim. From there, *Corwin* shows that a Complaint must contain real factual allegations showing intent existed for both parties to share a joint authorship relationship. Thus, Plaintiff needs to allege that Worrell intended joint ownership of the master sound recordings with the Record Label Defendants from day one, and the evidence must be genuine enough for the court to consider "intent" a genuine issue of material fact.

Courts in the Second and Ninth Circuits, with extensive history of entertainment law cases, have also found that the absence of a work-for-hire agreement does not create joint authorship.

In *Ulloa v. Universal Music & Video Distribution Corp.*, 303 F. Supp. 2d 409, 411 (S.D.N.Y. 2004), a vocalist was hired to perform on a Jay-Z album. Having never signed a written agreement, the plaintiff alleged she was a joint author of the song. *Id.* at 418. She alleged that "Jay Z recognized that [her] melody would be merged with his contributions into an inseparable whole and that this fact could lead a reasonable trier of fact to conclude that Jay Z considers himself a joint author." *Id.* The court rejected this argument because it "misapprehends the requirement that the parties must intend to share the rights of authorship rather than merely intend to enter into a relationship that results in the creation of a copyrightable work." *Id.* citing *Childress*, 945 F.2d at 509 ("Equal sharing of rights should be reserved for relationships in which all participants fully intend to be joint authors."). The court entered judgment in favor of defendants because the plaintiff could not establish the requisite intent for joint authorship. *Id. See also Thomson v. Larson*, 147 F.3d 195, 202 (2d Cir. 1998) (in the absence of a work-for-hire agreement, "*Childress* makes clear that the contribution even of significant language to a work does not automatically suffice to confer co-

author status on the contributor. … a specific finding of mutual intent remains necessary.").

In *Aalmuhammed v. Lee*, 202 F.3d 1227 (9th Cir. 2000), the plaintiff made "substantial and valuable contributions" to a Spike Lee film without a written agreement. *Id.* at 1231. The court rejected plaintiff's coauthor claim because defendants did not make "made any objective manifestations of an intent to be coauthors." *Id.* at 1235. Given that Warner Brothers' agreement with Spike Lee did not "permit Lee to own the copyright," the court found it "would be illogical" that Warner Brothers "intended to share ownership with individuals like [plaintiff] who worked under Lee's control." *Id.* at 1235. This was especially true where no one "made any indication to anyone prior to litigation that [plaintiff] was intended to be a co-author and co-owner." *Id.*

In sum, the Complaint presents the question of whether the absence of a written agreement between Thang and Worrell memorializing Worrell's agreement to be paid weekly for services creates a joint authorship of the sound recordings that comprise the Works. It does not. Plaintiff's request for a legal declaration of joint authorship has no support under copyright law.

17

## E. The accounting claim fails.

Plaintiff's claim for a declaration of joint authorship must be dismissed, so the accounting claim fails as well. *Corwin*, 858 F. Supp. 2d at 913 ("[B]ecause Plaintiff's claims for an accounting and constructive trust are not cognizable without a showing of joint authorship, the remainder of Plaintiff's complaint must also be dismissed.").

Dated: June 30, 2024

Respectfully submitted,

SCHENK & BRUETSCH PLC
By: /s/ James P. Allen
James P. Allen, Sr. (P52885)
Peter E. Doyle (P81815)
211 W. Fort Street, Suite 1410
Detroit, MI 48226
(313) 774-1000
james.allen@sbdetroit.com
peter.doyle@sbdetroit.com
*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on June 30, 2024, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send notification of such filing to the attorneys of record.

*/s/ Peter E. Doyle*