UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| ESTATE OF GEORGE BERNARD WORRELL, JR., | Case No. 4:22-cv-11009 |
| Plaintiff, | District Judge F. Kay Behm |
| v. | Magistrate Judge David R. Grand |
| THANG, INC., and GEORGE CLINTON. | |
| Defendants. | |

_____/

### DEFENDANTS' REPLY IN SUPPORT OF MOTION TO COMPEL SUBPOENA RESPONSES AND TESTIMONY

Defendants submit this reply brief in further support of their motion to compel subpoena responses and testimony from the Boladian Parties.

**A. The subpoenaed information is directly relevant to this case.**

The Boladian Parties attempt to avoid complying with the subpoenas by arguing that this case is simply about the "parties' ownership of certain sound recordings and their rights in those recordings going forward." ECF No. 93, PageID.1624. This argument ignores the fact that the Plaintiff's ownership claim over the disputed Works necessarily involves an analysis of any agreements pertaining to the Works, the payments of royalties arising from those Works, and the parties' intentions at the time the Works were created. The Boladian Parties are in possession of this relevant information.

Plaintiff's theory is that if Worrell did not record the songs pursuant to a "work for hire" agreement, then he must have a co-ownership of the Works as a joint author. In other words, "[a]bsent a written agreement" whereby Worell was "specially commissioned" to create the songs, he "retains the copyright in his works." Complaint, ECF No. 1, PageID.7. But the absence of a work for hire agreement is not enough to establish ownership; the Plaintiff must show the parties had a mutual intent of joint authorship "at the time the work was created." *Childress v. Taylor*, 945 F.2d 500, 504 (2d Cir. 1991).

The Boladian Parties not only possess agreements relating to the employment of Worrell and other musicians at the time the recordings were made, the Boladian Parties were also directly involved in the creation of certain Works at issue. The American Federation of Musicians ("AFM") produced "Phonograph Recording Contracts" that expressly state that Westbound Records, Inc., as the employer, "hires the employees as musicians" to "collectively render to the employer services as musicians" to create some of the Works. ECF No. 88-7, PageID.1119. The documents are evidence of work for hire agreements, to include some signed by both Armen Boladian and Bernie Worrell. *Id.* at PageID.1138. However, Recording Contracts also reference "terms and conditions" of the employment that are "further specified on reverse side" of the contract. *Id*. The AFM did not have possession of those additional terms, but presumably, the Boladian Parties do. The complete

agreements may address the rights of Worrell and other musicians to ownership claims, royalties, or other issues directly related to Plaintiff's allegations. Furthermore, the Boladian Parties likely have additional knowledge of the parties' contractual arrangements and intent when recording the Works. Therefore, contrary to their response, the Boladian Parties have not merely been "referenced in discovery;" they are directly involved in the core issues of this case.

Further, Plaintiff's allegations go beyond the question of whether there was a work for hire agreement. The Complaint alleges a "pattern of deceit and manipulation" resulting in Worrell "receiving minimal or zero compensation for the years of work" with Defendants. ECF No. 1, PageID.18. Plaintiff claims that Worrell has "never received payment or accounting statements" for the "royalties for the records." *Id.* Yet, Plaintiff's representative (Judith Worrell) made these exact same allegations against the Boladian Parties in 1997, and subsequently resolved that dispute. ECF No. 88-4. Mrs. Worrell now regularly receives royalty advances from Boladian, and she communicates with Sarah Catlett and Joel Martin regarding these royalty claims. The individuals' personal knowledge and communications with the Plaintiff's representative are relevant to the Complaint's allegations and squarely within the scope of discovery. The same is true of Armen Boladian's personal knowledge of the parties' agreements, the creation of the Works, and his dealings with Worrell and Plaintiff's representative on the ownership claims and royalty

3

dispute. *See e.g. Lewis v. ACB Bus. Servs.*, 135 F.3d 389, 402 (6th Cir. 1998) (stating the scope of discovery is "quite broad" and the test for an examination under Rule 26(b) is "whether the line of interrogation is reasonably calculated to lead to the discovery of admissible evidence."). Indeed, given that Boladian may have been in the studio when Worrell allegedly recorded the Works, his recollection of Worrell's participation and contributions to the recordings is directly relevant to Worrell's joint authorship claims.

