# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| ESTATE OF GEORGE BERNARD WORRELL, JR., | Case No. 4:22-cv-11009 |
| Plaintiff, | District Judge F. Kay Behm |
| v. | Magistrate Judge David R. Grand |
| THANG, INC., and GEORGE CLINTON. | |
| Defendants. | |
_____/

## DEFENDANTS' REPLY IN SUPPORT OF MOTION TO EXTEND THE DISCOVERY DEADLINE

Defendants submit this reply brief in further support of their motion to extend the discovery deadline. Defendants also incorporate by reference their Reply in Support of Motion to Compel Subpoena Responses and Testimony from the Boladian Parties. ECF No. 98.

**A. The requested discovery is relevant to Plaintiff's ownership claims.**

Contrary to Plaintiff's assertion, the requested discovery is not premised on any "mischaracterization" of this case. It relates directly to Plaintiff's theory of joint authorship. The Complaint contends that if Worrell did not record the songs pursuant to a "work for hire" agreement, then Worrell must be deemed a co-author and co-owner of each of the Works. But as Plaintiff is aware, it must additionally prove that the parties had a mutual intent of joint authorship "at the time the work was created."

*Childress v. Taylor*, 945 F.2d 500, 504 (2d Cir. 1991). Thus, the core issues in this case are whether there are any agreements concerning the rights to the sound recordings, and the parties' intent at the time those recordings were made. The outstanding subpoenas to the Boladian Parties and the additional discovery sought from the American Federation of Musicians ("AFM") relate to both issues.

With respect to the AFM, the local union produced "Phonograph Recording Contracts" that evidence Worrell recorded certain songs pursuant to work for hire agreements. ECF No. 88-7, PageID.1119. Plaintiff asserts (1) that the agreements do not "have anything to do with copyright ownership or any issue in this case"; (2) that they "simply confirm payment of union wages, and do not fix the rights between the performers"; and (3) that they are mere "session forms" which "are not signed by Worrell or any other artist." ECF No. 90, PageID.1201. Plaintiff is wrong on all three points.

First, the recording contracts specifically identify Westbound Records, Inc. ("Westbound") as the employer who hired Worrell and other musicians to "collectively render to the employer services as musicians" in creating the Works. ECF No. 88-7, PageID.1119. Under Plaintiff's own theory of the case, if there are work for hire agreements regarding the sound recordings, then Plaintiff cannot be a joint author of the Works.

Second, the contracts do pertain to the rights of Worrell and other musicians with respect to the song recordings. The union representative testified that each record label, such as Westbound Records, "would likely have their own agreements," referred to as a "Letter of Acceptance." **Exhibit A**, at 26:14-25. Some of these Letters of Acceptance will cover the treatment of royalties for sound recordings that are produced according to the agreement and may also include a requirement to "pay the musicians a negotiated rate for re-use or possibly new use of a pre-existing recording." *Id.* at 26:16-28:4. This directly relates to Plaintiff's allegations regarding control and licensing of the Works. *See*, ECF No. 1 at PageID.15 (alleging that "Plaintiff should receive compensation" for performances that have "been sampled and used to create derivative works"). The union representative further confirmed that John Painting, AFM's Director of Electronic Media Services, would have possession of the relevant Collective Bargaining Agreements that would have been applied to these sound recordings. *Id.* at 8:22-9:5. Therefore, Defendants seek to subpoena the AFM for the Letters of Acceptance and relevant Collective Bargaining Agreements that were in place at the time the Works were created.

Third, Worrell did sign some of the recording contracts, including one that is also signed by Boladian. *See, e.g.*, ECF No. 88-7, PageID.1138. Thus, Worrell was bound by the terms set forth in the agreement. However, these contracts reference "terms and conditions" of the employment that are "further specified on reverse

3

side" of the contract. *Id.* The local union could not produce those additional terms, but both the AFM and Boladian Parties should have possession of these agreements. Defendants are entitled to obtain such relevant contracts.

The AFM contracts further highlight the relevancy of the outstanding subpoenas to the Boladian Parties. As the representative of the employer who commissioned the recording of certain Works, Boladian would have knowledge of Worrell's alleged contributions and the parties' intent at the time the Works were created. Boladian's documents and testimony may go directly to whether there is a genuine issue of material fact regarding joint authorship.

