# EXHIBIT E

2024 WL 4433063
Only the Westlaw citation is currently available.
United States District Court, E.D. Michigan,
Southern Division.

Lisa DOMSKI, Plaintiff,
v.
BLUE CROSS BLUE SHIELD OF MICHIGAN, Defendant.

Case Number 23-12023
|
Signed October 7, 2024

**Attorneys and Law Firms**

Brendan John Childress, Noah S. Hurwitz, Grant Michael Vlahopoulos, Hurwitz Law PLLC, Ann Arbor, MI, Jonathan R. Marko, Marko Law, Detroit, MI, for Plaintiff.

Angelina Rose Delmastro, Zachary Pelton, Dickinson Wright PLLC, Detroit, MI, Michelle R. Heikka, Rudolph Porter Makupson, Blue Cross Blue Shield of Michigan, Detroit, MI, Brandon C. Hubbard, Maureen J. Moody, Nolan John Moody, Scott R. Knapp, Dickinson Wright PLLC, Lansing, MI, for Defendant.

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO EXCLUDE CERTAIN EXPERT WITNESSES**

DAVID M. LAWSON, United States District Judge

*1 The defendant has moved to exclude the testimony at trial of two expert witnesses proposed by the plaintiff because their reports were not tendered within the time established by the Court in its scheduling order, and the failure to comply with the disclosure requirement was neither harmless nor substantially justified. The plaintiff seems to acknowledge that the reports required by Federal Rule of Civil Procedure 26(a)(2)(B) were not tendered on time. But she insists that an alteration of the case management schedule could render the failure harmless, and in all events, she says, she notified the defendant much earlier in the schedule that she intended to engage the expert witnesses. The Court heard oral argument on the motion in open court on October 3, 2024. Because the expert witness disclosures were untimely, the plaintiff has not offered a valid excuse for her failure to comply with the scheduling order, and she has not shown that her disclosure failure was harmless, the motion to exclude the expert witnesses will be granted.

I.

Plaintiff Lisa Domski filed a complaint alleging that she was wrongfully terminated from her employment by defendant Blue Cross Blue Shield of Michigan after she refused to comply with the company's COVID-19 vaccination policy. According to the amended complaint, Domski worked for Blue Cross Blue Shield from March 10, 2008 until her termination on January 5, 2022, most recently as an IT Process Specialist II. On November 1, 2021, the defendant announced that all employees would be required to be fully vaccinated against COVID-19 by January 4, 2022 or have an approved medical or religious accommodation. Domski alleges that Bart Feinbaum, director of employee and labor relations, told management employees that he doubted that any religious accommodation request would be valid and directed that the religious accommodation interviews be conducted like "mini depositions" to pressure employees to receive the vaccine.

Domski submitted a written religious exemption request, which generally cited a belief that taking the vaccine would be immoral because "[t]he three COVID vaccines were ether developed or tested using fetal cells that originated in abortion." Am. Compl. ¶ 40, ECF No. 18, PageID.114. She stated that taking the vaccine "would be a terrible sin and distance my relationship with God." Id. at PageID.115. The defendant interviewed Domski regarding her religious beliefs but denied her request for an accommodation shortly thereafter, stating that "she did not meet the criteria for an exemption due to a sincerely held religious belief, practice, or observance[.]" Id. ¶¶ 52-53. She ultimately was terminated on January 5, 2022.

