# EXHIBIT F

| | |
|---|---|
| **From:** | Daniel D. Quick <DQuick@dickinson-wright.com> |
| **Sent:** | Friday, October 11, 2024 4:45 PM |
| **To:** | Peter Doyle |
| **Cc:** | James Allen |
| **Subject:** | RE: Worrell discovery |

Counsel:

I have previously noted the significant delay engaged in by Defendants with regard to discovery. And we've had other communications over the course of this litigation on these issues. I will not repeat nor dwell on those issues for the moment, although they are relevant to any relief you might request from the Court and cut against any request for an extension of discovery.

<u>Documents regarding royalty income.</u>  Plaintiff responded to your written discovery on this issue. Thereafter, I spoke with Peter several times. In early 2024 we agreed to produce the schedules from Mrs. Worrell's tax returns, if any, which reflected royalties received. Those were subsequently produced. No additional issue was raised on this until your 9/26 email below. You have never presented any basis for receipt of the totality of her tax returns, and you've known of Plaintiff's position on that issue, and done nothing about it, for many, many months. As for her 2023 return, she testified it had not yet been filed. I will see if it's been filed in the interim and, if it has a similar royalty schedule, produce same.

Consistent with Mrs. Worrell's testimony, those schedules reflect only de minimis amounts of <u>publishing</u> royalties. Publishing royalties are not at issue in this litigation. Accordingly, any agreement regarding her BMI/ASCAP publishing royalties is irrelevant.

In the 11/15/23 responses to document requests, we affirmed no SR royalties were received on the works at issue in the litigation. Mrs. Worrell testified she did not receive any sound recording royalties from the works at issue in this litigation from Sony, UMG or Warner. You separately subpoenaed each of those entities and nothing in their production contradicted Mrs. Worrell. Subsequent to service of the discovery responses, Mrs. Worrell received a single royalty payment from Westbound in approximately August of 2024 of something around $5000. I am working to obtain any documents that correspond to this payment but do not possess them currently.

<u>Communications with dismissed defendants</u>.  This issue was discussed with Peter in early 2024 and we affirmed – and did so again subsequently – that such communications in Plaintiff's possession were produced. Your focus on Boladian and his entities was also explored in

deposition and Mrs. Worrell testified, among other things, that there were none concerning the SR royalties for the works at issue in the litigation.  As to your statements concerning the record companies, we disagree with them, but Mrs. Worrell had no such communications that were not produced, with one exception.  The estate did reach a settlement agreement with Westbound and, thereunder, received the aforementioned August 2024 royalty payment.  While we do not believe it to be relevant, we are prepared to produce that agreement.  As to Sony, UMG and Warner, the only agreement is the stipulation that was filed with the court on August 29, 2023.  There are no other agreements (and if there were, they'd have been produced by the record companies) and no SR royalties paid by those entities.

Documents regarding copyright registrations.  Plaintiff has no responsive documents, as you were informed in the responses to the document requests.

This should resolve all issues.  Please advise if you agree.

Defendants' document production.  With regard to Defendants' document production, I do not believe we received documents reflecting revenues realized from those Works where Mr. Clinton (or one of his entities) owns the sound recording (i.e., those previously held by Warner).  If I am mistaken, I would appreciate you directing me to the bates number/document.  If such information was not produced, please do so as it is necessary for damages.

UMG/Warner/Sony/Maibach depositions.  Please confirm whether any of these were served and if so when and how.  Please also confirm whether anyone has produced additional documents, served objections, or indicated an intent to actually appear.  You picked these dates unilaterally and the 15th in particular is problematic (on top of the now scheduled conference with Judge Grand).



**Daniel D. Quick**
Member
O:248-433-7242
DQuick@dickinsonwright.com

2600 West Big Beaver, Suite 300, Troy MI, 48084

**From:** Peter Doyle <Peter.Doyle@sbdetroit.com>
**Sent:** Thursday, September 26, 2024 4:08 PM
**To:** Daniel D. Quick <DQuick@dickinson-wright.com>
**Cc:** James Allen <james.allen@sbdetroit.com>
**Subject:** Worrell discovery

Dan:

2

As discussed at today's status conference, the following is a detailed outline of Plaintiff's discovery deficiencies. Please let us know your availability to meet and confer tomorrow or Monday.

**Documents regarding royalty income.**

Plaintiff has failed to sufficiently produce documents regarding royalties received by the Estate/Mrs. Worrell. The documents are clearly relevant to Plaintiff's copyright claims and Plaintiff's unsubstantiated assertion that the Estate and Mrs. Worrell are not receiving any royalties from the Works.

