# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

ESTATE OF GEORGE BERNARD
WORRELL, JR.,

      Plaintiff,

                                    Case No. 4:22-cv-11009-FKB-DRG

vs.                                     District Judge F. Kay Behm

                                    Magistrate Judge David R. Grand

THANG, INC. and
GEORGE CLINTON,

      Defendants.

---

DANIEL D. QUICK (P48109)
Dickinson Wright PLLC
2600 W. Big Beaver Road, Suite 300
Troy, MI 48084
(248) 433-7200 // Fax (844) 670-6009
dquick@dickinsonwright.com
*Attorneys for Plaintiff*

JAMES P. ALLEN, SR. (P52885)
PETER E. DOYLE (P81815)
Schenk & Bruetsch PLC
211 W. Fort Street, Suite 1410
Detroit, MI 48226-3236
(313) 774-1000 // Cell 313-779-0053
james.allen@sbdetroit.com
peter.doyle@sbdetroit.com
*Attorneys for Defendants*

---

## PLAINTIFF'S RESPONSE BRIEF TO DEFENDANTS' MOTION FOR SANCTIONS

---

# **TABLE OF CONTENTS**

ISSUE PRESENTED ................................................................................. ii

MOST CONTROLLING AUTHORITIES ............................................ iii

I.     INTRODUCTION ....................................................................1

II.    STATEMENT OF FACTS ......................................................4

     A.    Plaintiff Properly Objected to Defendants' Requests for Agreements With Boladian and Defendants Did Not Challenge Those Objections ..................................................................................4

     B.    Mrs. Worrell Did Not Misrepresent Anything In Her Deposition..........7

     C.    Defendants Finally Try to Take Discovery From the Boladian Parties as Discovery is Closing ......................................................9

     D.    Defendants Cannot Demonstrate that the Settlement Agreement is Relevant, or that They were Prejudiced in Any Fashion by When It Was Produced ..................................................................................13

III.    ARGUMENT..........................................................................15

     A.    Plaintiff Did Not Violate A Court Order ...............................15

     B.    A Motion Under Rule 37 Is Baseless....................................16

     C.    Sanctions are Not Proper Under this Court's Inherent Authority Or 28 U.S.C. 1927 ..................................................................................17

     D.    The Remedies Requested by Defendants are Improper and Unjustified ..................................................................................22

IV.    CONCLUSION......................................................................24

## ISSUE PRESENTED

When Plaintiff timely objected to Defendants' written discovery requests, Defendants never pursued the matter, and later Plaintiff produced an agreement which is irrelevant to the main issue in the case, has any sanctionable conduct occurred?

      Plaintiff answers: NO

      Defendants presumably answer: YES

# MOST CONTROLLING AUTHORITIES

## Cases

*Broughton v. Shoe Show, Inc.*, No. 1:20-CV-261, 2022 WL 4484612 (S.D. Ohio Sept. 27, 2022) ..................................................................................21

*Chambers v. NASCO, Inc.,* 501 U.S. 32, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991) ..................................................................................................18

*Childress v Taylor*, 945 F.2d 500 (2nd Cir. 1991) ........................................1

*Info-Hold, Inc. v. Sound Merch., Inc.,* 538 F.3d 448 (6th Cir. 2008) ......................17

*Johnson v. Ventra Grp., Inc.,* 191 F.3d 732 (6th Cir. 1999)....................................16

*Lankford v. Taylor*, No. CV-17-02797-PHX-DWL, 2021 WL 1515504, at *7 (D. Ariz. Apr. 16, 2021)..................................................................................17

*Metz v. Unizan Bank,* 655 F.3d 485 (6th Cir. 2011) ................................................18

*Rentz v. Dynasty Apparel Indus., Inc.,* 556 F.3d 389 (6th Cir. 2009) ....................21

*Smith v. State Farm Mut. Auto. Ins. Co.,* No. 10-11016, 2011 WL 833796 (E.D. Mich. Mar. 4, 2011) ..................................................................................23

*Tech. Recycling Corp. v. City of Taylor*, 186 F. App'x 624 (6th Cir. 2006) ...........15

## Statutes

28 U.S.C. §1927....................................................................................................21

## Rules

Fed.R.Civ.P. 26(a).................................................................................................16

Fed.R.Civ.P. 26(e)........................................................................................... 16, 17

Fed.R.Civ.P. 37(c)(1)............................................................................................16

Fed.R.Civ.P. 60 .....................................................................................................17

