# EXHIBIT E

**Daniel D. Quick**

| | |
|---|---|
| **From:** | Daniel D. Quick |
| **Sent:** | Monday, November 25, 2024 12:17 PM |
| **To:** | Peter Doyle; James Allen |
| **Subject:** | Worrell discovery |
| **Attachments:** | 2023 Royalties Schedule.pdf; 4855-8310-7070 v1 11.25.24 production.pdf |

Counsel:

Please advise when or whether you intend to produce the documents you promised many weeks ago.

Even though you never responded to the below email, I am attaching the settlement agreement, the royalty schedule from Judie's 2023 return, and an email related to the August 2024 payment.  This is all Judie possesses.

---

**From:** Daniel D. Quick
**Sent:** Friday, October 11, 2024 4:45 PM
**To:** Peter Doyle <Peter.Doyle@sbdetroit.com>
**Cc:** James Allen <james.allen@sbdetroit.com>
**Subject:** RE: Worrell discovery

Counsel:

I have previously noted the significant delay engaged in by Defendants with regard to discovery.  And we've had other communications over the course of this litigation on these issues. I will not repeat nor dwell on those issues for the moment, although they are relevant to any relief you might request from the Court and cut against any request for an extension of discovery.

Documents regarding royalty income.  Plaintiff responded to your written discovery on this issue.  Thereafter, I spoke with Peter several times.  In early 2024 we agreed to produce the schedules from Mrs. Worrell's tax returns, if any, which reflected royalties received.  Those were subsequently produced.  No additional issue was raised on this until your 9/26 email below.  You have never presented any basis for receipt of the totality of her tax returns, and you've known of Plaintiff's position on that issue, and done nothing about it, for many, many months.  As for her 2023 return, she testified it had not yet been filed.  I will see if it's been filed in the interim and, if it has a similar royalty schedule, produce same.

Consistent with Mrs. Worrell's testimony, those schedules reflect only de minimis amounts of <u>publishing</u> royalties.  Publishing royalties are not at issue in this litigation.  Accordingly, any agreement regarding her BMI/ASCAP publishing royalties is irrelevant.

In the 11/15/23 responses to document requests, we affirmed no SR royalties were received on the works at issue in the litigation.  Mrs. Worrell testified she did not receive any sound recording royalties from the works at issue in this litigation from Sony, UMG or Warner.  You separately subpoenaed each of those entities and nothing in their production contradicted Mrs. Worrell.  Subsequent to service of the discovery responses, Mrs. Worrell received a single royalty payment from Westbound in approximately August of 2024 of something around $5000.  I am working to obtain any documents that correspond to this payment but do not possess them currently.

<u>Communications with dismissed defendants</u>.  This issue was discussed with Peter in early 2024 and we affirmed – and did so again subsequently – that such communications in Plaintiff's possession were produced. Your focus on Boladian and his entities was also explored in deposition and Mrs. Worrell testified, among other things, that there were none concerning the SR royalties for the works at issue in the litigation.  As to your statements concerning the record companies, we disagree with them, but Mrs. Worrell had no such communications that were not produced, with one exception.  The estate did reach a settlement agreement with Westbound and, thereunder, received the aforementioned August 2024 royalty payment. While we do not believe it to be relevant, we are prepared to produce that agreement.  As to Sony, UMG and Warner, the only agreement is the stipulation that was filed with the court on August 29, 2023.  There are no other agreements (and if there were, they'd have been produced by the record companies) and no SR royalties paid by those entities.

<u>Documents regarding copyright registrations.</u>  Plaintiff has no responsive documents, as you were informed in the responses to the document requests.

This should resolve all issues.  Please advise if you agree.

<u>Defendants' document production.</u>  With regard to Defendants' document production, I do not believe we received documents reflecting revenues realized from those Works where Mr. Clinton (or one of his entities) owns the sound recording (i.e., those previously held by Warner).  If I am mistaken, I would appreciate you directing me to the bates number/document.  If such information was not produced, please do so as it is necessary for damages.

<u>UMG/Warner/Sony/Maibach depositions.</u>  Please confirm whether any of these were served and if so when and how.  Please also confirm whether anyone has produced additional documents, served objections, or indicated an intent to actually appear.  You picked these

dates unilaterally and the 15th in particular is problematic (on top of the now scheduled conference with Judge Grand).

**From:** Peter Doyle <Peter.Doyle@sbdetroit.com>
**Sent:** Thursday, September 26, 2024 4:08 PM
**To:** Daniel D. Quick <DQuick@dickinson-wright.com>
**Cc:** James Allen <james.allen@sbdetroit.com>
**Subject:** Worrell discovery

Dan:
As discussed at today's status conference, the following is a detailed outline of Plaintiff's discovery deficiencies. Please let us know your availability to meet and confer tomorrow or Monday.

**Documents regarding royalty income.**

Plaintiff has failed to sufficiently produce documents regarding royalties received by the Estate/Mrs. Worrell. The documents are clearly relevant to Plaintiff's copyright claims and Plaintiff's unsubstantiated assertion that the Estate and Mrs. Worrell are not receiving any royalties from the Works.

RFP No. 3 requests proof of income (1099's, W-2's, etc.) for Estate of George Bernard Worrell, Jr. 2016-pres.; George Bernard Worrell, Jr. 1996-2016; Judy Worrell 1996-pres; and Any corporate entity owned/controlled by George Bernard Worrell or those in privity with him that received royalties of any sort or nature for any copyrighted work.

Plaintiff initially objected on the basis of relevance and refused to produce any documents. Plaintiff subsequently produced one-page statements generally identifying categories of royalties that Mrs. Worrell received in the years 2015-2018 and 2022.

