# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN

ESTATE OF GEORGE BERNARD
WORRELL, JR.,

     Plaintiff,

v.

THANG, INC., and GEORGE
CLINTON,

     Defendants.

Case No. 4:22-cv-11009

District Judge F. Kay Behm

Magistrate Judge David R. Grand

_____/

# DEFENDANTS' BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES

## ISSUE PRESENTED

Plaintiff filed a Motion to Strike Defendants' Experts based on Plaintiff's interpretation of the case management order that Defendants' rebuttal expert reports were due December 13, 2024. The Court issued an amended case management order extending expert discovery. The Court denied Plaintiff's requests to strike Defendants' expert and prohibit Defendants from taking expert depositions. Under these circumstances, should the Court award Rule 37 sanctions and order Defendants to pay Plaintiff's attorneys' fees incurred in filing an unsuccessful motion where (1) Defendants' purported untimely filing of the expert rebuttal report was substantially justified and harmless; and (2) Plaintiff has not met its burden of establishing that the amount of attorneys' fees sought is reasonable and necessary?

Defendants answer: No.

Plaintiff answers:   Yes.

The Court should answer: No.

## MOST APPROPRIATE AUTHORITY

Fed. R. Civ. P. 26

Fed. R. Civ. P. 37

 *Howe v. City of Akron*, 801 F.3d 718 (6th Cir. 2015)

*Miner v. Ogemaw Cty. Rd. Comm'n*, 594 F. Supp. 3d 912 (E.D. Mich. 2022)

*Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343 (6th Cir. 2000)

## INTRODUCTION

Plaintiff's Motion for Attorneys' Fees arises from a dispute over the interpretation of the Court's first case management order. Defendants timely filed their expert witness list and informed Plaintiff and the Court that Defendants would not proffer affirmative expert reports. Instead, Defendants would serve rebuttal reports to Plaintiff's musicology and damages experts. But Plaintiff never issued a damages report, so, on January 6, 2025, Defendants served a single rebuttal report to the musicologist. Plaintiff had filed a motion to strike Defendants' expert testimony, arguing that the scheduling order required Defendants to serve affirmative and rebuttal reports on December 13, 2024. During oral argument, Plaintiff also requested that the Court prohibit Defendants from deposing Plaintiff's two remaining experts. The Court denied these requests. The Court declined to strike Defendants' rebuttal report, extended the expert discovery deadline, and allowed Defendants to take expert depositions.

The Court's order on the motion to strike stated that Plaintiff could file a motion for attorneys' fees. The order did not state that Plaintiff was entitled to such a sanction against Defendants, only that Plaintiff could make the request. Plaintiff has now done so, seeking not only the fees for its failed motion to strike, but also the fees incurred in electing to file the instant motion.

The Court should deny Plaintiff's request. There is no basis for Rule 37 sanctions against Defendants because their interpretation of the scheduling order was reasonable and harmless. Plaintiff deposed Defendants' rebuttal expert and was not prejudiced in any way by the timing of the disclosures. Moreover, Plaintiff has failed to establish that its requested fees are reasonable, given the number of hours and the rates charged for a straightforward motion based on a dispute over the interpretation of a single deadline in the case management order.

## BACKGROUND

The Court entered the first Case Management Order ("CMO") on June 20, 2024. ECF No. 78. Pursuant to the CMO, Plaintiff's "Expert Witness List/Disclosures/Report" was due November 15, 2024. *Id.* Defendant's "Expert Witness List/Disclosures/Report" was due December 13, 2024. *Id.* The CMO stated that "Rebuttal reports are due" January 6, 2025. *Id.*

On November 15, 2024, Plaintiff disclosed three experts: musicologist Dr. Ellen Exner, attorney Bob Kohn, and damages expert Gary Cohen. Plaintiff served Mr. Kohn's and Dr. Exner's reports, but stated that it could not serve Mr. Cohen's actual report until Defendants produced additional discovery regarding revenue. Specifically, one week before the close of discovery, Plaintiff requested that Defendants supplement their production with documents reflecting revenues realized from Works where Defendants or any related entity owns the sound

recording. ECF No. 112-11, PageID.2521. Defendants reviewed the previously produced documents and subsequently produced (1) a report from Rights Recapture, LLC identifying several licensing fees; and (2) royalty statements from former defendant SoundExchange, which Plaintiff could have obtained at any point during discovery. Defendants produced these documents on November 25, 2024, ten days after receiving Plaintiff's expert disclosures. ECF No. 113-3, PageID.2560. Defendants made this additional production despite having already produced thousands of pages of financial documents, including Defendants' own royalty records and those received from Defendants' third-party subpoenas. Yet, Plaintiff never served a damages report and ignored Defendants' multiple requests for an update on the status of the report.