Lastly, in addition to ownership and royalty claims, this case also involves the control and licensing of the Works. *See e.g.*, ECF No. 1 at PageID.15 (alleging that "Plaintiff should receive compensation" for performances that have "been sampled and used to create derivative works"); *id.* at PageID.8 (requesting an injunction against Defendants' profit, use, or license of rights belonging to Plaintiff). Here, the Boladian Parties purport to control 185 of the approximate 260 Works at issue. ECF No. 88-5. The Boladian Parties contend that their interests in the Works listed in the Complaint have no relation to the disputed sound recordings, but they have not produced any documents to that effect. They must comply with the subpoenaed request for any agreements with any record company or publishing entity regarding the copyrighted works at issue.[1]

---

[1] The Boladian Parties' protestation that they have no interest in this lawsuit is of course undermined by the fact that the law firm that has long represented Boladian

### B. The subpoenas do not impose an undue burden.

Next, the Boladian Parties argue that the subpoenas are unduly burdensome, and compliance would be "significant" in terms of "cost, effort, and expense[.]" ECF No. 93, PageID.1627. The Boladian Parties made this generic objection in their initial response to the subpoenas, and it fares no better here. *See*, *Waskul v. Washtenaw Cty. Cmty. Mental Health*, 569 F. Supp. 3d 626, 638 (E.D. Mich. 2021) (a boilerplate objection that a request is "unduly and substantially burdensome" is "legally meaningless and amount[s] to a waiver of an objection.").

Moreover, the Boladian Parties' initial response to the subpoenas belies this argument. During the first meet and confer, Boladian Parties' counsel asserted that all responsive documents to Defendants' subpoenas had already "been turned over" to Plaintiff, and thus there was nothing further for them to provide in discovery. ECF No. 88-9, PageID.1152. Plaintiff's counsel responded that this was not true. *Id.* But regardless of whether a prior production was made, clearly the Boladian Parties believed that the relevant agreements, royalty statements, and communications could be compiled and produced. As explained above, these documents are directly

---

in copyright disputes against George Clinton appeared at the parties' depositions in this case. The Boladian Parties make no attempt to explain their attorney's unannounced presence. Rather, the Boladian Parties dismiss Defendants' reference to their litigation history as "odd[] and irrelevant[]". ECF No. 92, PageID.1622. But it is the Boladian Parties who first raised Clinton's alleged "animosity against Mr. Boladian" to support their objection that the subpoenas were "designed to harass" Boladian. ECF No.88-8, PageID.1150.

5

relevant to the claims and defenses at issue in this litigation. The Boladian Parties' generic and unsubstantiated burdensome objections do not provide a valid basis to refuse the discovery requests.

### C. The Boladian Parties accepted service of all subpoenas.

Lastly, the Boladian Parties' argument regarding service has no merit. ECF No. 93, PageID.1627. Defendants properly served the Document Subpoenas on September 14, 2024. See Proof of Service, ECF No. 88-1 at PageID.1006, 1010, 1014. On October 10, 2024, Defendants informed the Court that the Boladian Parties were avoiding service of the Witness Subpoenas despite the process server's "multiple trips to the same location where service was accomplished" for the Document Subpoenas. **Exhibit A**. Thus, the Magistrate Judge began the October 15, 2024 status conference by addressing the alleged service issues for the Witness Subpoenas. The Boladian Parties' counsel agreed to waive any service objections, and the parties proceeded to address the substance of the discovery dispute.

Boladian Parties now claim that their counsel stated he would accept service "going forward in the context of reissued subpoenas with a narrowed scope." ECF No. 93, PageID.1628. This assertion is false and makes little sense in the context of the parties' dispute. The Document Subpoenas had already been served; there would be no need to reissue and serve new subpoenas with a "narrowed scope," even if the parties had been able to agree to a document production. The issue at the status

6

conference was whether counsel would accept service of the Witness Subpoenas, and he stated that he would. The Boladian Parties' service argument fails.

## CONCLUSION

The Court should enter an order compelling the Boladian Parties' compliance with the subpoenas.

Respectfully submitted,

SCHENK & BRUETSCH PLC

By: /s/ Peter E. Doyle
Peter E. Doyle (P81815)
James P. Allen, Sr. (P52885)
*Attorneys for Defendants*

Dated: November 12, 2024

## CERTIFICATE OF SERVICE

I hereby certify that on November 13, 2024 (due to an ECF Inaccessibility on November 12, 2024), I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send notification of such filing to the attorneys of record. A copy of the foregoing document was served on counsel for the subpoenaed parties via email at:

Joseph A. Bellanca
Hertz Schram PC
jbellanca@hertzschram.com

/s/ Peter E. Doyle
Peter E. Doyle