Furthermore, the Complaint alleges that Defendants engaged in a "pattern of deceit and manipulation," which resulted in Worrell "receiving minimal or zero compensation for the years of work" recording music with Defendants. ECF No. 1, PageID.18. Plaintiff's representative, Judith Worrell, made identical allegations against the Boladian Parties in 1997, and subsequently resolved that dispute. ECF No. 88-4. Now, in addition to receiving royalty advances from Boladian, Mrs. Worrell regularly communicates with Sarah Catlett and Joel Martin regarding these royalty claims. And although Defendants requested these communications from Plaintiff at the outset of discovery, Plaintiff responded that she no longer possessed them. Thus, Defendants were required to seek this information from the relevant third parties.

In sum, a short extension to the fact discovery deadline is required to allow Defendants to obtain relevant documents and testimony relating to the central issues in this case.

**B. Defendants diligently pursued the requested discovery.**

Plaintiff primarily objects to any amendment to the scheduling order on the false assertion that Defendants lacked diligence in requesting the discovery. Yet Plaintiff fails to mention the primary issue that Plaintiff's asserted loss of a "significant amount of documentation in 2015" placed the burden on Defendants to track down and produce agreements and communications relating to songs recorded over 50 years ago. ECF No. 89, PageID.1165. Defendants searched for and digitized thousands of pages of documents from storage, while Plaintiff's entire discovery production has consisted of approximately one hundred pages. *Id.*

Moreover, Defendants served their first set of discovery requests in October 2022. But the discovery stalled during lengthy initial motion practice. And it was not until the spring of 2024 that the parties resolved Defendants' objections over the indeterminate scope of the "Works" with an understanding that the sounds recordings at issue would be limited to the songs listed in Exhibit E of the Complaint, whereby Defendants could focus their searches for documents relating to these 265 specific songs. *Id.* at PageID.1166.

5

The parties conducted their Rule 26(f) discovery conference five months ago, and the Court entered the first Case Management Order on June 20, 2024. ECF No. 78. The parties' depositions occurred at the end of August 2024. ECF No. 89, PageID.1167. Mrs. Worrell's testimony regarding her regular communications and transactions with the Boladian Parties spurred Defendants to serve the subpoenas during the initial discovery period. *Id.* at PageID.1167.

Although Plaintiff dismisses these as "last minute" subpoenas, they were undoubtedly timely. ECF No. 90, PageID.1201. Had the Boladian Parties complied with the relevant discovery requests, the discovery could have been completed by the initial fact discovery deadline. *See Leary v. Daeschner*, 349 F.3d 888, 906 (6th Cir. 2003). After it became clear that the Boladian Parties would not produce any documents or witnesses based on a single paragraph of boilerplate objections, Defendants issued the subpoena to AFM Local 5. ECF No. 89, PageID.1168. As explained above, the local union produced recording contracts indicating that Worrell contributed to the sound recordings as a work for hire musician. But the employer on these contracts is Westbound, and some are signed by Boladian himself. Therefore, these are documents that the Boladian Parties should have produced in discovery. Indeed, the Boladian Parties' initial response to Defendants was that all responsive documents to the subpoenas had already "been turned over" to Plaintiff, and thus there was nothing further for them to provide in discovery. ECF No. 88-9,

6

PageID.1152. While Plaintiff's counsel responded that this was not true, it indicates that the Boladian Parties are in possession of relevant information that should have already been produced. *Id.*

Finally, the Court may grant an extension to the discovery deadline without upending the remaining case schedule. Defendants request additional time to (1) obtain the information and testimony sought in the discovery subpoenas; (2) subpoena AFM's Director of Electronic Media Services for the relevant agreements; and (3) potentially serve limited requests for admission relating to the information revealed in this discovery. This can be completed while the parties conduct expert discovery and will ensure that the parties have all the necessary information for summary judgment.

## CONCLUSION

Defendants request this Court grant their Motion to Extend the deadline for fact discovery.

Respectfully submitted,

SCHENK & BRUETSCH PLC

By: /s/ Peter E. Doyle
Peter E. Doyle (P81815)
James P. Allen, Sr. (P52885)
*Attorneys for Defendants*

Dated: November 12, 2024

## CERTIFICATE OF SERVICE

      I hereby certify that on November 13, 2024 (due to an ECF Inaccessibility on November 12, 2024), I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send notification of such filing to the attorneys of record.

      */s/ Peter E. Doyle*