Domski filed this lawsuit on August 11, 2023, alleging claims for religious discrimination in violation of Title VII under a failure to accommodate theory (Count I) and a disparate treatment theory (Count II), as well as a claim for religious discrimination under Michigan's Elliott-Larsen Civil Rights Act (ELCRA) (Count III). Domski's lawsuit is one of approximately 200 cases raising similar claims against the defendant, most of

which are being managed by the same attorneys. On October 10, 2023, the Court entered an order partially consolidating the case "for the sole purpose of addressing and adjudicating discovery disputes" with *Emerson v. Blue Cross Blue Shield of Michigan*, No. 22-12576, pending before the Honorable Stephen J. Murphy, III. ECF No. 10. The consolidation order stated, however, that if any provisions of Judge Murphy's order regarding discovery conflicted with this Court's case management order, the case management order in this case governs. *Ibid.*

**\*2** That same day, the Court entered a case management and scheduling order. Relevant here, the scheduling order specifies that the plaintiff's expert disclosures under Rule 26(a)(2) were due by December 7, 2023, the defendant's expert disclosures were due by January 8, 2024, discovery would conclude by January 31, 2024, and motions challenging experts and dispositive motions were due by February 19, 2024. *See* ECF No. 9, PageID.45. The Court also specified that "disclosure of an expert witness's identity under Rule 26(a)(2)(A) shall be made within three (3) business days of the expert's retention ...." *Id.* at PageID.46. The Court extended the date for filing dispositive motions at the parties' request, ECF No. 15, but neither party filed any dispositive motions or asked for an enlargement of other deadlines since then.

On November 28, 2023, the plaintiff informed the defendant via her responses to its interrogatories that she "intends to retain the services of experts with specialization in economic damages and psychiatry" but provided no further information. ECF No. 29-1, PageID.321. The plaintiff did not disclose any expert witness by the established disclosure deadline, or even by the close of discovery on January 31, 2024. On February 4, 2024, the plaintiff's attorney emailed defense counsel regarding expert discovery in the consolidated cases:

> Please be advised that Plaintiffs in the EDMI, WDMI and EDWI reserved the right in their discovery responses to retain experts in the field of evaluating psychological damages and economic damages. Those two experts are Jeffrey Bagalis (Economic Damages) and Gerald A. Shiener, M.D. (Psychological Damages). Due, however, to the pending motions in numerous cases and the potential of more early dispositive motions, those Plaintiffs utilizing experts will not obtain expert reports until the courts have adjudicated early dispositive motions. So there is no prejudice to Defendants, Plaintiffs will alert Defendants as to the status of any expert witness in advance of the close of discovery, make the expert available to Defendants for deposition, and allow Defendants as much time as necessary to obtain a rebuttal expert. Please let me know if you have any concerns regarding this expert witness plan and I would be happy to discuss the same.

Email, ECF No. 25-3.

On July 5, 2024, the plaintiff filed a witness list indicating that Dr. Gerald A. Shiener would provide expert testimony regarding the plaintiff's psychological damages, and Jeffrey Bagalis would provide expert testimony as to the plaintiff's economic damages. ECF No. 20, PageID.173. The plaintiff served Mr. Bagalis's report on the defendant on July 18, 2024. Generally, he opines that the plaintiff's economic damages exceed $1.2 million. At oral argument, the plaintiff stated that she had furnished a report from Dr. Shiener on September 12, 2024. Trial in this matter presently is scheduled to begin on October 29, 2024.

II.

The defendant asks the Court to exclude the testimony of Bagalis and Shiener because the disclosures were woefully late. Blue Cross maintains that the plaintiff's expert disclosures came as a surprise because she did not list either expert on her initial disclosures or include them in her responses to its discovery requests, and Blue Cross did not have an opportunity to depose them during the discovery period. The defendant asserts that the plaintiff has offered no good explanation for the late disclosures, and it says that permitting her to use the experts would require an adjournment of the trial date so that it can retain rebuttal experts.