RFP No. 3 requests proof of income (1099's, W-2's, etc.) for Estate of George Bernard Worrell, Jr. 2016-pres.; George Bernard Worrell, Jr. 1996-2016; Judy Worrell 1996-pres; and Any corporate entity owned/controlled by George Bernard Worrell or those in privity with him that received royalties of any sort or nature for any copyrighted work.

Plaintiff initially objected on the basis of relevance and refused to produce any documents. Plaintiff subsequently produced one-page statements generally identifying categories of royalties that Mrs. Worrell received in the years 2015-2018 and 2022.

Mrs. Worrell testified that the Estate receives royalties via wire transfer or check, and that there are 1099s issued for the royalties. She stated that she did receive royalties in 2023. She also testified that she had been receiving royalties from BMI and ASCAP up until approximately two years ago.  She also testified that she sold the estate's interest to "LLC's" in some of the Works for which she is being paid.  We are entitled to see the documentation behind those sales/assignments to verify whether she/the estate already received compensation for damages she claims in the present suit.

We request Plaintiff supplement with the 1099s, detailed tax returns for the years requested, all royalty statements, the documents memorializing the assignments/sales about which she testified, and any other documentation with sufficient detail to identify the source of the royalties paid to the Estate/Mrs. Worrell, including whether those royalties pertain to the disputed Works. If Mrs. Worrell is not in possession of her tax returns, we request that she sign an IRS Form 8821 authorizing the release of those returns.

**Documents regarding communications with dismissed Defendants or other third parties.**

RFP No. 6 requests any communication between Plaintiff and any defendant initially named in the Complaint.
RFP No. 14 requests any communications between Plaintiff's counsel and counsel for the now-dismissed defendants.
RFP No. 7 requests communications between Armen Boladian or any of his related entities and Mrs. Worrell, Bernie Worrell, or any attorney concerning George Clinton or the Complaint's allegations.

In response to these requests, Plaintiff produced a total of about 7 emails between Mrs. Worrell and SoundExchange. Plaintiff did not produce any communications with Boladian, his entities, or representatives, even though Mrs. Worrell referenced such communications in her deposition testimony. We request that Plaintiff produce those documents, as well as any communications with the now-dismissed Defendants (to include Westbound Records) regarding the claims at issue in this litigation, the Works, and royalties (to include any advances on royalties). These communications are relevant to any copyright claims, royalty requests, or any other prior positions Plaintiff has taken regarding the Works. As for communications with counsel for the record companies, the requested documents go beyond "confidential settlement communications" and are relevant to the claims of copyright ownership, joint authorship, and royalties for the disputed Works.  It is out position that you are suing the wrong parties and have dismissed those parties who would, if your client had a claim, be responsible for those claims.  We are entitled to see whether your client received anything of value in exchange for those dismissals as that would be directly relevant to whether your client has already been compensated for money she now says my client has diverted from her husband/husband's estate.  As you are no doubt aware, Mr. Clinton does

not receive any income from the exploitation of most of the sound recordings at issue in this case.  We believe that those amounts are being received by the very defendants you have now dismissed from your suit which relates directly to, among other things, your efforts to mitigate your client's damages by pursuing the parties who, if your client was damaged, would be responsible for those damages.

Your attention is also directed to Bates GCTHANG04069-71 a communication from Mrs. Worrell to Special Master Thomas Friedman in which she essentially blames Mr. Boladian for the very things the Complaint now says are Mr. Clinton's fault.  So you can understand our credulity, especially in light of King and Ballow's appearance at our depositions and as the Estate's counsel, at the notion that Mr. Boladian's slightly hidden hand is not behind your suit.  A jury would be entitled to decide whether this involvement bears upon, not just the credibility of Mrs. Worrell as a witness, but the credibility of your entire case, especially in light of the long history ("feud") you referenced during today's status conference.

**Documents regarding copyright registrations.**

RFP No. 10 requests documents regarding any attempt by Plaintiff to perfect any copyright interest in any Work. Plaintiff did not produce any responsive documents. Mrs. Worrell testified that she could not recall whether she or Mr. Worrell made any efforts to register any sound recording copyrights. If there were any attempts to register a copyright interest on behalf of Mr. Worrell for any of the Works, we request Plaintiff produce those documents.

Peter E. Doyle



211 West Fort Street, Suite 1410
Detroit, MI 48226
O: (313) 774-1000, ext. 1116
C: (313) 316-6679
www.sbdetroit.com
peter.doyle@sbdetroit.com

The information contained in this e-mail, including any attachments, is confidential, intended only for the named recipient(s), and may be legally privileged. If you are not the intended recipient, please delete the e-mail and any attachments, destroy any printouts that you may have made and notify us immediately by return e-mail. Neither this transmission nor any attachment shall be deemed for any purpose to be a "signature" or "signed" under any electronic transmission acts, unless otherwise specifically stated herein. Thank you.