## I.    INTRODUCTION

In this case, Plaintiff seeks a declaratory judgment that Bernie Worrell is the co-owner of the sound recordings of various musical works ("Works", as defined in the Complaint). Previous defendants SoundExchange, Universal Music, Warner Brothers, Westbound Records, and Sony pay sound recording royalties (or have in the past) to Defendants Clinton and Thang, Inc. ("Defendants") based upon their claim of exclusive ownership.  These royalty-paying entities have told the Court that they will abide by the Court's ultimate ruling on co-ownership in terms of paying <u>future</u> royalties on the Works. Defendants contest Plaintiff's co-ownership claim and want to maintain exclusive entitlement to royalties. And while that addresses the future, the Complaint also asks for an accounting from Defendants to address what Defendants have already received based upon their alleged exclusive ownership of the sound recordings, and to account for a portion of that to Plaintiff.  The Court, on two separate occasions, held that these claims are proper.

The trial in this case will decide whether Bernie Worrell was a co-author and hence co-owner of the sound recordings in the Works. Defendants claim (in their Rule 12(c) Motion) the proofs will focus upon the nature and extent of Mr. Worrell's contributions as these works were created and whether the parties "intended" that Mr. Worrell be a co-author (citing *Childress v Taylor*, 945 F.2d 500 (2nd Cir. 1991) and its progeny).

What this case is <u>not</u> about, and what trial will <u>not</u> be about, is anything to do with Armen Boladian or his various entities. Those people are certainly a fascination of Defendants, who have waged decades of litigation against them, stemming from Clinton signing over his interests in various works to Boladian in 1972. For months now, Clinton has sought to turn this case into a sideshow of that animosity (which Magistrate Judge Grand and this Court did not permit).

Defendants' latest maneuver is its motion for sanctions, based upon the fact that a settlement agreement executed in December 2023 between Plaintiff and previous Defendant Westbound Records ("Westbound"), owned by Boladian, was not disclosed until October 2024. Defendants admit that Plaintiff objected to producing the agreement in 2023, and that Defendants never moved to compel. Defendants further admit that Plaintiff offered to produce the agreement, notwithstanding its lack of relevance, on October 11, 2024, but since Defendants did not ask for the document, it was not produced then, but was produced in November, immediately after Magistrate Judge Grand ruled that the Boladian parties should produce any agreements with Plaintiff concerning sound recordings at issue in the case. Defendants further admit that they had the agreement and a full opportunity to question Armen Boladian about it in his deposition. Thus, as detailed below, Defendants fail to demonstrate that any sanctionable conduct has occurred and fail to demonstrate any alleged prejudice by not having the agreement sooner.

Beyond all of that, Defendants fail to explain why the settlement agreement is relevant. Defendants largely ignore this key issue, relying instead upon hyperbole about alleged conspiracies and their deep-seated animosity toward Boladian. Westbound owns the sound recording copyrights in some of the Works at issue through agreements signed by Clinton in 1972. Plaintiff settled with Westbound by agreeing not to upset the apple cart, *i.e.,* by agreeing not to challenge Westbound's ownership of those copyrights. In exchange, Westbound agreed, going forward, to pay Plaintiff royalties, but subject to this Court's ultimate determination of the issue in this case – *i.e.,* that Worrell is in fact a co-author and co-owner of the works.

Does an agreement signed in 2023 speak to Worrell's co-authorship and co-ownership of the sound recordings for works created in the 1960's and 1970's?  No. A settlement agreement signed 50 years after creation of the works has nothing to do with establishing Mr. Worrell's status as co-owner of the sound recordings.  Does that agreement somehow bind Clinton to recognizing Worrell's co-ownership claim? No.  Does that agreement affect the declaratory judgment sought from this Court? No.  Contrary to all of Defendants' bluster, the agreement changes nothing about what needs to be adjudicated in this case. And the agreement certainly does not make Westbound the 'real party in interest' because everything hinges upon the Court's resolution of the primary question – is Worrell a co-owner? Plaintiff is the sole person who can assert that right, both as to the Works where the copyrights are

owned by Westbound and as to the non-Westbound works (*i.e.,* those where either Clinton or another record company own the copyrights). Nor does the settlement agreement affect Plaintiff's right to an accounting, since (by definition) that process will call for Defendants to account to Plaintiff for what they have received from the sound recordings, and that would not include any amounts paid by Westbound directly to Plaintiff.