Mrs. Worrell testified that the Estate receives royalties via wire transfer or check, and that there are 1099s issued for the royalties. She stated that she did receive royalties in 2023. She also testified that she had been receiving royalties from BMI and ASCAP up until approximately two years ago.  She also testified that she sold the estate's interest to "LLC's" in some of the Works for which she is being paid.  We are entitled to see the documentation behind those sales/assignments to verify whether she/the estate already received compensation for damages she claims in the present suit.

We request Plaintiff supplement with the 1099s, detailed tax returns for the years requested, all royalty statements, the documents memorializing the assignments/sales about which she testified, and any other documentation with sufficient detail to identify the source of the royalties paid to the Estate/Mrs. Worrell, including whether those royalties pertain to the disputed Works. If Mrs. Worrell is not in possession of her tax returns, we request that she sign an IRS Form 8821 authorizing the release of those returns.

**Documents regarding communications with dismissed Defendants or other third parties.**

RFP No. 6 requests any communication between Plaintiff and any defendant initially named in the Complaint.
RFP No. 14 requests any communications between Plaintiff's counsel and counsel for the now-dismissed defendants.
RFP No. 7 requests communications between Armen Boladian or any of his related entities and Mrs. Worrell, Bernie Worrell, or any attorney concerning George Clinton or the Complaint's allegations.

In response to these requests, Plaintiff produced a total of about 7 emails between Mrs. Worrell and SoundExchange. Plaintiff did not produce any communications with Boladian, his entities, or representatives, even though Mrs. Worrell referenced such communications in her deposition testimony. We request that Plaintiff produce those documents, as well as any communications with the now-dismissed Defendants (to include Westbound Records) regarding the claims at issue

3

in this litigation, the Works, and royalties (to include any advances on royalties). These communications are relevant to any copyright claims, royalty requests, or any other prior positions Plaintiff has taken regarding the Works. As for communications with counsel for the record companies, the requested documents go beyond "confidential settlement communications" and are relevant to the claims of copyright ownership, joint authorship, and royalties for the disputed Works.  It is out position that you are suing the wrong parties and have dismissed those parties who would, if your client had a claim, be responsible for those claims.  We are entitled to see whether your client received anything of value in exchange for those dismissals as that would be directly relevant to whether your client has already been compensated for money she now says my client has diverted from her husband/husband's estate.  As you are no doubt aware, Mr. Clinton does not receive any income from the exploitation of most of the sound recordings at issue in this case.  We believe that those amounts are being received by the very defendants you have now dismissed from your suit which relates directly to, among other things, your efforts to mitigate your client's damages by pursuing the parties who, if your client was damaged, would be responsible for those damages.

Your attention is also directed to Bates GCTHANG04069-71 a communication from Mrs. Worrell to Special Master Thomas Friedman in which she essentially blames Mr. Boladian for the very things the Complaint now says are Mr. Clinton's fault.  So you can understand our credulity, especially in light of King and Ballow's appearance at our depositions and as the Estate's counsel, at the notion that Mr. Boladian's slightly hidden hand is not behind your suit.  A jury would be entitled to decide whether this involvement bears upon, not just the credibility of Mrs. Worrell as a witness, but the credibility of your entire case, especially in light of the long history ("feud") you referenced during today's status conference.

**Documents regarding copyright registrations.**

RFP No. 10 requests documents regarding any attempt by Plaintiff to perfect any copyright interest in any Work. Plaintiff did not produce any responsive documents. Mrs. Worrell testified that she could not recall whether she or Mr. Worrell made any efforts to register any sound recording copyrights. If there were any attempts to register a copyright interest on behalf of Mr. Worrell for any of the Works, we request Plaintiff produce those documents.

Peter E. Doyle



211 West Fort Street, Suite 1410
Detroit, MI 48226
O: (313) 774-1000, ext. 1116
C: (313) 316-6679
www.sbdetroit.com
peter.doyle@sbdetroit.com

## SETTLEMENT AGREEMENT AND RELEASE

AGREEMENT, made as of this 27ᵀᴴ day of December, 2023 by and between WESTBOUND RECORDS, INC. ("**Westbound**"), having an address at 4301 Orchard Lake Road, Suite 180-239, West Bloomfield, MI 48323, on the one hand, and ESTATE OF GEORGE BERNARD WORRELL, JR. ("**Worrell Estate**"), having an address at 8499 Cimarron Way, Maple Falls, WA 98266, on the other hand.

WHEREAS,

A.   Worrell Estate has asserted claims against Westbound and third parties, including, but not limited to, George Clinton ("**Clinton**") and Thang, Inc. (together, with Clinton, "**Clinton Defendants**"), and Worrell Estate commenced an action, specifically, *Estate of George Bernard Worrell, Jr. v. Thang Inc.* et. al, Case No. 4:22-CV-11009-FKB-DRG ("**Action**") based on such claims in the United States District Court of the Eastern District of Michigan, Southern Division ("**Court**").

B.   In the Action, Worrell Estate alleged, *inter alia,* that GEORGE BERNARD WORRELL, JR. ("**Artist**") is a co-owner of all rights, title and interests, and all worldwide copyright interests, in and to certain audio and audiovisual recordings jointly created by Artist and Clinton and embodying the results of Artist's musical and/or vocal performances, including, without limitation, the recordings released, distributed and/or otherwise exploited by Westbound under the band and/or musical group professionally known as "Funkadelic" (collectively, "**Funkadelic**") as specifically set forth on <u>Schedule "A"</u> annexed hereto and made a part hereof ("**Subject Recordings**"). For purposes of this Agreement, the Subject Recordings shall include all versions, mixes, remixes, edits, and derivative works of such recordings, in whole or in part, whether vocal, instrumental or a combination thereof, including, without limitation, all audio and/or audiovisual material, incomplete recordings, outtakes, demos, work parts, tapes and tracks or multi-tracks, stems and digital files.

C.   Worrell Estate and Westbound wish to settle the Action and all claims as between Worrell Estate and Westbound, fully and finally, in accordance with the terms and conditions of this Agreement.