On December 10, 2024, Defendants' counsel emailed Plaintiff's counsel: "We provided the requested documents over two weeks ago. Please advise on when Plaintiff will serve its expert damages report." ECF No. 113-4, PageID.2567. Plaintiff did not provide any update.

On December 13, 2024, Defendants filed their expert witness list in accordance with the CMO. ECF No. 108. The expert witness list explained that Defendants would not call independent expert witnesses and thus did not have any affirmative expert reports to disclose. Defendants identified rebuttal experts to Plaintiff's musicology and damages experts, even though Defendants still had not

received the damages report. *Id.* Defendants further asserted that as a result of Plaintiff's failure to produce a damages report three weeks before the deadline for rebuttals, Defendants would be forced to file a motion to amend the CMO "unless the parties can reach an agreement on scheduling." *Id.*

Plaintiff still did not provide any update on its damages report or explain its failure to timely provide expert disclosures. Three days later, Plaintiff's counsel asserted that Defendants' expert reports were "overdue and hence forfeited." ECF No. 113-5, PageID.2571.

Defendants' counsel responded that Plaintiff's expert report on damages was "now 31 days late" and thus "Plaintiff has not provided Defendants with anything to rebut on damages." *Id.* at PageID.2570. Defendants "had hoped that a sufficient explanation of Plaintiff's failure to make timely disclosures could lead to an agreement on an amended expert discovery schedule with limited court involvement." *Id.*

Defendants explained that the CMO "distinguishes between the timing of the Plaintiff's report and the Defendant's report, but it makes no such distinction for rebuttal reports." *Id.* at PageID.2569. Thus, Defendants reasonably interpreted the CMO's deadline for "Rebuttal reports" to apply to both parties, and since Defendants were only serving rebuttal reports, they were not due until January 6, 2025.

Defendants again asked for an update as to whether "(1) Plaintiff still intends to serve an expert report on damages, and the anticipated timing of that report; and (2) whether Plaintiff will agree to submit a proposed amended schedule to provide Defendants with sufficient time to prepare rebuttal reports." *Id.*

In response, Plaintiff asserted for the first time that it was "withdrawing" Mr. Cohen's damages report because "there is no need for Plaintiff to prove damages" until after "co-ownership is adjudicated." *Id.* at PageID.2569. Plaintiff then filed its motion to strike Defendants' experts. ECF No. 109.

Plaintiff claimed that by failing to file rebuttal reports by the "December 13 deadline" for Defendants' Expert Witness List/Disclosures/Report, Defendants had "shifted all of the prejudice, cost and inconvenience of their actions upon Plaintiff." ECF No. 109, PageID.1789. Specifically, Plaintiff claimed that it would "have only seven calendar days to digest" the rebuttal reports, and Plaintiff would not be able to issue its own rebuttal reports. *Id.* at PageID.1785.

On January 6, 2025, Defendants served the "Rebuttal Report of Alan Elliott," which rebuts Dr. Exner's Report. Plaintiff claimed that it had been "deprived of a fair opportunity to depose the expert and present" purported issues relating to Mr. Elliott's expert testimony to the Court. ECF No. 114, PageID.2578.

On February 6, 2025, the Court issued an Amended Case Management Order ("Amended CMO"; ECF No. 121). The Amended CMO obviated the alleged

5

prejudice to Plaintiff by extending expert discovery through March 5, 2025 and providing Plaintiff the right to serve rebuttal reports by February 19, 2025. *Id.* Plaintiff, however, elected not to serve any rebuttal reports.