The plaintiff has equivocated in her motion papers on whether her disclosures were untimely. *Compare* ECF No. 29, PageID.304 ("Plaintiff disclosed her expert witnesses well within the time allowed by the Federal

Rules of Civil Procedure.") *with id.* at PageID.297 (characterizing the disclosures as "untimely"). She does contend, however, that any untimely disclosure was substantially justified or harmless. She points to her interrogatory responses and the February 4, 2024 email from her attorney to defense counsel as putting the defendant on notice of her intentions and undermining its claim of surprise, which she says is minimal because the defendant has access to the documents the experts relied on to form their opinions. She also suggests that ample time remains before trial for the defendant to depose the experts. Attempting to explain the late disclosure, she submits that "this lawsuit was not consolidated with the other over 100 similar civil lawsuits in the Eastern District of Michigan that are still early in litigation and Plaintiff had significantly less time to disclose her expert witnesses to Defendant than in those cases where only limited discovery has occurred and no depositions have been taken while the parties have been busy conducting court-ordered mediations." ECF No. 29, PageID.307. And she contends that taken together, these factors are not indicative of the sort of tactical gamesmanship that warrants sanctions, much less exclusion.

**\*3** It is well established that the pretrial disclosures required by Federal Rule of Civil Procedure 26 are mandatory. *Roberts ex rel. Johnson v. Galen of Virginia, Inc.*, 325 F.3d 776, 782 (6th Cir. 2003). Rule 26(a)(2)(A) says that "a party must disclose to the other parties the identity of any witness it may use at trial to present [expert] evidence." The disclosure must include "a written report — prepared and signed by the witness — if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony." Fed. R. Civ. P. 26(a)(2)(B).

Rule 37(c)(1) lays out the Court's obligation when dealing with non-compliant disclosures. That rule "clearly contemplates stricter adherence to discovery requirements, and harsher sanctions for breaches of this rule, and the required sanction in the ordinary case is mandatory preclusion." *Vance, by & Through Hammons v. United States*, 182 F.3d 920, 1999 WL 455435, at \*3 (6th Cir. 1999) (table). The harshness of that rule can be ameliorated if the offending party can show that "the violation was harmless or is substantially justified." *Roberts*, 325 F.3d at 782 (citation omitted).

The determination of harmlessness and substantial justification is committed to the Court's discretion, which is "broad." *Bisig v. Time Warner Cable, Inc.*, 940 F.3d 205, 219 (6th Cir. 2019). The Sixth Circuit has provided guidance for exercising that discretion, suggesting five factors to consider:

> (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.

*Howe v. City of Akron*, 801 F.3d 718, 748 (6th Cir. 2015) (quoting *Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 396-97 (4th Cir. 2014)).

The plaintiff's expert disclosures in this case plainly were deficient. Under the scheduling order, Domski was obligated to serve her Rule 26(a)(2)(B) and (C) disclosures on or before December 7, 2024. *See* ECF No. 9. Neither of her proposed expert witnesses was disclosed formally until July 5, 2024, more than half a year beyond the deadline. The plaintiff's disclosures also were substantively deficient. Because Dr. Shiener and Mr. Bagalis were retained experts, Rule 26(a)(2)(B) required Domski to furnish a report containing, among other things, a complete statement of the expert's opinions and their basis, "the facts or data considered by the witness," a statement of the expert's experiences and qualifications, and information about the expert's compensation. Fed. R. Civ. P. 26(a)(2)(B). She did not provide a report for Bagalis until July 18, 2024 and did not provided a report from Dr. Shiener until after the briefing was completed on this motion.

Citing Rule 26(a)(2)(D)(i), the plaintiff appears to argue that her expert disclosure was timely because that rule establishes a deadline of 90 days before trial. She forgets, however, that this is a default rule, which only applies "[a]bsent a stipulation or a court order." Fed. R. Civ. P. 26(a)(2)(D)(i). The Court's scheduling order set the Rule 26(a)(2) disclosure deadlines here. The plaintiff also denies that her disclosures were untimely because she mentioned her intent to use experts in her interrogatory responses and in her attorney's emails to defense counsel in February 2024. But that information does not provide the defendant any insight into the substance of those witnesses' proposed testimony, and these allusions (which in all events came after the disclosure deadline) do little to address the clear failure to make the timely and fulsome

expert disclosures required by the Rules.