Defendants' Motion seems to be about many things – including Clinton's animosity toward Boladian, yet another attempt to extend discovery, and imposing additional unnecessary costs upon Plaintiff – but it falls woefully short of a meritorious motion for sanctions. For all the reasons set forth herein, Plaintiff respectfully requests the Court to DENY Defendants' Motion.

## II.  STATEMENT OF FACTS

### A.  Plaintiff Properly Objected to Defendants' Requests for Agreements With Boladian and Defendants Did Not Challenge Those Objections

Plaintiff's Complaint, filed May 10, 2022, alleges that Bernie Worrell was a co-author and hence co-owner of various Works, but that Clinton claimed total ownership and control over royalties. Originally, the Complaint named five record companies (Universal Music, Sony, Westbound, HDH, and Warner Brothers) "in an abundance of caution" (ECF No. 1, ¶2), which, upon information and belief, claimed copyright ownership in some of the Works through assignments from Clinton.

Counsel for Clinton appeared in August 2022 and thereafter filed a Motion to Dismiss. The record company defendants obtained various extensions of time, and ultimately were dismissed, without prejudice.  This was originally accomplished as to Sony, UMG and Warner via ECF No. 60, dated August 29, 2023, which was (by stipulation) subsequently replaced by ECF No. 67, dated October 20, 2023. As reflected in the earlier stipulation, those "Music Company Defendants will abide by the Court's determination of, and/or the terms of any settlement between Plaintiff and the Clinton Defendants, concerning what percentage share of royalties that has or would otherwise accrue to the Clinton Defendants, if any, should be credited and/or paid to Plaintiff." SoundExchange subsequently made the same representation to the Court – that it would abide by this Court's co-ownership determination in terms of how to distribute royalties and was dismissed on order. HDH was dismissed by notice on December 14, 2023 (ECF No. 71) and Westbound by notice on January 1, 2024 (ECF No. 72).

Although Defendants served written discovery on Plaintiff in 2022, they agreed no response would be due while the Motion to Dismiss was pending. After that motion was denied, Plaintiff provided written responses on November 15, 2023. Defendants broadly requested, regardless of subject-matter, all communications between Plaintiff and any defendant (ECF No. 112-5, PageID.2050-1, RFP No. 6) or with Boladian (*id.,* PageID.2052-3, RFP No. 7) and all agreements between

5

Plaintiff and Boladian (*id.,* PageID.2055-6, RFP No. 11). Plaintiff specifically objected to each request on the grounds of, *inter alia*, over-breadth and relevance.

Defendants knew that all record company defendants were dismissed between August 2023 and January 2024. But despite Defendants issuing subpoenas to three of those record companies (Warner, UMG and Sony) on January 9, 2024 (*e.g.,* see **Exhibit A** attached hereto) – which broadly requested, among other things, all communications with Plaintiff and all agreements – Defendants did not serve a subpoena on Westbound. This is despite the fact that Defendants claimed in their Initial Disclosures (served September 23, 2022) that Mr. Boladian was an anticipated witness as "owner and chief executive of Bridgeport Music and Westbound records [sic] who, if he truthfully testifies, can provide relevant information about payments made to Worrell…" (**Exhibit B**).

In approximately March 2024, counsel for Plaintiff and Defendants had a meet-and-confer with regard to each other's discovery responses. For their part, Defendants raised two issues. (**Exhibit C**) First, in RFP No. 3, Defendants asked for Plaintiff's tax returns. Plaintiff objected. In the meeting, Defendants explained they wanted the returns to confirm that Plaintiff had not received royalties related to the sound recordings for the Works at issue. Subsequently, Plaintiff agreed to produce, and did produce, the schedule from available tax returns (including the most recent year available, 2022) which reflected Plaintiff's receipt of royalties (all of those were

publishing royalties, not sound recording royalties).  Defendants never again raised the issue, although subsequently asked for and received the same tax return schedule for Plaintiff's 2023 return. Second, in RFP No. 14, Defendants asked for all communications between Plaintiff's counsel and counsel for Warner, Sony, Universal or SoundExchange. (ECF No. 112-5, PageID.2058)  Defendants did not challenge Plaintiff's objections to RFP Nos. 6, 7 or 11, nor ask for Westbound communications.

The Court held a case management conference on June 20, 2024.  Defendants did not inform either Plaintiff or the Court of any discovery disputes.