NOW, THEREFORE, in consideration of the foregoing and the mutual covenants and conditions hereinafter set forth, the parties hereby acknowledge and agree as follows:

1.   <u>Dismissal of Claims Against Westbound</u>. Simultaneously with the execution hereof, Worrell Estate shall instruct Worrell Estate's counsel in the Action to take the steps necessary to request and effectuate a voluntarily dismissal of the Action, solely as to Westbound, with prejudice and without costs or attorney's fees. Worrell Estate warrants and represents that Worrell Estate shall cause Worrell Estate's counsel to comply with said instructions promptly and in no event more than thirty (30) days after the execution hereof. The parties hereto hereby consent to the continuing jurisdiction of the Court over any disputes arising in connection with this Agreement.

2.   <u>Releases</u>. Upon the full execution of this Agreement and Westbound's payment of the Settlement Payment in accordance with the terms and conditions of this Agreement:

(a)      Worrell Estate, itself, and on behalf of Artist's heirs, executors, administrators, and their respective affiliated companies, predecessors-in-interest, successors and assigns (together, with Worrell Estate, "**Worrell Parties**"), jointly and severally, shall and does hereby and forever release, discharge and hold harmless Westbound and all of Westbound's representatives, agents, affiliates, subsidiaries, officers,

1

directors, stockholders, employees, attorneys, executors, administrators, successors, licensees and assigns (together, with Westbound, **"Westbound Parties"**) from all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, extents, executions, claims and demands whatsoever, in law or equity, which the Worrell Parties ever had, now has or hereafter can, shall or may have for, against the Westbound Parties, upon, or by reason of any matter, cause or thing whatsoever from the beginning of the world through the date of this Agreement. Without limiting the foregoing, Worrell Estate shall execute and deliver to Westbound, simultaneously with Worrell Estate's execution of this Agreement, the Worrell Estate Release attached hereto as Exhibit "A" and made a part hereof.

(b)     The Westbound Parties, jointly and severally, shall and does hereby and forever release, discharge and hold harmless the Worrell Parties from all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, extents, executions, claims and demands whatsoever, in law or equity, which the Westbound Parties ever had, now has or hereafter can, shall or may have for, against the Worrell Parties, upon, or by reason of any matter, cause or thing whatsoever from the beginning of the world through the date of this Agreement. Without limiting the foregoing, Westbound shall execute and deliver to Worrell Estate, simultaneously with Westbound's execution of this Agreement, the Westbound Release attached hereto as Exhibit "B" and made a part hereof.

(c)     If and to the extent applicable to the parties hereto and the releases contained herein, each party hereto hereby expressly and specifically waives the benefit of any applicable rule, regulation, legal principle, and/or statute that provides that a general release does not extend to claims unknown at the time of release, including, without limitation, Section 1542 of the California Civil Code or such other similar legal precedent or statute in any other state, to the extent it applies to the above release. California Civil Code Section 1542 provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

(d)     Notwithstanding anything to the contrary in this Agreement or otherwise:

(i)     For the avoidance of doubt, the releases contained in this Agreement do not apply to either party's rights or claims to enforce the terms and provisions of this Agreement.

(ii)     Seller represents and warrants that the Clinton Defendants are not Artist's or the Worrell Estate's affiliated companies, predecessors-in-interest, successors and/or assigns. The Clinton Defendants shall not be deemed a member of Worrell Parties for any purposes hereunder.

(iii)     This Agreement and the releases herein do not apply to the ownership or control, and/or any rights, title, and interests in and to, and/or claims in connection with, the musical compositions embodied in the Subject Recordings, and/or any other musical compositions written or created in whole or in part by Artist, whether such rights, title, and interests, including, copyright interests, are currently owned and/or controlled by Worrell Estate and/or any third-party (including, without limitation, Bridgeport Music,

Inc.), and/or their respective representatives, agents, affiliates, subsidiaries, officers, directors, stockholders, employees, attorneys, heirs, executors, administrators, successors, licensees and assigns. For the avoidance of doubt, all rights, title, and interests, and copyright interests, arising from Artist's authorship share of all musical compositions, and the ownership and control thereof, are expressly excluded from this Agreement and the releases contained herein.

3.  Settlement Payment. As part of the consideration for the releases and covenants contained in this Agreement, Westbound shall pay to Worrell Estate the sum of ███████████ ███████████ promptly upon the full execution of this Agreement ("**Settlement Payment**"), which sum shall be made payable as follows in accordance with Worrell Estate's request and authorization:

(a)  ███████████ ███████ shall be remitted to Worrell Estate's attorneys, King & Ballow, by bank transfer or wire payment to the following bank account:

| | |
|---|---|
| Account/Payee Name | KIM & BALLOW Trustee II (IALTA) |
| Account Number | ████████████████████ |
| Bank Name | |
| Bank Address | |
| ABA/Routing No. | |
| SWIFT | ██████████ |

(b)  The remaining balance of ███████████ ███ shall be remitted to Worrell Estate, by bank transfer or wire payment to the following bank account:

| | |
|---|---|
| Account/Payee Name | JUDITH A. WORRELL |
| Account Number | ████████████████ |
| Bank Name | |
| Bank Address | ██████████████ |
| ABA/Routing No. | ████████████ |

4.  Ownership and New Grant.

(a)  Neither admitting nor denying the validity of any claim or any liability in connection therewith, Westbound acknowledges that Worrell Estate has claimed that Artist is an author and co-owner of the Subject Recordings and the worldwide copyrights therein and thereto.