On February 19, 2025, the Court held a hearing on Plaintiff's motion to strike and Defendants' motion for sanctions based on Plaintiff's failure to produce a Settlement Agreement and Release between Plaintiff and former-defendant Westbound Records. ECF No. 112. After denying Defendants' motion, the Court addressed Plaintiff's request to strike the experts. ECF No. 126, PageID.2757.

The Court first asked whether its Amended CMO resolved Plaintiff's motion. *Id.* In response, Plaintiff conceded that Defendants' rebuttal report was "within the scope" of Defendants' expert witness disclosures, so "we don't need an additional rebuttal witness in response to that." *Id.* at PageID.2759. Plaintiff then requested that the Court (1) still award Plaintiff its cost and fees incurred in the motion to strike; and (2) order that ***only Plaintiff*** could use the extension of the discovery period to depose Defendant's rebuttal expert, and that Defendants would not be permitted to depose Plaintiff's experts. *Id.*

The Court stated that Defendants' "interpretation of the prior CMO was creative at best." *Id.* at PageID.2763. The Court believed that the initial "CMO was clear that defendants' reports were due by December 13 regardless of whether they were rebuttal reports or affirmative." *Id.* The Court held that "at this point" it was

6

"granting Mr. Quick's motion." *Id.* Further, the Court held that any request for reasonable costs would have to be made in a separate motion by Plaintiff. *Id.* Finally, the Court noted that it would need to go back and review its notes from the last status conference to determine whether Defendants would be entitled to depose Plaintiff's experts. *Id.* The Court's minute entry for the hearing stated the same. See Minute Entry dated 02/19/2025.

On February 21, 2025, the Court issued a written order clarifying that it was *denying* Plaintiff's motion to strike in near entirety.  ECF No. 125, PageID.2720. The Court did not strike Mr. Elliott's report, and it permitted Defendants to "depose Plaintiff's two expert witnesses." *Id.* The Court only granted Plaintiff's motion "to the extent" that the Court would permit Plaintiff to file a motion for costs and fees "incurred in bringing the motion to strike." *Id.*

Plaintiff's counsel emailed Defendants' counsel requesting payment of $5,475.60 for fees relating to the motion to strike. ECF No. 142-3, PageID.4514. Defendants asserted that they would not pay Plaintiff "sanctions without an order of the court" as the February 21, 2025 order only granted Plaintiff the right to file a motion requesting its fees. ECF No. 142-4, PageID.4519. Thus, Defendants could not "square the ruling made on the record" – which initially granted Plaintiff's motion to strike – with the February 21st Order substantively denying Plaintiff's

request to strike Defendant's expert and prohibit Defendants from conducting expert depositions. *Id.*

Plaintiff then filed the instant motion for attorneys' fees on April 15, 2025. ECF No. 142. Plaintiff mischaracterizes the February 21st Order as an "Order awarding fees." ECF No. 142, PageID.4493. The Order simply permits Plaintiff to file a motion requesting its reasonable attorneys' fees. But Plaintiff makes no attempt to justify Rule 37 sanctions and instead asks the Court to order Defendants to pay a total of $8,039.00 in attorneys' fees: $5,265.00 for the Motion to Strike and $2,774.00 for the Motion for Attorneys' Fees. *Id.* at PageID.4499.

## STANDARD

Plaintiff's motion to strike requested an award of attorneys' fees as a sanction pursuant to Fed. R. Civ. P. 37(c)(1). ECF No. 109, PageID.1789. If a party is found to be noncompliant with its Rule 26 disclosure obligations, the Court may decline to issue Rule 37 sanctions where "there is a reasonable explanation of why Rule 26 was not complied with or the mistake was harmless." *Howe v. City of Akron*, 801 F.3d 718, 747 (6th Cir. 2015) (citation omitted). To assess whether an omitted or late disclosure is "substantially justified" or "harmless," the Court considers the following five factors: (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence;

8

and (5) the nondisclosing party's explanation for its failure to disclose the evidence. *Id.* at 748 (citation omitted).