**\*4** Because of the clear failure to comply with Rule 26(a)(2), the Court must preclude these witnesses from testifying unless the plaintiff can make a persuasive case that the tardy disclosure was substantially justified or harmless. *Dickenson v. Cardiac & Thoracic Surgery of Eastern Tennessee*, 388 F.3d 976, 983 (6th Cir. 2004) (" 'The exclusion of non-disclosed evidence is automatic and mandatory under Rule 37(c)(1) unless non-disclosure was justified or harmless.' ") (quoting *Musser v. Gentiva Health Services*, 356 F.3d 751, 758 (7th Cir. 2004)).

*Howe* **factors: Surprise.** The plaintiff argues that its expert disclosures did not surprise the defendant for two reasons. Initially, she says that her responses to the defendant's interrogatories in November 2023 put it on notice of her intention to seek expert testimony regarding her economic and psychological damages. She adds that her attorney's February 4, 2024 email regarding expert discovery in the *other* cases the attorneys were managing together should have alerted him to her intentions in *this* case.

A notice that some important evidence might be part of the case without specifying exactly what it will be does little to quell the surprise of a full disclosure. The November 2023 interrogatory responses notified the defendant that the plaintiff intended to use experts but did not otherwise identify the individuals or their anticipated testimony. *See* ECF No. 29-1, PageID.321 ("Plaintiff intends to retain the services of experts with specialization in economic damages and psychiatry."). And despite the plaintiff's representation about her intentions, it is uncontested that she never disclosed information about any expert by the December 7, 2023 deadline. As the defendant points out, a logical implication of this omission is that the plaintiff had changed her mind and did not intend to use expert testimony. The February 4, 2024 email is not much better. The message — sent four days *after* the discovery cutoff date — does include the names of the proposed witnesses but does not reference this case specifically. Instead, the email refers generally to a proposed expert witness "plan" for the claims against the defendant brought by other plaintiffs. According to this "plan," the plaintiffs in that cohort that intend to call "experts will not obtain expert reports until the courts have adjudicated early dispositive motions." ECF No. 25-3, PageID.265. Those plaintiffs, apparently, would make disclosures after that. *Ibid.* By its own terms, the plaintiff's email would seem to exclude Domski's case because the discovery deadline had already passed, and no dispositive motions had been filed. Moreover, the plaintiff's attempt to lump this matter with the other pending cases ignores the consolidation order's caution that Domski's case was joined with the other pending cases only for purposes of adjudicating discovery disputes. ECF No. 10. The Court expressly stated that the scheduling order in this case trumps any inconsistent provision of the consolidation order governing the other cases. *Ibid.* (citing ECF No. 29, *Emerson v. Blue Cross Blue Shield*, No. 22-12576 (E.D. Mich.)). All should have been aware that this case has its own scheduling order and deadlines for expert disclosure, so nothing about the email necessarily alerted the defendant that the plaintiff intended to use Mr. Bagalis and Dr. Shiener in this case.

**\*5** These two announcements do not minimize the effect of the plaintiff's late disclosures on this case; it was reasonable for the defendant to believe that the plaintiff did not anticipate using expert testimony in this matter. And even if the defendant was informed that expert witnesses might be part of the plaintiff's evidentiary presentation, that information was not much use without the detail required by Rule 26(a)(2)(B). *See RJ Control Consultants, Inc. v. Multiject, LLC*, 100 F.4th 659, 671 (6th Cir. 2024) ("Although Defendants had notice that Lockhart was Plaintiffs' proposed expert witness, Defendants had no information about Lockhart's qualifications, opinions, and the bases for such opinions.").

**Ability to Cure Surprise and Disruption to Trial.** The plaintiff's argument that the surprise can be cured takes two paths. First, she says that it was the *defendant* that "manufactured" the surprise by not moving to compel the production of the missing expert reports and by not responding to her attorney's February 4, 2024 email containing her counsel's "plan." That argument betrays a fundamental misapprehension of her obligations under the scheduling order and of the discovery rules generally. Rule 26(a)(2) places the disclosure obligation on the party offering the evidence, in this case, the plaintiff. The defendant was under no obligation to seek the production of a report it did not know existed and had no reason to suspect would be forthcoming, and the February 4, 2024 email contained no indication that it applied to this case. The defendant only became aware of the plaintiff's intention to use experts for *this* case in July and filed a motion to exclude these untimely-disclosed witnesses shortly thereafter.