### B.  **Mrs. Worrell Did Not Misrepresent Anything In Her Deposition**

Depositions of Plaintiff and the Defendants were taken August 26-28, 2024. Attending on behalf of Mrs. Worrell were the undersigned and Drew Davis of the King & Balow law firm. King & Balow represented Plaintiff in the 2019 lawsuit filed in New York against Clinton (wherein Clinton for the first time denied signing any contract with Worrell, and which then led to the filing of this action) and personally represents Mrs. Worrell. Nothing was hidden nor was there any deception. Indeed, Defendants knew that Mr. Davis was with the King & Balow law firm, because he told Mr. Allen so, and Mr. Davis even volunteered on-the-record information, acknowledged by Defendants' counsel, as to the name of the firm. (ECF No. 112-7 PageID.2271 (p. 193:16-20)) Defendants also questioned Mrs. Worrell

7

about how she came to be represented by the King & Balow firm (*e.g., id.,* PageID. 2271-3 (p. 193:16-195:1)).

During Mrs. Worrell's deposition, she was not asked about any royalties received from Westbound nor about a settlement agreement with Westbound. She was asked obliquely about any "role" she played in the dismissal of the "record companies" but was not asked about any settlement agreements or terms for the dismissal. (*Id.,* PageID.2168-9) She was asked whether there was an agreement with Westbound "with respect to the recovery in this case," and she truthfully answered "Absolutely nothing." (*Id.,* PageID.2274) Mrs. Worrell clearly understood the question as having to do with the "recovery" of money, as evidenced by the next question and answer.[1] And while Defendants asked whether Plaintiff received royalties from a long list of third parties (*e.g., id.,* PageID.2146-51), including publishing royalties from Bridgeport Music (another Boladian entity)(*id.,* PageID.2133), Defendants elected not to ask about others that were disclosed in discovery (*id.,* PageID.2173) and posed no question about Westbound. And, to the extent questions were asked about royalties from others, the questions were on royalties received in 2023, not 2024. (*Id.,* PageID.2145-6)

---

[1] "Q.  And it's your testimony that should you prevail in this lawsuit that your only intention is to use whatever that recovery is for your benefit and no one else's?
A. My children, all the people who've suffered when George took the money. All the people that Bernie wanted to do things for; our son, my daughter, my granddaughters."

C.     **Defendants Finally Try to Take Discovery From the Boladian Parties as Discovery is Closing**

The parties knew since a July 20, 2024 case management conference and case management order (ECF No. 78) that fact discovery closed on October 21, 2024. The Court scheduled a status conference for September 26. The only inkling that Plaintiff had that Defendants intended to raise additional discovery issues before the close of discovery was an August 30 email (*i.e.,* sent immediately after the party depositions) where Defendants' counsel wrote: "We will be filing a motion to compel production of complete answers to our discovery requests.  Prior to that we request a meet and confer to discuss the specifics of the deficiencies I have identified." (**Exhibit D**)  In that same email, Defendants announced their intention to issue multiple subpoenas to the Boladian parties. The same day, the undersigned responded and, as to discovery from Plaintiff, wrote: "On discovery, would you please send me ahead of a meet and confer what your issues are so I can be prepared to discuss substantively?" Defendants' counsel immediately responded, stating: "I will get you a brief memo outlining my issues with your discovery responses next week." (*Id.*) While Defendants issued third party subpoenas to the Boladian parties on September 10, 2024, nothing more was heard from counsel regarding discovery from Plaintiff.

During the status conference on September 26, 2024, Defendants suddenly began posturing for an extension of scheduling order dates. Part of that pitch involved Mr. Allen's accusations that he had raised discovery issues with Plaintiff to which Plaintiff had not responded. The Court will recall Plaintiff's counsel was flabbergasted, since in fact Defendants had not raised any issues with Plaintiff. During the hearing, Plaintiff's counsel located the August 30 emails and Mr. Allen confirmed that he, in fact, had never told Plaintiff what discovery Defendants thought was owed. The Court instructed him to do so and demurred regarding any request for an extension of discovery.