(b)  To the extent that Worrell Estate owns and/or controls, or shall own or control, or otherwise deemed to own or control, any rights, title, and interests in and to the Subject Recordings, in whole or in part, (collectively, "**Worrell's Share**"), Worrell Estate hereby irrevocably grants, assigns, and transfers to Westbound all of Worrell Estate's present and future rights, title, interests, control, and benefits in and to Worrell's Share of the Subject Recordings, throughout the universe, including, without limitation, any and all undivided copyright ownership rights, title, and interests in and to Worrell's Share of the Subject Recordings, and the rights of copyrights therein and thereto, now or hereafter existing, whether vested, contingent or inchoate, for the full term of the copyrights and any renewals, extensions, continuations, restorations and reversions thereof. The foregoing grant, assignment, and transfer is intended to be, and shall be deemed, a

new grant, assignment, and transfer of copyright made by Worrell Estate effective as of the date hereof ("**New Grant**").

(c)      Under the New Grant, Westbound and/or its successors, assigns, administrators, licensees, or designees shall have the exclusive right, but not the obligation, to manufacture, reproduce, distribute, transmit, release or re-release, make available, edit, remix, mix, broadcast, publicly perform, display, promote, advertise, use, exploit, license, deal in, control, transfer, and/or otherwise dispose of Worrell's Share of the Subject Recordings and any rights of whatsoever related thereto, and to directly collect all income, compensation, proceeds, monies and/or consideration of whatsoever nature derived from the exercise of such rights (excluding only the so-called "artist's share" of public performance income and/or other monies payable to the recording artist arising from the so-called "neighboring rights" in Worrell's Share of the Subject Recordings), in any and all territories of the world and all other space, including, without limitation, the so-called "metaverse" or any simulated digital environment or space in which users interact virtually with and/or in a digital reality, and/or any other means or form of immersive, alternative, or other reality and technology now or hereafter existing, by any method, manner, or means and in any form or media now or hereafter existing. Without limiting the foregoing, for the avoidance of doubt, Westbound shall have the right, but not the obligation, to manufacture, reproduce, sell, distribute, and otherwise exploit phonograph records and other reproductions or configurations, physical or digital, visual or non-visual, embodying Worrell's Share of the Subject Recordings; to transmit, "stream" or otherwise make available Worrell's Share of the Subject Recordings by any and all means, manner, or technology now or hereafter existing; to authorize modifications, edits, mixes, remixes and/or derivative works of Worrell's Share of the Subject Recordings by any and all means, manner, or technology now or hereafter existing; to permit the public performance of Worrell's Share of the Subject Recordings by radio or television broadcast and any other means or method now or hereafter existing; to initiate, join, pursue, and compromise any action or proceeding, and/or otherwise protect or enforce Westbound's interests in Worrell's Share of the Subject Recordings. For the avoidance of doubt, the New Grant expressly excludes all rights, title, and interests, and copyright interests, arising from Artist's authorship share of all musical compositions, and/or the ownership and control thereof, and income derived therefrom.

(d)      Worrell Estate warrants and represents that there are no other prior grants, assignments, and/or other transfers of copyrights made by Artist or the Worrell Estate in connection with Worrell's Share of the Subject Recordings which are in effect as of the date hereof. To the extent that Westbound has owned and/or controlled Worrell's Share of the Subject Recordings on reliance upon or pursuant to any prior grant(s), assignment(s), and/or transfer(s) made or effectively made, or otherwise deemed to have been made or effectively made, by or on behalf of Artist, Worrell Estate and/or any other member of Worrell Parties, such prior grant(s), assignment(s), and/or transfer(s) are hereby terminated and of no further force and effect as to Worrell's Share of the Subject Recordings. Without limiting the foregoing, Worrell Estate further represents that the Clinton Defendants do not validly own or control Worrell's Share of the Subject Recordings, and if and to the extent applicable, any purported prior grant(s), assignment(s), and/or transfer(s) made to Westbound by the Clinton Defendants as alleged successor, assign, or authorized representative of, or on behalf of, Artist, Worrell Estate or any other member of Worrell Parties, shall be deemed invalid and of no force and effect as to Worrell's Share of the Subject Recordings as of the date hereof.

(e)      Worrell Estate hereby irrevocably grants and licenses to Westbound the non-exclusive, perpetual right to use, and to authorize others to use, the legal and professional name(s), approved image(s), approved likeness(es), and approved biographical information of Artist, in any medium or by any method, now or hereafter known, for the purposes of exploiting and otherwise dealing with the Subject Recordings and/or promotion of Westbound's business in connection with the Subject Recordings. Any existing names,

likenesses and biographical information used in connection with the Subject Recordings (e.g., existing cover art), and any copies of photographs, likenesses and biographical material furnished to Westbound by Worrell Estate on or after the date hereof, shall be deemed approved for the purposes herein. Worrell Estate shall have the right to approve any additional photographs, likenesses and biographical material selected or commissioned by Westbound. Westbound shall not use any such material(s) which Worrell Estate disapproves in writing (email sufficing) within five (5) business days following receipt of such proposed material(s), provided that Worrell Estate shall promptly furnish substitute or alternative material(s) satisfactory to Westbound for use in connection with the Subject Recordings.

5. <u>Prospective Royalties; Accounting and Audit</u>. As part of the consideration for the releases and covenants contained in this Agreement, including the New Grant made by Worrell Estate:

(a)     Commencing on and after January 1, 2024, Westbound shall pay Worrell Estate royalties in a sum equal to <u>one</u> of the following two amounts, whichever amount is <u>greater</u>:

(i)     one-third (1/3) of the royalties otherwise payable by Westbound to the Clinton Defendants and/or their respective representatives, agents, affiliates, subsidiaries, administrators, successors, assigns, licensees and/or designees in connection with the Subject Recordings pursuant to the agreement dated August 30, 1972 between Westbound and George Clinton, individually and jointly as a member of Funkadelic, as such agreement may be amended from time to time, including, without limitation, the modification dated September 24, 1975; <u>OR</u>