If the Court does award attorneys' fees, it must determine whether the requested amount is reasonable. "The trial court's initial point of departure, when calculating a 'reasonable' attorney fee, should be the determination of the fee applicant's 'lodestar,' which is the proven number of hours reasonably expended on the case by an attorney, multiplied by his court-ascertained reasonable hourly rate." *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 349 (6th Cir. 2000). The Court may then "adjust the 'lodestar' to reflect relevant considerations peculiar to the subject litigation." *Id.* The Court may consider twelve factors "in determining the basic lodestar fee and/or adjustments thereto." *Id.* citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974).[1]

## ARGUMENT

**I.      Plaintiff is not entitled to Rule 37 sanctions because the alleged untimely expert disclosure was substantially justified and harmless.**

---

[1] These factors are: (1) the time and labor required by a given case; (2) the novelty and difficulty of the questions presented; (3) the skill needed to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 349 n.8 (6th Cir. 2000).

Plaintiff misrepresents the Court's February 21st Order as one "awarding fees." ECF No. 142, PageID.4493. It did not. The Order permitted Plaintiff "to file a motion" for reasonable costs and fees, but Plaintiff still needs to justify such sanctions. Under these circumstances, there is no basis to sanction Defendants for Plaintiff's unsuccessful motion to strike.

As stated above, a Court will not sanction a purportedly noncompliant party if the late disclosure was substantially justified or harmless. *Howe*, 801 F.3d at 747. Defendants' disclosure of its rebuttal report on January 6, 2025, after timely filing its Expert Witness List, was both justified and harmless.

"Substantially justified means justified to a degree that could satisfy a reasonable person." *Eagle v. Hurley Med. Ctr.*, 292 F.R.D. 466, 481 (E.D. Mich. 2013) (citation omitted). As to whether a nondisclosure is harmless, "courts look at a number of factors, but the principal factor is whether the opponent will be prejudiced or surprised." *IINN, Inc. v. State Farm Mut. Auto. Ins. Co.*, No. 14-cv-12503, 2015 U.S. Dist. LEXIS 74275, at *4-5 (E.D. Mich. June 9, 2015). *See also*, *Sommer v. Davis*, 317 F.3d 686, 692 (6th Cir. 2003) ("The advisory committee's note to Rule 37(c) strongly suggests that 'harmless' involves an honest mistake on the part of a party coupled with sufficient knowledge on the part of the other party.").

Here, with respect to the Court's statement during oral argument that Defendants' interpretation of the CMO was "creative", Defendants believe that they

10

reasonably interpreted the initial CMO's deadline for "Rebuttal reports" as applying to both parties because, unlike the deadlines for affirmative reports, the rebuttal reports deadline did not distinguish between the parties. Indeed, the Court's Amended CMO expressly clarified that the rebuttal report deadline only applied to Plaintiff's expert rebuttal.  ECF No. 121. This clarification was necessary because Rule 26 ordinarily would not permit Plaintiff to rebut Defendants' rebuttal witness. *Shupe v. Rocket Cos.*, No. 1:21-cv-11528, 2024 U.S. Dist. LEXIS 177472, at *102 n.21 (E.D. Mich. Sep. 30, 2024) (noting that the Federal Rules do not provide for sur-rebuttal reports and thus they are only permitted by court order).

Other courts have held that reasonable disputes over the interpretation of expert disclosure deadlines preclude Rule 37 sanctions, especially where as here, the opinions and scope of rebuttal expert's testimony was likely known to the opposing party.

For instance, in *Miner v. Ogemaw Cty. Rd. Comm'n*, 594 F. Supp. 3d 912, 924 (E.D. Mich. 2022), the plaintiff identified its expert but did not initially provide an expert report. The defendants moved to strike the expert witness. The court declined to issue Rule 37 sanctions because the failure to disclose the expert as required "was substantially justified and harmless." *Id.* at 925. The court noted that the plaintiff, like Defendants in this case, had timely disclosed the identity of its expert witness, and thus the defendants knew of his intended testimony. *Id.* Moreover, when the

11

expert could not complete his report before the disclosure deadline, plaintiff chose to call him as a rebuttal expert instead, and defendants could have still deposed the witness as a "as a rebuttal expert" before the close of expert discovery. *Id.* Accordingly, the failure to timely proffer the expert report was harmless. *Id.* citing *Lewis v. Allstate Ins.*, No. CV H-18-3931, 2021 U.S. Dist. LEXIS 22815, 2021 WL 415439, at *5 (S.D. Tex. Feb. 5, 2021) (finding defendants' failure to disclose expert testimony justified and harmless when because "their views and opinions [were] likely known to the plaintiffs").