The plaintiff also cites *Brewer v. Webster Cnty. Coal Corp.*, 145 F.3d 1330, 1998 WL 199727, at \*2 (6th Cir. 1998) (table), and *United States v. Tarwater*, 308 F.3d 494, 516 (6th Cir. 2002), to argue the defendant is not prejudiced because "it has all the underlying data behind an expert's opinion or report." ECF No. 29,

PageID.303-04. True, some cases recognize the general proposition that a surprise is mitigated when the party can anticipate the expert's testimony, but these cases do not support it in this context. In *Brewer*, a plaintiff argued that a defense expert's testimony about the cause of an accident came as a surprise and should have been excluded. *Brewer*, 145 F.3d 1330, at *2. The Sixth Circuit rejected that argument, observing that the witness was disclosed as an expert a year prior, the plaintiff was aware he had been conducting tests several months before trial, and the topics of his testimony could be ascertained from his expert report. *Ibid.* Any surprise, the court said, resulted from the plaintiff's own lack of diligence. *Ibid. Brewer*'s facts do not map well onto the present case: the defendant had no reason to suspect Schiener's or Bagalis's active involvement in trial preparation or to anticipate that a report would be forthcoming.

Domski's reliance on *Tarwater* — a criminal case — does not help her either. There, a defendant charged with making false statements to the Internal Revenue Service argued that the district court erred by refusing to apply Federal Rule of Criminal Procedure 16(a)(1)(E) to strike the expert testimony of a government witness who produced a revised report the evening before he was scheduled to testify. *Tarwater*, 308 F.3d at 516. Rejecting this challenge, the court of appeals emphasized that the revisions were necessary due to information the expert had acquired from the defendant shortly before trial and were favorable to the defendant on balance. *Ibid.* Perhaps Domski means to argue that, like Tarwater, Blue Cross suffered little prejudice by the late disclosure, but she fails to explain why a case concerning the criminal rules otherwise has applicability to this civil matter.

**\*6** Second, the plaintiff says that there is ample opportunity to cure any surprise and only a small prospect of disruption the trial date because she can make her experts available for depositions in advance of the trial date, or the trial date can be adjusted. There are several flaws in this argument.

For one, taking these depositions is only one step in the defendant's likely trial preparation. It is reasonable to anticipate that the defendant would want to find its own rebuttal experts, provide the factual materials to them, generate reports, and prepare them for trial. For Mr. Bagalis, those tasks might be mitigated by the availability of the plaintiff's financial data in advance, but a suitable defense witness still would have to be located and familiarized with the case. The problem is even more daunting for Dr. Schiener. At oral argument, plaintiff's counsel acknowledged that Dr. Schiener actually examined the plaintiff before completing his report.

Presumably, a defense expert would want to do the same. *See* Fed. R. Civ. P. 35. And the plaintiff forgets that compressing the schedule as she suggests would deprive the defendant of mounting a *Daubert* challenge to the expert witnesses' testimony.

Certainly, issuing a new scheduling order would cure all of these difficulties. But the plaintiff must demonstrate good cause for that relief. Fed. R. Civ. P. 16(b)(4) (stating that a scheduling order establishing discovery deadlines "may be modified only for good cause and with the judge's consent"). " 'The primary measure of Rule 16's "good cause" standard is the moving party's diligence in attempting to meet the case management order's requirements.' " *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 625 (6th Cir. 2002) (quoting *Bradford v. DANA Corp.*, 249 F.3d 807, 809 (8th Cir. 2001)); *see also Hall v. Navarre*, ––– F.4th ––––, ––––, No. 23-1711, 2024 WL 4380209, at *3 (6th Cir. Oct. 3, 2024). The plaintiff has not attempted that showing here.