Defendants' counsel then emailed Plaintiff's counsel that same day (although counsel had been advised that September 26 was his last day in the office before a trip overseas). In that email, for the first time, Defendants raised RFP Nos. 6, 7 and 14. (**Exhibit E**) Plaintiff's counsel responded on October 11. (*Id.*) Therein, Plaintiff advised Defendants that, "Subsequent to service of the discovery responses, Mrs. Worrell received a single royalty payment from Westbound in approximately August of 2024 of something around $5000. I am working to obtain any documents that correspond to this payment but do not possess them currently." Plaintiff also advised Defendants of the following:

> Communications with dismissed defendants. This issue was discussed with Peter in early 2024 and we affirmed – and did so again subsequently – that such communications in Plaintiff's possession were produced. Your focus on Boladian and his entities was also explored in

10

deposition and Mrs. Worrell testified, among other things, that there were none concerning the SR royalties for the works at issue in the litigation.  As to your statements concerning the record companies, we disagree with them, but Mrs. Worrell had no such communications that were not produced, with one exception.  The estate did reach a settlement agreement with Westbound and, thereunder, received the aforementioned August 2024 royalty payment. While we do not believe it to be relevant, we are prepared to produce that agreement.  As to Sony, UMG and Warner, the only agreement is the stipulation that was filed with the court on August 29, 2023.  There are no other agreements (and if there were, they'd have been produced by the record companies) and no SR royalties paid by those entities.

Given that Defendants were threatening to file a motion, Plaintiff asked for confirmation that the issues, as addressed, resolved Defendants' concerns. To wit, the email stated: "This should resolve all issues.  Please advise if you agree." (*Id.*) Defendants never responded.

In the meantime, Defendants filed a motion to extend discovery and a motion to compel against the Boladian parties handled by Magistrate Judge Grand. During a November 20, 2024, hearing, Magistrate Judge Grand significantly narrowed the subpoenas and (as relevant here) ordered production of agreements with Plaintiff pertaining to the works at issue and a limited deposition of Mr. Boladian. (ECF No. 110, PageID. 1956).  Notably, Defendants did not even mention that they had already been offered the 2023 settlement agreement but never accepted the invitation to receive it.

After the hearing, Plaintiff's counsel followed up with Defendants on November 25, 2024 and, even though Defendants never responded to the October

11 email, produced the settlement agreement. (**Ex. E**) The only additional correspondence were two short emails dated July 25, 2024 and August 16, 2024 email with the same Sarah that Mrs. Worrell testified in deposition she dealt with regularly on behalf of the Boladian parties. The emails (attached as part of Ex. E) consist of Mrs. Worrell's inquiry as to when royalties would be received (which matches her testimony that they were usually received in February and August (ECF No. 112-7, PageID.2277) and then confirmation the wire was issued.  The wire was a lump sum of publishing royalties from Bridgeport, but the email said it also included "the Westbound payment." None of this conflicted with anything she said in her deposition.

Boladian was deposed on December 4, 2024.  He was fully questioned concerning the settlement agreement but expressed no substantive knowledge, stating that it was handled by Westbound's attorney. (ECF No. 112-8, PageID.2415-21)

The same day, this Court denied Defendants' Motion to Extend Discovery, limiting Defendants to the relief allowed by Magistrate Judge Grand as to the Boladian parties. (ECF No. 106)

Defendants then pivoted, and started making allegations that, based on the non-production of the settlement agreement, they would seek an extension of discovery and sanctions.  This is easy enough to see through.  It is also meritless.

D.   **Defendants Cannot Demonstrate that the Settlement Agreement is Relevant, or that They were Prejudiced in Any Fashion by When It Was Produced**

As discussed further below, these two topics are central to any motion for sanctions. Defendants though give them short shrift and ultimately fail to carry their burden.

In a single paragraph, Defendants assert that the settlement agreement is relevant for three reasons. (ECF No. 112, PageID.1997-8) First, without any explanation, Defendants claim that Plaintiff released Westbound and its agents and employees, which might include Clinton. This is false, as Clinton was not an agent or employee of Westbound in 2023 (if he ever was). The settlement agreement clearly preserves the claims in this litigation against Clinton and, indeed, relies upon Worrell's ultimate success in the litigation as a basis for royalties. Second, Defendants allege the royalties paid by Westbound to Plaintiff are relevant to 'damages.' But Plaintiff does not seek damages. The first issue is whether Plaintiff prevails on its declaratory judgment action. Only then is Plaintiff entitled to an accounting[2], but even then the agreement is not relevant. Plaintiff will be entitled to an accounting of what *Defendants received* from their exploitation of the sound

---

[2] Defendants' Motion fails to inform the Court that Plaintiff is not asking for damages in this case, but instead is relying exclusively upon its claim for declaratory judgment and an accounting. Defendants' counsel was informed of this on December 17.