(ii)     twenty percent (20%) of the Artist Net Receipts. As used herein, the **"Artist Net Receipts"** shall mean fifty percent (50%) (i.e., the so-called "artist's share") of all gross receipts actually received by Westbound identifiably and directly derived from the use and exploitation of the Subject Recordings, less any monies required to be paid from such gross receipts on account of fees and royalties payable to third-party artists, producers, remixers, songwriters, publishers and other bona fide third-party royalty recipients of the Subject Recordings (collectively, **"Third-Party Royalty Recipients"**); actual, verifiable, out-of-pocket costs, expenses, and charges incurred by Westbound in connection with the manufacture, packaging, marketing, audit, collection, protection and/or enforcement of the Subject Recordings; and bona fide and customary fees, commissions, or other monies actually paid to third parties in connection with the distribution, promotion, or other use and exploitation of the Subject Recordings, pursuant to agreements, licenses, or other commitments made by Westbound in the ordinary course of business (e.g., distribution fees, collection agent fees, sync placement procurement fees or commissions). The Net Receipts shall also include a pro rata share of any so-called "black box" or "unmatched" or "unallocated" funds, distributions, or payments made to Westbound in respect of the master recordings owned or controlled by Westbound, it being acknowledged and agreed that such pro rata share attributable to the Subject Recordings shall be determined in Westbound's reasonable discretion. Notwithstanding anything to the contrary herein, for the avoidance of doubt, the other primary and prominent artist members of Funkadelic whose performances are embodied on the Subject Recordings as of the date hereof (and which members, together with Worrell Estate, would otherwise be entitled to a share of the Artist Net Receipts in

connection with the Subject Recordings) shall not be deemed Third-Party Royalty Recipients for the purposes of calculating the Artist Net Receipts.

(b)      Westbound shall compute the royalties payable to Worrell Estate hereunder in connection with Worrell's Share of the Subject Recordings and render account statements to Worrell Estate on a semiannual basis, within ninety (90) days following June 30 and December 31 of each year. Account statements shall be reasonably detailed and accompanied by payment of any royalties shown to be due and owing.

(c)      Within two (2) years after an account statement is rendered to Worrell Estate hereunder, Worrell Estate shall have the right to cause a certified public accountant to examine the books and records of Westbound for the sole purpose of verifying the accuracy of such statement, but in no event more than once per calendar year and no more than once per statement. Any such examination shall be conducted at Worrell Estate's sole cost and at expense, at reasonable business hours agreed to between the parties hereto at the place where such books and records are maintained, provided advance written notice of no less than thirty (30) days made to Westbound.

(d)      As hereby requested and authorized by Worrell Estate, all royalties payable to Worrell Estate hereunder shall be remitted to Worrell Estate's attorneys King and Ballow to King and Ballow's bank account set forth above. Worrell Estate expressly acknowledges and agrees that the remittance of any monies otherwise payable to Worrell Estate hereunder, in whole or in part (including, without limitation, the Settlement Payment and all royalties payable hereunder), in accordance with Worrell Estate's requests and instructions will be made solely as an accommodation to Worrell Estate, and Westbound shall have no liability by reason of such accommodation. All such third-party remittances shall constitute and be deemed payments to Worrell Estate in satisfaction of Westbound's obligations with respect to such payments pursuant to the terms and conditions hereof.

6.   Representations and Warranties.

(a)      Westbound hereby represents and warrants that (i) Westbound has the capacity, power and authority to enter into and to fully perform this Agreement; and (ii) Westbound's performance of this Agreement shall not violate the rights of any third party.

(b)      Worrell Estate hereby represents and warrants that (i) Worrell Estate has the capacity, power and authority to enter into and to fully perform this Agreement; (ii) Worrell Estate's performance of this Agreement shall not violate the rights of any third party; (iii) except to the extent of any applicable prior grants, assignments and/or transfers made to Westbound as referenced hereinabove and which are of no further force and effect as of the date hereof, neither Artist nor Worrell Parties have heretofore sold, granted, assigned, transferred, or otherwise conveyed Worrell's Share of the Subject Recordings and/or any right to receive monies related thereto or derived therefrom; (iv) except with respect to the Action and the claims made thereunder by the Clinton Defendants, to the best of Worrell Estate's knowledge, there are no other claims, actions, or proceedings, whether actual, pending, or threatened, or other encumbrances in connection with Worrell's Share of the Subject Recordings; and (vi) Worrell Parties shall not directly or indirect assert, or assist or permit the assertion or furtherance of, any claim, action or proceeding which is inconsistent with any term of this Agreement.

(c)      Further, Judie Worrell and Bassi Worrell each hereby represent and warrant that (i) Judie Worrell is the surviving spouse and Bassi Worrell is the surviving child of Artist; (ii) Judie Worrell and Bassi

Worrell are the sole heirs of Artist and the sole beneficiaries of the Worrell Estate; (iii) Judie Worrell is authorized to act on behalf of the Worrell Estate in her capacity as Worrell Estate's administrator or executor; (iv) Judie Worrell and Bassl Worrell each hereby acknowledges, affirms, and agrees to the representations, warranties, and covenants made by Worrell Estate in this Agreement, including, without limitation, with respect to the authority and power to enter into and fully perform this Agreement and the releases contained herein, and to effectuate the New Grant in connection with Worrell's Share of the Recordings in accordance with the terms and conditions hereunder; and (v) to the extent that Judie Worrell and/or Bassl Worrell, individually, as the sole heirs of Artist and sole beneficiaries of the Worrell Estate, own or control any present and/or future rights, title, and interests in and to Worrell's Share of the Subject Recordings, each of Judie Worrell and Bassl Worrell hereby knowingly and willingly agree and consent to the full performance of the terms and provisions of this Agreement as to such rights, title and interests, including, without limitation, joining in the New Grant made to Westbound hereunder.