Other courts in this Circuit have rejected requests for Rule 37 sanctions under similar circumstances. *See*, *Trent v. Anderson*, No. 1:16-CV-00002-HBB, 2017 U.S. Dist. LEXIS 90283, at *14 (W.D. Ky. June 12, 2017) (declining to issue Rule 37 sanctions where scheduling order did not expressly address deadlines for each type of expert disclosure and thus "the manner in which the scheduling order is drafted does create a potential for an honest mistake in interpretation."); *Am. Erectors, Inc. v. Ohio Farmers Ins. Co.*, No. 09-cv-13424, 2010 U.S. Dist. LEXIS 106746, at *1-4 (E.D. Mich. Oct. 4, 2010) (where the CMO did not have a "distinction between names and substantive disclosures" of expert witnesses, the party's staged disclosure of witness list and reports was substantially justified and harmless); *Mallco Co. v. Universal Granite & Marble, Inc.*, No. 16-10010, 2017 U.S. Dist. LEXIS 25952, at *14 (E.D. Mich. Feb. 24, 2017) (rejecting request for Rule 37 sanctions where party

12

disclosed expert in its witness list but failed to timely produce expert report; the court held that while the "late disclosure was not substantially justified, it was harmless.").

Simply put, Defendants' interpretation of the CMO was, at a minimum, harmless because (1) Plaintiff was able to depose the rebuttal expert; (2) Plaintiff was aware of the scope of the rebuttal testimony because Defendants' Witness List timely disclosed that Mr. Elliott would be rebutting Dr. Exner's musicology opinions on Bernie Worrell's contributions to the sound recordings; and (3) Plaintiff did not even proffer a sur-rebuttal to Mr. Elliott's report despite the Court's allowance for one in the Amended CMO. Thus, there was no surprise or prejudice that could warrant Rule 37 sanctions.

## II. Plaintiff has not met its burden to establish the reasonableness of the fees sought.

Even if the Court were to find that Defendants should be sanctioned for Plaintiff filing an unsuccessful motion to strike, Plaintiff's motion for fees fails to meet the burden of establishing reasonableness.

### A. The requested hourly rate is not reasonable for the straightforward issue presented by the motion to strike.

In assessing reasonableness of fees, the "prevailing market rate should not exceed the amount necessary to cause competent legal counsel to perform the work required." *Robert Bosch LLC v. A.B.S. Power Brake, Inc.*, No. 09-14468, 2012 U.S.

Dist. LEXIS 108128, at *7-8 (E.D. Mich. Aug. 2, 2012) citing *Coulter v. Tennessee*, 805 F.2d 146, 148-49 (6th Cir. 1986).

Here, Plaintiff states that Mr. Quick "billed the entirety of hours" for the motion to strike. ECF No. 142, PageID.4497. Plaintiff acknowledges that his rate of $725 is "above the rates represented in the Billing Rate Summary Report," but argues that the rate is reasonable because "Mr. Quick is a highly regarded trial attorney in Michigan." *Id.* However, Plaintiff does not explain why an equity partner at a large law firm would need to bill 7.5 hours at $725 per hour to prepare a simple motion to strike for an alleged failure to timely serve an expert report. While overall this case may be complicated due to Plaintiff's unprecedented request for blanket co-ownership of songs created over 50 years ago, the motion to strike itself did not implicate any "complex issues involving unpaid royalties, copyright interests," etc. ECF No. 142, PageID.4500. The motion was based on a straightforward dispute over the meaning of the term "Rebuttal reports" in the CMO. Any competent legal counsel could have prepared that motion.