This factor does not support the plaintiff's argument.

**Importance of the Evidence.** Both sides seem to agree that the testimony of Mr. Bagalis and Dr. Shiener relates only to the question of damages. Excluding Mr. Bagalis and Dr. Shiener as witnesses will not make or break the plaintiff's liability case.

The parties part ways on whether the relative unimportance of the expert testimony supports its exclusion. Unfortunately, the Sixth Circuit has not clearly addressed how this factor applies in practice. *See Bisig*, 940 F.3d at 220 (acknowledging that "this factor can cut both ways"). In this case at least, the unimportance of the evidence, when measured against the burden of providing the defendant an opportunity to take expert discovery and procure rebuttal experts in an otherwise straight-forward case, weighs against the plaintiff.

**Non-Disclosing Party's Explanation.** The plaintiff's explanation for failing to disclose her expert reports by the ordered deadline is unclear, which, perhaps, is at least partially attributable to her apparent belief that the reports were submitted timely. The plaintiff seems to view her lapse within the context of the other ongoing lawsuits against the defendant being managed by her counsel. She complains that she had "significantly less time to disclose her expert witnesses to [the defendant] than in those cases where only limited discovery has occurred, and no depositions have been taken while the parties have been busy conducting court-related mediations." ECF No. 29, PageID.307.

Case 4:22-cv-11009-FKB-DRG   ECF No. 109-6, PageID.1902   Filed 12/17/24   Page 7 of 7

**Domski v. Blue Cross Blue Shield of Michigan, Slip Copy (2024)**

**\*7** This explanation is unpersuasive; it confounds the tasks of litigating wholesale multiple similar claims with producing discovery that is inherently individualized. Managing many lawsuits doubtless is a burden for counsel, but it remains true that the other cases have *not* been fully consolidated. And each of those plaintiffs no doubt will present their own evidence of damages. Ms. Domski's case stands on its own and is subject to its own scheduling order. As the Court has previously reminded the parties, "[c]ounsel should have evaluated whether it was prudent to take on this workload if they were not prepared to litigate each case to completion by the dates established in the Court's scheduling order." ECF No. 23. Finally, any attempt to suggest that mediation is an excuse for delayed disclosure stands in express contravention to the local rules. *See* E.D. Mich. LR 16.3(g) (noting that ADR participation is not an excuse to avoid or postpone a court-ordered deadline). This factor weighs against the plaintiff.

\* \* \*

The plaintiff's late disclosure of the expert reports is not harmless, particularly because the defendant would be deprived of the opportunity for an evidentiary challenge under Evidence Rule 702 and probably would not be able to marshal rebuttal evidence in a measured and non-rushed manner, which the scheduling order was intended to avoid. The *Howe* factors weigh against a finding of harmlessness and substantial justification.

The defendant also argues that it is entitled to attorney's fees as a sanction for the plaintiff's untimely disclosure. That sanction is within the Court's authority to impose. *See* Fed. R. Civ. P. 37(c)(1) (stating that the Court "*may* order payment of the reasonable expenses, including attorney's fees, caused by the failure" (emphasis added)). Because the preclusion sanction vindicates Rule 37's mandate, no fees will be awarded at this time. The defendant may revisit its fee request at the conclusion of the litigation.

III.

The plaintiff failed to comply with the deadlines for disclosing expert witness information, and she has not shown that the failure was substantially justified or harmless. The mandatory preclusion sanctions in Rule 37(c)(1) apply here.

Accordingly, it is **ORDERED** that the defendant's motion to exclude the plaintiff's experts (ECF No. 25) is **GRANTED**. Proposed expert witnesses Gerald A. Shiener and Jeffrey Bagalis will be precluded from testifying at trial.

**All Citations**

Slip Copy, 2024 WL 4433063

---

End of Document  © 2024 Thomson Reuters. No claim to original U.S. Government Works.