recordings and then an order to pay over to Plaintiff a portion of that. Amounts which Defendants *never received* – including any amounts paid by Westbound to Plaintiff – are not part of that process. Third, Defendants allege that because the settlement agreement transfers Plaintiff's ownership in the sound recordings to Westbound, it "rais[es] serious questions about the Estate's ability to prosecute claims it no longer owns, and whether Westbound is a required party under FRCP 19." But this case is not about, and does not turn upon, who currently owns the copyrights to the subject works. Some are owned by Westbound, some by Universal Music, some by other record companies, and some by Clinton. That has been the case since at least the early 1970s. What is at issue is whether Plaintiff is entitled to royalties from those sound recordings as co-owner. Only Worrell – the putative co-owner – has the right to prosecute that claim, not the copyright holder. Defendants' wan reference to "questions" about standing does not demonstrate relevance nor support sanctions.

Defendants also fail to demonstrate any prejudice from receiving the settlement agreement when they did. They fully questioned Boladian regarding it, and have not identified any other discovery that the agreement somehow makes relevant. And despite overheated rhetoric, Defendants do not specifically identify any cost or activity they engaged in because the agreement was not produced earlier. They still would have had to subpoena Westbound, still would have had to face objections to (as Magistrate Judge Grand found) patently overbroad document

requests, and still would have had a motion hearing as a result. Especially given the fact that Defendants never challenged Plaintiff's objections to written discovery, and never earlier sought discovery from Westbound, Defendants have not been prejudiced.[3]

## III.    ARGUMENT

### A.    Plaintiff Did Not Violate A Court Order

Defendants first allege that this Plaintiff violated this Court's minute entry of July 8, 2024. This is a frivolous argument. On July 1, 2024, Plaintiff (not Defendants) took advantage of Magistrate Judge Grand's standing protocol for informal discussion of discovery disputes, given *Defendants'* failure to produce documents and failure to confirm dates for deposition of Defendants' witnesses. (**Exhibit F**)  That call was held on July 8. During the call, Defendants pledged to produce documents and supplemental discovery responses by August 2, which is what is reflected in the minute entry.  This is confirmed by the fact that Defendants then failed to produce the promised documents and responses by August 2, and when called on it, apologized. (**Exhibit G**)  There was no discussion during the call with

---

[3] Compare the extreme misconduct of the Plaintiff, including repeated violation of orders and repeated refusal to participate in discovery, which the court found to constitute prejudice in the case cited by Defendants, *Tech. Recycling Corp. v. City of Taylor*, 186 F. App'x 624, 635 (6th Cir. 2006).

the Magistrate about any request for Plaintiff to produce anything, nor is there a court order compelling Plaintiff to produce anything.

### B.   A Motion Under Rule 37 Is Baseless

Defendants pepper their brief with various snippets of authority but no sort of actual analysis. Fed.R.Civ.P. 37(c)(1) is irrelevant, as it only applies to violations of Fed.R.Civ.P. 26(a) or (e). Rule 26(a) is not implicated; it deals with initial, expert, and pre-trial disclosures. Plaintiff's initial disclosure listed documents by which *Plaintiff* may prove its claims; the settlement agreement was not and is not such a document. And Rule 26(e) is not relevant, because it addresses only a duty to supplement, which arises when "in some material respect the disclosure or response is incomplete or incorrect." No prior initial disclosure or written discovery request was "incomplete or incorrect" by virtue of the subsequently executed settlement agreement; Defendants continued to stand on their objections to the document requests that would have called for production of that agreement.

This is why the onus in these situations is not upon the producing party (Plaintiff) but upon the requesting party (Defendants), and when there is no motion to compel filed to address objections, there cannot be sanctions. See, e.g., *Johnson v. Ventra Grp., Inc.,* 191 F.3d 732, 749 (6th Cir. 1999)(sanctions not proper where "Johnson never moved to strike the defendants' objections to this request or to compel the production of the documents."). In an analogous situation, the Sixth

Circuit addressed a claim of fraud under Fed.R.Civ.P. 60 which was predicated upon a party's alleged failure to supplement an earlier discovery request. But the earlier discovery request had been objected to. "In providing this objection, SMI shifted the burden to Info–Hold to either clarify its discovery request or seek an order from the district court directing SMI to comply with Info–Hold's discovery request as originally phrased." *Info-Hold, Inc. v. Sound Merch., Inc.,* 538 F.3d 448, 457–58 (6th Cir. 2008).  Because it did not do so, there could be no fraud. And, here, because Defendants never challenged Plaintiff's objection to its requests, there can be no failure to supplement. See also *Lankford v. Taylor*, No. CV-17-02797-PHX-DWL, 2021 WL 1515504, at *7 (D. Ariz. Apr. 16, 2021)("Defendants have not identified any case suggesting that a party who objects to an interrogatory, and whose objection goes unchallenged, nevertheless has an ongoing duty of supplementation under Rule 26(e) to supply the very information that is the subject of the standing objection. This would seem to defeat the whole point of raising objections….")(citing *Info-Hold, Inc*. and other authorities). And this is not a Rule 37(a) motion to compel, nor could it be at since Defendants have the agreement and did not file the motion timely or during the discovery period.