7.   <u>Indemnification</u>.  Each party agrees to and hereby indemnifies, saves and holds the other party and its affiliated entities, parents, subsidiaries, successors, assigns, designees, licensees and their respective owners, officers, directors, employees and agents free and harmless against and from any and all costs, expenses, losses and damages (including, without limitation, attorneys' fees and costs) arising from or in connection with any third party claim which is inconsistent with any of the representations, warranties or covenants made herein by the indemnifying party, and shall reimburse any such payments incurred by the indemnified party on demand. Each party shall promptly notify the other party of any such third-party claim. The indemnifying party shall have the right to participate in the defense of any such third party claim with counsel of its own choice at its sole cost and expense.

8.   <u>Assignment</u>.  Westbound shall have the right to assign this Agreement and/or its rights and interests hereunder, in whole or in part, to any third party. Westbound shall remain primarily liable for any of its obligations hereunder if such obligations are not assumed by any such assignee. Worrell Estate shall not have the right to delegate any of its obligations or assign this Agreement, or any of its rights or interests hereunder, in whole or in part, without Westbound's prior written consent.

9.   <u>Notices</u>.  Unless otherwise specified herein, all notices required hereunder shall be in writing and shall be deemed given when delivered by a recognized overnight courier service (e.g., Federal Express, United Parcel Service) to the recipient party at its address first mentioned herein, or such other address as such recipient party may hereafter designate by written notice to the other party. A courtesy copy of any notice sent to Westbound shall be sent by e-mail to westbound34@gmail.com, mr54@54sound.com, and sarahcatlett54@gmail.com. A courtesy copy of any notice sent to Worrell Estate shall be sent by e-mail to Worrell Estate's attorney Richard S. Busch, Esq. at rbusch@kingballow.com.  Any inadvertent failure to send such courtesy copies shall not be deemed a breach of this Agreement.

10.  <u>Cure Period</u>. No breach of the terms hereof shall be deemed material unless and until written notice of breach shall be served on the breaching party and the breaching party shall have failed to cure such breach within thirty (30) days after receipt of such notice, or if such breach cannot reasonably be cured within such thirty (30) day period, the breaching party shall have failed to commence to cure such breach within such thirty (30) day period and continue to so cure with reasonable diligence.

11.  <u>Governing Law</u>. This Agreement shall be governed by the laws of the State of Michigan and the United States District Court for the Eastern District of Michigan or any state court located in the State of Michigan, County of Oakland shall have exclusive jurisdiction over any controversies regarding this Agreement.

12. <u>Miscellaneous.</u> This Agreement sets forth the entire understanding between the parties with respect to the subject matter hereof.  Each party has read and understands this Agreement and warrants and represents that it has had the opportunity to be represented by independent counsel of its own choice in the negotiation and execution of this Agreement.  No modification, amendment, waiver, termination, or discharge of this Agreement, or of any provision hereof, shall be effective or binding upon the parties unless confirmed by a written instrument signed by the parties to be bound thereby. No waiver or failure to exercise any party's rights hereunder shall prejudice the future rights of either party under this Agreement. The parties acknowledge that they have mutually negotiated all terms and provisions of this Agreement, and no presumption shall operate in either party's favor as a result of any party's role in drafting the terms or provisions hereof.  If any term, provision, clause, subparagraph, or paragraph, article or section of this Agreement is adjudicated as illegal, void or unenforceable, the same shall not affect or invalidate the other terms, provisions, clauses, subparagraphs, paragraphs, articles or sections of this Agreement. This Agreement shall be binding upon the parties' respective heirs, executors, administrators, successors, and permitted assigns.

**SIGNATURE PAGE TO FOLLOW**

**13. Counterparts and Execution.** This Agreement and any exhibits annexed hereto may be executed in counterparts, a set of which bearing the signatures of the respective parties, when taken together, shall constitute one and the same agreement. Electronic delivery of a duly executed signature shall be deemed effective as delivery of an original signature.

IN WITNESS WHEREOF, each of the parties hereto has duly executed this Agreement as of the date and year first written above.

WESTBOUND RECORDS, INC.

By: _____

 Armen Boladien
 Authorized Signatory

ESTATE OF GEORGE BERNARD WORRELL

By: _____

 Judie Worrell
 Administrator/Executor

Insofar as to the representations and warranties
applicable set forth in Section 6(c) above:

_____
JUDIE WORRELL

_____
BASSL WORRELL

9

13. <u>Counterparts and Execution</u>. This Agreement and any exhibits annexed hereto may be executed in counterparts, a set of which bearing the signatures of the respective parties, when taken together, shall constitute one and the same agreement. Electronic delivery of a duly executed signature shall be deemed effective as delivery of an original signature.

IN WITNESS WHEREOF, each of the parties hereto has duly executed this Agreement as of the date and year first written above.

WESTBOUND RECORDS, INC.

By: _____

    Armen Boladien
    Authorized Signatory

ESTATE OF GEORGE BERNARD WORRELL

By: _____

    Judie Worrell
    Administrator/Executor

Insofar as to the representations and warranties applicable set forth in Section 6(c) above:

_____
JUDIE WORRELL

_____
BASSL WORRELL

9

Exhibit "A"

**WORRELL ESTATE RELEASE**

GENERAL RELEASE, made by ESTATE OF GEORGE BERNARD WORRELL, JR. ("**Worrell Estate**"), pursuant to that certain Settlement Agreement and Release dated December 27, 2023 ("**Agreement**") entered between Worrell Estate and WESTBOUND RECORDS, INC. ("**Westbound**").   In the event of any inconsistencies between this Release and the Agreement, the Agreement shall govern. For good and valuable consideration, Worrell Estate, itself, and on behalf of George Bernard Worrell, Jr.'s heirs, executors, administrators, and their respective affiliated companies, predecessors-in-interest, successors and assigns (together, with Worrell Estate, "**Worrell Parties**"), jointly and severally, shall and does hereby and forever release, discharge and hold harmless Westbound and all of Westbound's representatives, agents, affiliates, subsidiaries, officers, directors, stockholders, employees, attorneys, heirs, executors, administrators, successors, licensees and assigns (together, with Westbound, "**Westbound Parties**") from all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, extents, executions, claims and demands whatsoever, in law or equity, which the Worrell Parties ever had, now has or hereafter can, shall or may have for, against the Westbound Parties, upon, or by reason of any matter, cause or thing whatsoever from the beginning of the world through the date of the Agreement.