Plaintiff states that this similarly straightforward motion for attorneys' fees was prepared by a second-year associate billing at $365 per hour. ECF No. 142, PageID.4497. But the Court's February 21st Order does not contemplate the possibility of awarding fees for a motion to be filed at Plaintiff's discretion. Further, there is no reason why this associate could not have also prepared the motion to

14

strike, given that neither motion presented any novelty or difficult questions. *See Fair Hous. Ctr. v. Hunt*, No. 1:09-cv-593, 2013 U.S. Dist. LEXIS 150692, at \*50-51 (W.D. Mich. Oct. 21, 2013) ("A rational division of labor would have assigned research and writing to an associate, with significant oversight by a single partner … and argument of the motion to the responsible partner."); *Harvey v. Lillibridge*, No. 22-1694, 2023 U.S. App. LEXIS 21836, at \*4 (6th Cir. Aug. 18, 2023) (rejecting a request for "the hours claimed" by "two senior partners" supervising the work of an associate because the senior partners were not "necessary" for "an appeal involving a straightforward jurisdictional issue"). Defendants should not be forced to pay above-market rates for a senior partner's preparation of basic motions that should have been delegated to an associate.

### B. The claimed number of hours expended is not reasonable.

Plaintiff claims the following hours incurred in connection with the motion to strike:

- 1.5 hours for "Call w/ team re status and strategy … emails from counsel … research … regarding motion to strike experts."
- 2.2 hours to draft, revise, finalize, and file motion to strike; and emails with counsel.
- 0.2 hours to send emails.
- 1.5 hours to revise draft reply to motion to strike experts and incorporate edits to briefs from "Drew" and to forward Defendants' expert reports.
- 0.6 hours to review report and revise and file reply brief.
- 1.5 hours to prepare for the hearing on the motion to strike.

ECF No. 142-8.

First, as set forth above, it is not necessary for a senior partner to bill $725 for straightforward matters like the "research" on a motion to strike. *See e.g., Hunt*, 2013 U.S. Dist. LEXIS 150692, at *47 ("Performing basic research on well-settled *Daubert* principles should not require the expertise of a $300 per hour partner.").

Second, the motion to strike was not necessary because Plaintiff did not obtain any relief, and the Court ultimately granted Defendants' request for an extension of expert discovery by issuing the Amended CMO. At a minimum, Plaintiff should have withdrawn its motion after the Amended CMO because the Court had already made clear that it would permit Defendants to serve its rebuttal report and allow Plaintiff time to respond to that expert report and conduct depositions.

Third, Plaintiff does not provide any documentation to support the alleged fees incurred in connection with this motion for attorneys' fees. Plaintiff is not entitled to fees for filing a motion that the Court ruled Plaintiff could file at its own discretion. ECF No. 125, PageID.2720. Plaintiff cannot obtain any award of attorneys' fees or costs without the Court first (1) making a finding as to whether any sanctions are warranted under Rule 37; and (2) conducting a lodestar analysis as to whether the amount of fees is reasonable. But even if Plaintiff could somehow obtain fees for the instant motion, Plaintiff has failed to meet its burden of documentation.

### C. The remaining factors do not support the reasonableness of the fees sought.

Courts have "continued to focus on the degree of success obtained as 'the most critical factor' governing the reasonableness of an attorney's fee award." *Hunt*, 2013 U.S. Dist. LEXIS 150692, at *53 citing *Farrar v. Hobby*, 506 U.S. 103, 114 (1992).

Plaintiff's motion had no success. Plaintiff sought to strike Defendant's rebuttal report and preclude Defendants from deposing Plaintiff's experts. The Court denied both requests.

Recognizing that Plaintiff cannot meet this "most critical factor" for obtaining attorneys' fees, Plaintiff disingenuously claims that the motion to strike succeeded by obtaining an amended scheduling order to "allow Plaintiff adequate time to digest Defendants' expert report, prepare for and depose Defendants' expert and prepare for facilitation." ECF No. 142, PageID.4502. But it was ***Defendants*** who requested the extension of the expert discovery period because Plaintiff had refused to produce its damages report or provide an update on Plaintiff's untimely expert disclosures. And Plaintiff ***opposed*** this request. *See* ECF No. 113-5, PageID.2569 (Responding "We do not agree" to Defendants' request to submit a proposed amended scheduled for expert discovery).

Plaintiff's motion to strike was an unnecessary litigation tactic that achieved nothing for Plaintiff. The Court should not award Plaintiff any attorneys' fees.