### C. Sanctions are Not Proper Under this Court's Inherent Authority Or 28 U.S.C. 1927

Again, Defendants offer a slew of out-of-context case quotes, but no analysis. While this Court has an inherent power to sanction misconduct, Defendants fail to

advise the Court of the applicable three-part test for exercise of this power. "This test requires the district court to find "[1] that 'the claims advanced were meritless, [2] that counsel knew or should have known this, and [3] that the motive for filing the suit was for an improper purpose such as harassment." *Metz v. Unizan Bank,* 655 F.3d 485, 489 (6th Cir. 2011). These standards are simply inapplicable, as are the facts of each of the cases cited by Defendants. Nor is this a motion for contempt, fraud upon the court, or any of the other egregious circumstances discussed in *Chambers v. NASCO, Inc.,* 501 U.S. 32, 44, 111 S. Ct. 2123, 2132, 115 L. Ed. 2d 27 (1991).

To the extent the Motion invokes the scenarios of a party acting in "bad faith, vexatiously, wantonly, or for oppressive reasons," Defendants offer no specifics as to how Plaintiff allegedly did these things. These sanctions require a showing of intentional, bad faith conduct. *Metz, supra.* Plaintiff properly objected to Defendants' initial discovery request on grounds of, among other things, lack of relevance, which is discussed extensively above. Defendants never moved to compel.  The only other specific allegation relates to Mrs. Worrell's deposition testimony. But as demonstrated above, Defendants never asked a question which squarely called for an answer involving the settlement agreement. When Mrs. Worrell was asked whether she had "communications" with Westbound about its dismissal from the litigation, she truthfully said no; the settlement was handled

18

through lawyers (ECF No. 112-7, PageID.2168) which was confirmed by Boladian, who testified that the settlement was handled by lawyers, not the parties directly. Mrs. Worrell also testified that she did deal with representatives of Westbound, specifically Sarah, although Mrs. Worrell was unsure which Boladian entity (Westbound, Bridgeport or otherwise) Sarah was with.

Q Okay. So who do you call **at Westbound Records** when you're –

A Sarah.

Q Who's that?

A Sarah.

Q And who's Sarah?

A Well, back -- you mean when, when -- who do I call when, now or years ago or what?

Q I'm going to confine my questioning to the period of time from 2016, June of 2016 when your husband passed, to the present.

A Okay, Sarah, Sarah. You want to know who I speak to?

Q Yes.

A Sarah.

Q Sarah, is that S-A-R-A-H or –

A Yes.

Q Okay. And what's Sarah's last name?

A Catlett, C-A-T-L-E-T-T.

Q And who is she?

**A I don't know what her title is but she's who I call when I'm trying to get some money, get an advance from Armen, whatever.**

Q Okay. And is she with Bridgeport or is she –

A **I'm not sure.**

\*\*\*

Q Okay. Walk me through a typical conversation that you have with Tara -- or Sarah, I'm sorry.

A I have to like -- typical conversation. Sarah, can you give me an idea, can you give me an idea when the checks are going out. Hey, Sarah, can you contact Armen, I need an advance. Those would be the two conversations we would have.

Q Okay. And has Mr. Boladian ever responded to any of those requests for advances?

A To me?

Q Yeah.

A Outside of advancing the money?

Q Uh-huh.

A No.

(*Id.,* PageID.2133-35)(emphasis added). This testimony was absolutely accurate. She was not asked a single question she did not answer to the best of her ability. Notably, Defendants never asked Plaintiff specifically whether there was a settlement agreement with any of the dismissed defendants, yet now attempts to base an entire sanctions motion off of that unasked question. As Defendants note, Mrs.