If and to the extent applicable, the Worrell Parties hereby expressly and specifically waives the benefit of any applicable rule, regulation, legal principle, and/or statute that provides that a general release does not extend to claims unknown at the time of release, including, without limitation, Section 1542 of the California Civil Code or such other similar legal precedent or statute in any other state, to the extent it applies to the above release.  California Civil Code Section 1542 provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

Notwithstanding the foregoing, this Release shall not apply to Worrell Estate's rights or claims (i) to enforce the terms and provisions of the Agreement; and/or (ii) in connection with the ownership or control, and/or any rights, title, and interests in and to the musical compositions embodied in the Subject Recordings subject to the Agreement, and/or any other musical compositions written or created in whole or in part by George Bernard Worrell, Jr., whether such rights, title, and interests, including, copyright interests, are currently owned and/or controlled by Worrell Estate and/or any third-party (including, without limitation, Bridgeport Music, Inc.), and/or their respective representatives, agents, affiliates, subsidiaries, officers, directors, stockholders, employees, attorneys, heirs, executors, administrators, successors, licensees and assigns.

ESTATE OF GEORGE BERNARD WORRELL

By: _____
Judie Worrell
Administrator/Executor

1

Exhibit "B"

**WESTBOUND RELEASE**

RELEASE, made by WESTBOUND RECORDS, INC. ("**Westbound**"), pursuant to that certain Settlement Agreement and Release dated December 22 2023 ("**Agreement**") between Westbound and the ESTATE OF GEORGE BERNARD WORRELL, JR. ("**Worrell Estate**"). In the event of any inconsistencies between this Release and the Agreement, the Agreement shall govern. For good and valuable consideration, Westbound, and all of Westbound's representatives, agents, affiliates, subsidiaries, officers, directors, stockholders, employees, attorneys, executors, administrators, successors, licensees and assigns (together, with Westbound, "**Westbound Parties**"), jointly and severally, shall and does hereby and forever release, discharge and hold harmless the Worrell Estate, itself, and on behalf of George Bernard Worrell Jr.'s heirs, executors, administrators, and their respective affiliated companies, predecessors-in-interest, successors and assigns (together, with Worrell Estate, "**Worrell Parties**") from all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, extents, executions, claims and demands whatsoever, in law or equity, which the Westbound Parties ever had, now has or hereafter can, shall or may have for, against the Worrell Parties, upon, or by reason of any matter, cause or thing whatsoever from the beginning of the world through the date of the Agreement.

If and to the extent applicable, the Westbound Parties hereby expressly and specifically waives the benefit of any applicable rule, regulation, legal principle, and/or statute that provides that a general release does not extend to claims unknown at the time of release, including, without limitation, Section 1542 of the California Civil Code or such other similar legal precedent or statute in any other state, to the extent it applies to the above release. California Civil Code Section 1542 provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

Notwithstanding the foregoing, this Release shall not apply to Westbound's rights or claims (i) to enforce the terms and provisions of the Agreement; and/or (ii) in connection with the ownership or control, and/or any rights, title, and interests in and to the musical compositions embodied in the Subject Recordings subject to the Agreement, and/or any other musical compositions written or created in whole or in part by George Bernard Worrell, Jr., whether such rights, title, and interests, including, copyright interests, are currently owned and/or controlled by Worrell Estate and/or any third-party (including, without limitation, Bridgeport Music, Inc.), and/or their respective representatives, agents, affiliates, subsidiaries, officers, directors, stockholders, employees, attorneys, heirs, executors, administrators, successors, licensees and assigns.

WESTBOUND RECORDS, INC.

By: _____

Armen Boladien
Authorized Signatory

2



**SUBJECT RECORDINGS**

| Album Title | Track Title |
| --- | --- |
| America Eats Its Young | You Hit The Nail On The Head |
| America Eats Its Young | If You Don't Like The Effects, Don't Produce The Cause |
| America Eats Its Young | Everybody Is Going To Make It This Time |
| America Eats Its Young | A Joyful Process |
| America Eats Its Young | We Hurt Too |
| America Eats Its Young | Loose Booty |
| America Eats Its Young | Philmore |
| America Eats Its Young | Pussy |
| America Eats Its Young | America Eats Its Young |
| America Eats Its Young | Biological Speculation |
| America Eats Its Young | That Was My Girl |
| America Eats Its Young | Balance |
| America Eats Its Young | Miss Lucifer's Love |
| America Eats Its Young | Wake Up |
| Cosmic Slop | Nappy Dugout |
| Cosmic Slop | You Can't Miss What You Can't Measure |
| Cosmic Slop | March To The Witch's Castle |
| Cosmic Slop | Let's Make It Last |
| Cosmic Slop | Cosmic Slop |
| Cosmic Slop | No Compute |
| Cosmic Slop | This Broken Heart |
| Cosmic Slop | Trash-A-Go-Go |
| Cosmic Slop | Can't Stand The Strain |
| Finest | I'll Bet You |
| Finest | I Got A Thing, You Got A Thing, Everybody Got A Thing |
| Finest | Funky Dollar Bill |
| Finest | I Wanna Know If It's Good To You |
| Finest | Hit It & Quit It |
| Finest | You & Your Folks, Me & My Folks |
| Finest | A Joyful Process |
| Finest | Loose Booty |
| Finest | You Can't Miss What You Can't Measure |
| Finest | Cosmic Slop |
| Finest | Red Hot Mama |
| Finest | Standing On The Verge Of Getting It On |
| Finest | Let's Take It To The Stage |
| Finest | Get Off Your Ass & Jam |
| Finest | Undisco Kidd |
| Finest | Maggot Brain (Live) |
| ~~Free Your Mind And Your Ass Will Follow~~ | ~~Free Your Mind And Your Ass Will Follow~~ |
| ~~Free Your Mind And Your Ass Will Follow~~ | ~~Friday Night, August 14th~~ |