17

**III.    The Court should not award Plaintiff any sanctions against Defendants.**

Plaintiff's request for sanctions in the form of attorneys' fees is particularly galling given what this litigation has revealed about the decades-long exploitative campaign against George Clinton. As previously argued, Armen Boladian, and his related entities, have continued that campaign by purchasing an interest in the outcome of this case and using his long-time litigation counsel to direct the result.

The dispute over the expert discovery highlights this conduct. Boladian has long-relied on the Nashville-based law firm of King & Ballow to prosecute copyright claims against Clinton and others. *See*, ECF No. 88, PageID.1001. Despite not appearing in this case, King & Ballow has attended every party deposition, defended Mr. Boladian's court-ordered deposition after the Court granted Defendants' motion to compel, and made an undisclosed appearance at the parties' mediation.

Further, Boladian's attorneys were responsible for obtaining Plaintiff's experts. *See,* ECF No. 128-3, PageID.2987 (Mr. Kohn testified that he was first contacted by King & Ballow on behalf of Boladian's associate to serve as an expert in this case); ECF No. 129-3, PageID.3189 (Dr. Exner testified that she was first contacted by an attorney with King & Ballow about providing expert testimony).

18

Mr. Kohn and Plaintiff's withdrawn damages expert have each been retained by King & Ballow in a number of other litigations, many involving Boladian.[2]

Neither expert could disclose who was ultimately paying for their services in this case, but it is almost certainly not the Estate of Bernie Worrell. In its continued attempt to vilify and smear Geore Clinton as an exploiter of his musicians, Plaintiff has repeatedly characterized the Estate and Bernie Worrell's widow as "destitute." *See, e.g.*, ECF No. 90, PageID.1199. Yet somehow, Plaintiff has financed this years-long litigation involving high-priced attorneys and experts, forcing an 83-year-old music legend to continue touring to fund the defense of his legacy and the small portion of his catalog that he owns.

Presumably, Plaintiff and his related entities have been willing to direct this litigation because the Settlement Agreement between Plaintiff and Westbound transferred the interest in the sound recordings, and any subsequent royalties, to Boladian's company. ECF No. 112-6, PageID.2061. The fact that the Agreement identifies the "Worrell Estate's attorneys" as "King & Ballow" (*id.* at PageID.2063),

---

[2] *See, e.g.*, *Eight Mile Style, LLC v. Spotify United States Inc.*, No. 3:19-cv-0736, 2020 U.S. Dist. LEXIS 58134 (M.D. Tenn. Apr. 2, 2020); *Bluewater Music Services Corporation V. Spotify Usa Inc.*, 3:17cv1051 (MD Tenn) (2019 U.S. DIST. CT. MOTIONS LEXIS 449038); *Artem Stoliarov V. Marshmello Creative, Llc Et Al*, 2:19cv3934 (CD Cal.); *Yellow Rose Productions, Inc. V. Pandora Media, Llc*, 2:22cv809 (CD Cal.) (2024 U.S. DIST. CT. MOTIONS LEXIS 62245); *Armen Boladian v. George Clinton*, Case No. BC576665; and *Pharrell Williams v. Bridgeport Music, Inc.*, 13-cv-06004, (C.D. Cal. 2014).

while at the same time the firm has been defending Boladian against third-party discovery in this case, further muddles the overlapping interests between Plaintiff and Boladian's long-time copyright counsel.

Moreover, the unredacted portions of Plaintiff's invoices submitted in connection with this motion for attorneys' fees indicate that Plaintiff is seeking to force Defendants to pay for Plaintiff counsel's communications with and revisions to briefs from King & Ballow attorneys. *See,* ECF No. 142-8, PageID.4569. The Court should not allow Plaintiff to further benefit from this arrangement at Defendants' expense.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiff's Motion for Attorneys' Fees in its entirety.

Respectfully submitted:

SCHENK & BRUETSCH PLC

By: /s/ James P. Allen Sr.
James P. Allen, Sr. (P52885)
Peter E. Doyle (P81815)
211 W. Fort Street, Suite 1410
Detroit, MI 48226
(313) 774-1000
james.allen@sbdetroit.com
peter.doyle@sbdetroit.com
*Attorneys for Defendants*

April 29, 2025

## CERTIFICATE OF SERVICE

I hereby certify that on April 29, 2025, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send notification of such filing to the attorneys of record.

/s/ Peter E. Doyle