Worrell is elderly and, from time to time, could not recall details in response to questions. But that is not "bad faith" or anything even close to it. See, *e.g., Broughton v. Shoe Show, Inc*., No. 1:20-CV-261, 2022 WL 4484612, at *12 (S.D. Ohio Sept. 27, 2022)(despite alleged inconsistencies in deposition testimony, sanctions denied; "plaintiff does not offer the Court any evidence from which to conclude that this discrepancy was intentional and the result of bad faith").

The standard for a motion under 28 U.S.C. §1927 is well-established. *Rentz v. Dynasty Apparel Indus., Inc.,* 556 F.3d 389, 395 (6th Cir. 2009). The statute focusses upon conduct of counsel and applies "when an attorney knows or reasonably should know that a claim pursued is frivolous, or that his or her litigation tactics will needlessly obstruct the litigation of nonfrivolous claims." *Id.* Defendants do not specify any conduct of Plaintiff's counsel which meets (or even comes close to) this standard. Plaintiff properly asserted an objection – in 2023 – to written discovery requests, which Defendants never challenged. And Plaintiff asserted before Magistrate Judge Grand – as it does now – that the agreement with Westbound is irrelevant in this case. But Plaintiff had already offered to produce the settlement agreement and the two minor emails which were learned of, and once Magistrate Grand ordered Westbound to produce agreements with Worrell regarding sound

recordings at issue in this case, Plaintiff immediately produced those documents. This comes nowhere close to improper conduct.[4]

### D.    The Remedies Requested by Defendants are Improper and Unjustified

Because there has been no sanctionable conduct, a discussion of remedies is unnecessary.  Nor should there be any remedy granted, especially since Defendants cannot demonstrate how they have been prejudiced in any way. However, it is telling that Defendants' first requested relief is an extension of discovery. Defendants already tried getting this; their motion was denied by the Court. Defendants cryptically claim that they want "[i]nformation about how the sound recordings to be transferred were selected, how they were valued and the royalty payments…." (ECF No. 112, PageID.2014)  Notably, neither of these topics were asked of Mr. Boladian in his deposition, nor do these questions go to whether Mr. Worrell is a co-author and co-owner of the subject sound recordings. This argument itself is an admission to the irrelevance of the agreement and an admission that what Defendants want to do is continue to wage their war against non-party Boladian by abusing discovery in this case. The Magistrate Judge saw through this, and greatly limited the discovery allowed against Boladian, and this Court already saw through this, and

---

[4] If anything, it is Defendants' counsel who apparently needs to be reminded that the Eastern District of Michigan's Civility Principles dictate that counsel shall not attribute bad motives or improper conduct to other counsel, absent good cause.

denied Defendants' motion to extend discovery. This Motion is more of the same and should likewise be denied.

Defendants' request for dismissal is simply frivolous. That "sanction of last resort" (even when a sanctionable offense occurred) is available when the failure to produce was "without justification", and only when "the failure to disclose is not harmless." *Smith v. State Farm Mut. Auto. Ins. Co.,* No. 10-11016, 2011 WL 833796, at *1 (E.D. Mich. Mar. 4, 2011). Here, the written discovery request was overbroad and in any event called for irrelevant information.  Even if Defendants had filed a motion to compel discovery, and this Court disagreed with Plaintiff, that does not render Plaintiff's objection "without justification." Similarly, as set forth above, the fact the agreement was not produced earlier was completely harmless and caused Defendants no extra expense, discovery, motion or anything else. And then, even if Defendants could overcome those hurdles, they would still have to satisfy the four-factor test: (1) whether the party's failure to cooperate was due to willfulness, bad faith, or fault; (2) whether the adversary was prejudiced by the failure to cooperate in discovery; (3) whether the dismissed party was warned that failure to cooperate would result in dismissal; and (4) whether less drastic sanctions were imposed or considered before dismissal was ordered. *Id.* Plaintiff has established already that factors (1) and (2) have not been met and factor (3) and (4) clearly did not occur.

## IV.   CONCLUSION

For all the reasons set forth herein, Plaintiff respectfully requests the Court to DENY Defendants' Motion.

Respectfully Submitted,

DICKINSON WRIGHT PLLC

 /s/ *Daniel D. Quick*
Daniel D. Quick (P48109)
*Attorney for Plaintiff*
2600 W. Big Beaver Road, Suite 300
Troy, MI 4804
248-433-7200

Dated:  January 10, 2025

## CERTIFICATE OF SERVICE

I hereby certify that on January 10, 2025 the foregoing document was electronically filed with the Clerk of the Court using the ECF System, which will send notification of such filing upon all registered counsel and serve same.

By: /s/ *Daniel D. Quick*