1

## Schedule "A"

### SUBJECT RECORDINGS

| Album Title | Track Title |
|---|---|
| Free Your Mind And Your Ass Will Follow | Funky Dollar Bill |
| Free Your Mind And Your Ass Will Follow | I Wanna Know If It's Good To You |
| Free Your Mind And Your Ass Will Follow | Some More |
| Free Your Mind And Your Ass Will Follow | Eulogy And Light |
| Funkadelic | Mommy, What's A Funkadelic? |
| Funkadelic | I Bet You |
| Funkadelic | Music For My Mother |
| Funkadelic | I Got A Thing, You Got A Thing, Everybody's Got A Thing |
| Funkadelic | Good Old Music |
| Funkadelic | Qualify & Satisfy |
| Funkadelic | What Is Soul |
| Hit It And Quit It B Side | Whole Lot Of BS |
| Let's Take It To The Stage | Atmosphere |
| Let's Take It To The Stage | Be My Beach |
| Let's Take It To The Stage | Better By The Pound |
| Let's Take It To The Stage | Get Off Your Ass And Jam |
| Let's Take It To The Stage | Good To Your Earhole |
| Let's Take It To The Stage | I Owe You Something Good |
| Let's Take It To The Stage | Lead Guitar [Uncredited] – Paul Warren |
| Let's Take It To The Stage | Lead Guitar [Uncredited] – Paul Warren |
| Let's Take It To The Stage | Let's Take It To The Stage |
| Let's Take It To The Stage | No Head, No Backstage Pass |
| Let's Take It To The Stage | Stuffs & Things |
| Let's Take It To The Stage | The Song Is Familiar |
| Maggot Brain | Maggot Brain |
| Maggot Brain | Can You Get To That |
| Maggot Brain | Hit It And Quit It |
| Maggot Brain | You And Your Folks, Me And My Folks |
| Maggot Brain | Super Stupid |
| Maggot Brain | Back In Our Minds |
| Maggot Brain | Wars Of Armageddon |
| Standing On The Verge Of Getting It On | Red Hot Mama |
| Standing On The Verge Of Getting It On | Alice In My Fantasies |
| Standing On The Verge Of Getting It On | I'll Stay |
| Standing On The Verge Of Getting It On | Sexy Ways |
| Standing On The Verge Of Getting It On | Standing On The Verge Of Getting It On |
| Standing On The Verge Of Getting It On | Jimmy's Got A Little Bit Of Bitch In Him |
| Standing On The Verge Of Getting It On | Good Thoughts, Bad Thoughts |
| Tales of Kidd Funkadelic | Butt-To-Buttresuscitation |
| Tales of Kidd Funkadelic | Let's Take It To The People |
| Tales of Kidd Funkadelic | Undisco Kidd |

**SUBJECT RECORDINGS**

| Album Title | Track Title |
|---|---|
| Tales of Kidd Funkadelic | Take Your Dead Ass Home! (Say Som'n Nasty) |
| Tales of Kidd Funkadelic | I'm Never Gonna Tell It |
| Tales of Kidd Funkadelic | Tales Of Kidd Funkadelic (Opusdelite Years) |
| Tales of Kidd Funkadelic | How Do Yeaw View You? |
| Toys | Heart Trouble AKA You Can't Miss What You Can't Measure |
| Toys | The Goose That Laid The Golden Egg |
| Toys | Vampy Funky Bernie (3rd Tune Olympic) |
| Toys | Talk About Jesus |
| Toys | Slide On In (2nd Tune Olympic) |
| Toys | Stink Finger |
| Toys | Magnififunk |
| Toys | Wars Of Armageddon (Karaoke Version) |
| Toys | 2 Dollars & 2 Dimes |
| Toys | Cosmic Slop |

 Gmail

**A B <westbound34@gmail.com>**

---

## Re: Question

**Sarah Catlett** <sarahcatlett54@gmail.com>                                    Thu, Jul 25, 2024 at 1:06 PM
To: Judie Worrell <purplewoo2@gmail.com>
Bcc: westbound34@gmail.com

Hi Judie-

Royalties will be done by 8/15.  I'll let you know if they're ready any sooner than that.

Thanks!
SArah

On Thu, Jul 25, 2024 at 1:01 PM Judie Worrell <purplewoo2@gmail.com> wrote:
> Ho Sarah;
>
> NOT rushing you but can you give me a general idea of when the monies (regular Bridgeport and whatever is coming re: George)in August are coming my way?
>
> Thank you
>
>
> *Cordially,*
>
> 
>
>
> purplewoo222@gmail.com
> 908-268-3611/cell
>
> BernieWorrell.com

--
Sarah Catlett
Direct #: 248-761-0090
she/her

**PLEASE NOTE:** Effective December 1, 2020, the mailing address for Bridgeport Music Inc., Southfield Music Inc. and Westbound Records Inc. is:
4301 Orchard Lake Road
Suite 180-239
West Bloomfield, MI 48323

 Gmail

# Bernard Worrell - Bridgeport Royalty Statement PE 6/30/24

**Bridgeport Music** <bridgeportroyalties@gmail.com>                    Fri, Aug 16, 2024 at 3:22 PM
To: Judie Worrell <purplewoo2@gmail.com>
Bcc: westbound34@gmail.com

Hi Judie-

The Bridgeport royalty statement is attached, and payment has been made via wire today.  The Westbound statement I'll be sending in another week or so once I get our new software up and running.  In the meantime, the Westbound payment has also been made via wire today.

Thank you,
Sarah

---

 **E Worrell B BP Stmt PE 063024.pdf**
3451K