**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN**

ESTATE OF GEORGE BERNARD
WORRELL, JR.,

      Plaintiff,

vs.

THANG, INC. and
GEORGE CLINTON,

      Defendants.

Case No. 4:22-cv-11009-FKB-DRG
District Judge F. Kay Behm
Magistrate Judge David R. Grand

_____

**PLAINTIFF'S REPLY BRIEF IN FURTHER SUPPORT
OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT (ECF 133)**

_____

### TABLE OF CONTENTS

Most Controlling Authorities ........................................................................... ii

Table of Authorities ...................................................................................... iii

   I.   Introduction ................................................................................... 1

   II.   Argument ...................................................................................... 3

      A.  Defendants' Affirmative Defenses are Unavailing. .................................. 3

      B.  Defendants' Assertions Regarding the Requirements for Co-Authorship Are Wrong. ........................................................................................ 8

      C.  Mr. Worrell Has Demonstrated a Claim for Ownership and Defendants have not Created a Triable Issue of Fact. ............................................... 9

      D.  The Court Has *Already* Determined that a Declaratory Judgment would be Appropriate Here. ...................................................................................... 14

Conclusion ................................................................................................. 15

## MOST CONTROLLING AUTHORITIES

- FED. R. CIV. P. 56

- *Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)*

- *Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)*

- *Anderson v. Liberty Lobby, Inc., 477 U.S. 427, 249 (1986)*

- *Everly v. Everly*, 958 F.3d 442, 454 (6th Cir. 2020)

- *Roger Miller Music, Inc. v. Sony/ATV Publ'g*, LLC, 477 F.3d 383, 390 (6th Cir. 2007)

- 1 Nimmer on Copyright § 2.10 (2025) (citing H.R. Rep. No. 92-487, 92d Cong., 1st Sess. 5 (1971); S. Rep. No. 92-72, 92d Cong., 1st Sess. 5 (1971))

- *Gaiman v. McFarlane*, 360 F.3d 644, 658-659 (7th Cir. 2004)

## TABLE OF AUTHORITIES

**The Supreme Court of the United States**

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340 (1991)..............................10

*Stewart v. Abend*, 495 U.S. 207 (1990) ...................................................................14

**Cases**

*Bridgeport Music, Inc. v. Dimension Films*, 410 F.3d 792 (6th Cir. 2005) ..............6

*Brownstein v. Lindsay*, 742 F.3d 55 (3d Cir. 2014)..............................................6, 10

*Fifth Third Bank, Nat'l Ass'n v. Tranquility Chevrolet, Inc.*, No. 1:23-cv-528,
    2024 U.S. Dist. LEXIS 175264 (S.D. Ohio Sep. 26, 2024) ..................................9

*GGNSC Louisville St. Matthews LLC v. Badgett*,
    728 F. App'x 436 (6th Cir. 2018) ............................................................................2

*Gordon v. Vincent Youmans, Inc.*, 358 F.2d 261 (2d Cir. 1965) .............................12

*Greiner v. Cadillac Accounts Receivable Mgmt.*, No. 2:19-cv-12479,
    2020 U.S. Dist. LEXIS 234221 (E.D. Mich. Nov. 9, 2020) ...............................11

*Medison Am. Inc. v. Preferred Med. Sys.*, LLC,
    357 F. App'x 656 (6th Cir. 2009) ........................................................................11

*Tang v. Putruss*, 521 F. Supp. 2d 600 (E.D. Mich. 2007) .......................................9

*Xoran Holdings LLC v. Luick*, No. 16-13703,
    2019 U.S. Dist. LEXIS 24635 (E.D. Mich. Feb. 15, 2019) ..................................2

**Statutes**

17 U.S.C. § 107 .........................................................................................................5

17 U.S.C. § 109 .........................................................................................................5

**Rules**

FED. R. CIV. P. 12(h) ..................................................................................................9

FED. R. CIV. P. 56(g) ............................................................................15

FED. R. CIV. P. 9 ...................................................................................7

**Treatises and Other Authorities**

1 Nimmer on Copyright § 2.10 (2025) ..............................................8, 10

H.R. Rep. No. 92-487, 92d Cong., 1st Sess. 5 (1971) ......................8, 10

S. Rep. No. 92-72, 92d Cong., 1st Sess. 5 (1971) ............................8, 10

## I.  INTRODUCTION

Defendants are now in the impossible position of trying to defend Clinton's statements in the New York Action – statements which were either perjurious *or* manifest that Mr. Worrell's ownership claims are both ripe and timely.

This leads to absurd doublethink throughout their brief. For example, Defendants claim that the 1976 Agreement was "never executed". Opp. at pp. 2, 39. Yet, on numerous occasions, they refer to a 1982 "Novation" of this Agreement. The 1982 Agreement is not styled nor referred to by the Parties as a "Novation" but rather a General Release. Pl. Ex. 9. It is not a "Novation" but rather, by its express terms merely a release of legal claims arising from breaches of the 1976 Agreement and the sums owed and due thereunder. *Id.* The reason that Defendants would like this to be a Novation is clear.

As discussed in Plaintiff's Brief (and ignored in the Opposition), under *both* the 1909 and 1976 Acts, a written instrument is required to transfer copyrights and under the latter, a writing is required to confirm work-made-for-hire status. *See* Br. at pp. 15-17 (discussing these requirements with citations to the Acts, caselaw, and other authorities). However, a Novation would require a pre-existing Agreement: it is the replacement of an old obligation by substituting a new one and must be supported by its own offer, acceptance (meeting of the minds), and consideration. *GGNSC Louisville St. Matthews LLC v. Badgett*, 728 F. App'x 436, 442 (6th Cir.

1

2018) (applying Kentucky Law); *Xoran Holdings LLC v. Luick*, No. 16-13703, 2019 U.S. Dist. LEXIS 24635, at *13 (E.D. Mich. Feb. 15, 2019) (same under Michigan Law). Put simply, nothing in this 1982 General Release was meant to serve as a Novation (complete replacement) of the 1976 Agreement, but rather a release of claims arising to date thereunder from non-performance by Clinton. And, as discussed in Plaintiff's Brief, and in its Opposition to Defendants' Cross-Motion, all that this Agreement stands to show is that the Parties operated under the 1976 Agreement *until* Clinton's repudiation of the same in the New York Action.

Furthermore, despite already having been corrected by the Court on the appropriate pleading standards under Rule 8 (ECF 95), Defendants nonetheless proffer an absurd argument that because Plaintiff notes that this Court has Subject Matter Jurisdiction pursuant to the 1976 Act, that Plaintiff's claims are somehow limited to those works created after January 1, 1978 (the effective date of that legislation). Opp. at pp. 17-18. That the Defendants would proffer such a threadbare (and frivolous) argument that a solitary paragraph in the Jurisdiction and Venue section of the Complaint would somehow limit Plaintiff's claims despite the well-settled broad pleading standard under Fed. R. Civ. P. 8 shows their desperation.

Defendants' Opposition does not move the needle. While it puts up facial challenges to the sufficiency of the Motion, it does nothing to address the heart of the issues: that the repudiation of the 1976 Agreement created Mr. Worrell's right to

claim ownership given that it is the only writing which could have transferred ownership. Defendants' arguments to the contrary are merely sidecar issues (or, rather, non-issues) which would not preclude partial summary judgment.

## II.   ARGUMENT

### A. DEFENDANTS' AFFIRMATIVE DEFENSES ARE UNAVAILING.

Defendants assert that Plaintiff has waived discussing their affirmative defenses due to not discussing them in the Opening Brief. Opp. pp. 12-17. Not so. All of the predicate facts discussed in the Opening Brief show how these are dispelled, as such a line-by-line rejection of them (due to page constraints) is not a waiver. *See Equity Res., Inc. v. Thoman*, 682 F. Supp. 3d 707, 719-20 (S.D. Ohio 2023) (finding no waiver for failure to discuss argument in opening brief given non-movant had opportunity to respond). Here, Defendants cross-moved for summary judgment advancing certain of their affirmative defenses, which Plaintiff responded to in Opposition. Furthermore, again, all of the factual predicate negating all of Defendants' affirmative defenses were raised and thoroughly discussed in the Plaintiff's Opening Brief. Defendants have had fair opportunity to advance their affirmative defenses both in Opposition and in their own motion. Regardless, none of the defenses are availing and indeed, certain of them ***have already been declined by the Court***. Furthermore, Defendants *concede* that this argument only pertains to complete summary judgment motions (Opp. at p. 13), whereas, the present motion

is only a motion for partial summary judgment.

Defendants assert that they advance twenty-six "properly pled" affirmative defenses. Opp. at p. 15. Not true. First, Defense 20 and 10 are the exact same: *de minimis* use. Second, Defense 19, express or implied consent, is exactly the same as Defense 7, express or implied license, and functionally the same as Defense 15, acquiescence. Defense 21 is an implication by reference of other parties' validly stated affirmative defenses, *i.e.* none. Defense 25 invokes the right to conduct discovery and is therefore mooted. Defendants' ability to count notwithstanding, the factual predicate (or lack thereof) of the remaining defenses was either discussed in Plaintiff's Brief or already disposed of by the Court. Each is discussed seriatim.

Defenses 1, 2, and 3 for the statute of limitations, estoppel, and laches, respectively, were all covered. As the Court has already ruled, Plaintiff's claims are timely and predicated on Clinton's repudiation of the 1976 Agreement in the New York Action. ECF 46 at p. 8. As discussed at length in Plaintiff's Opposition to Defendants' Cross-Motion, Mr. Worrell and Plaintiff have diligently protected their rights under the 1976 Agreement filing multiple lawsuits. It was not until Clinton's 2019 repudiation of that Agreement that Plaintiff's claims here became ripe. Defendants cannot point to anything which would have matured the instant claims sooner other than Clinton's self-serving anecdote regarding a phone call with Mr. Worrell around 2016, which again was prior to the repudiation in the New York

Action and could not serve to quicken the time to bring the present suit as the Parties were still operating under the 1976 Agreement at the time of that phone call. *See* Plaintiff's Opp. at pp. 13-14.

Defendants' Fourth Defense fairs no better – the releases in the record (detailed in both motions) do not release a claim for ownership, rather only expressly release legal claims that had accrued at the time of release – and could not serve to release the instant claims. *See* P's Opp. at p. 24. The same is true for Defense 23 (accord and satisfaction and/or release) which merely parrots Defense 4. Defenses 7 and 19 for (license and consent) were also dealt with at length and would only serve as a defense to infringement. Regardless, the Plaintiff's theory is that while the 1976 Agreement was in place (and adhered to), Mr. Worrell consented to Clinton's ownership of the Sound Recordings as part of the bargained-for consideration.

Defenses 5, 9, 10, and 20 are frivolous. Fair use provides that it is not infringement to *use* copyright material under enumerated factors. 17 U.S.C. § 107. While this might insulate Clinton from an infringement action, that is not what is before the Court. First sale doctrine, codified at 17 U.S.C. § 109 merely provides that a purchaser of a particular copy of a copyrighted work may there after sell or otherwise dispose of the possession of *that particular copy*. This obviously has no bearing on the present dispute. The same is further true for Defenses 10 and 20 both for *de minimis* use which could provide a defense to copyright infringement if the

*use* is *de minimis*. However, again, this is a claim for ownership not infringement, and the record is clear that the Sound Recordings made actual use of Mr. Worrell's performance. *Bridgeport Music, Inc. v. Dimension Films*, 410 F.3d 792, 801 (6th Cir. 2005) ("Get a license or do not sample.").

Defense 6 discusses independent creation by Clinton. This was dealt with heavily in the Opening Brief which discusses Worrell's "essential" contribution to the Sound Recordings. P's Br. at p. 4 (quoting Clinton's own expert). Defense 8 must fail and was handedly covered. It claims that Mr. Worrell abandoned his copyrights. Not so. Again, while operating under the 1976 Agreement, Mr. Worrell was fine to accede his claim for ownership in exchange for royalties. Defendants concede that conduct not hostile to an author's rights cannot be repudiation. Defs. Br. at p. 15 (quoting *Brownstein v. Lindsay*, 742 F.3d 55, 72 (3d Cir. 2014)).

Defense 11 of unclean hands cannot hold. As discussed in the Opening Brief, Mr. Worrell conducted himself uprightly and believed in earnest to have been operating under the 1976 Agreement. If anyone has unclean hands here, it is Clinton who clearly led the Worrells on for decades only to yank the rug out from under them after Mr. Worrell's passing to the detriment of his grieving widow. Defense 12 for fraud fails for the same reasons *and* as an independent reason: failure to comply with FED. R. CIV. P. 9 requiring particular pleading of fraud. Defense 13 for mutual mistake/mistake was likewise covered: the Parties agreed (*i.e.* there was no mistake)

that the 1976 Agreement governed until Mr. Clinton took a litigation tactic to decry its existence in the New York Action. The same can be said of Defense 14 – misrepresentations by Plaintiff. To the extent that Defendants intend to rest on this threadbare defense, the predicate facts denouncing such misrepresentation by the Estate or Mr. Worrell were well covered. Same with Defense 15: the Estate nor Mr. Worrell ever acquiesced, but filed numerous lawsuits to enforce the 1976 Agreement. And also, the same for Defense 24 (Plaintiff's own alleged negligence) – the facts underlying this defense are all dispelled in the Opening Brief.

Defense 16, Doctrine of Impossibility, is a contracts doctrine excusing performance where impossible. It has absolutely no bearing here. Defense 17, for standing, has been discussed. Mr. Worrell's estate clearly has standing to assert his ownership claims. As discussed below, the Westbound Release does not change this. Defense 18, preemption, likewise has no bearing. **And** it was discussed in the Opening Brief – wherein the federal copyright law landscape was discussed and that as of 2018 and the Orrin G. Hatch-Bob Goodlate Music Modernization Act, all state law claims regarding the equivalent rights of copyright in sound recordings has merged with and has been preempted by federal law.

The Court has already ruled that *res judicata* (Defense 22) does not bar the claims here. ECF 46 at pp. 10-15. Likewise, the Court has twice found that the Complaint states a claim (Defense 25). ECF Nos. 46, 95.

## B. Defendants' Assertions Regarding the Requirements for Co-Authorship Are Wrong.

Defendants make much of *Childress* and the supposed requirements for co-authorship: mutual intent and independently copyrightable elements. The latter has been briefed extensively in the responses to the *Daubert* challenges and in Plaintiff's Opposition. Briefly, *Gaiman*'s ruling is compelling here. *See* P's Opp. at pp. 20-21. This is especially true where Congress provided that co-authorship of a sound recording can be met by: "capturing and electronically processing the sounds, and compiling and editing them to make the final sound recording". 1 Nimmer on Copyright § 2.10 (2025) (citing H.R. Rep. No. 92-487, 92d Cong., 1st Sess. 5 (1971); S. Rep. No. 92-72, 92d Cong., 1st Sess. 5 (1971)).

Furthermore, this Court's previous ruling in *Tang* shows that it is not merely these two elements the Court must weigh here, but rather: (1) how the parties regarded themselves in relation to the work; (2) the contributor's decision making authority; (3) agreements with third parties; and (4) other additional pertinent evidence." *Tang v. Putruss*, 521 F. Supp. 2d 600, 606 (E.D. Mich. 2007). That Mr. Worrell was presented with the 1976 Agreement which would divest him of ownership due to his vital contributions are pertinent evidence here that the *Tang* Court instructs is pivotal.

Defendants' strawman argument about the other contributors is without merit. These other artists might have some claim against Clinton – especially if they are in

8

a similar position where they were misled into thinking there was a valid contract for decades only to have it repudiated unilaterally by Clinton. Their claims, however, are not before the Court, *and* Defendants have waived the right to assert a Rule 19 challenge now. In the section above, Plaintiff has discussed *each* of Defendants' affirmative defenses. None of them involve failure to join necessary parties under Rule 19. Under Rule 12(h), Defendants thus waived the right to claim that a necessary party has not been joined. FED. R. CIV. P. 12(h).; *Fifth Third Bank, Nat'l Ass'n v. Tranquility Chevrolet, Inc.*, No. 1:23-cv-528, 2024 U.S. Dist. LEXIS 175264, at *17 (S.D. Ohio Sep. 26, 2024).

### C. PLAINTIFF HAS DEMONSTRATED ITS RIGHT TO OWNERSHIP AND DEFENDANTS HAVE NOT CREATED A TRIABLE ISSUE OF FACT.

Clinton himself *and* his own expert agree. Mr. Worrell was vital to creating Parliament Funkadelic's signature sound. He served as musical director and was heavily involved in both the playing and production of the Sound Recordings. Ex. 4, Clinton Depo. at 11:20-12:7, 94:11-13, 98:20-23, 109:5-24, 110:8-17. His contributions were "intrinsic". *Id.* at 108:20-25. That is, the record clearly establishes that Mr. Worrell had a vital, integral part in "capturing and electronically processing the sounds, and compiling and editing them to make the final sound recording." 1 Nimmer on Copyright § 2.10 (2025).

To the extent that Defendants challenge the independent copyrightability of these contributions, it should be noted (again) that this judge-made law, with no

statutory basis has been called into question in *Gaiman* and since cited approvingly.[1]
Second, the quantum of sufficient originality for independent copyrightability is
incredibly low, characterized by the Supreme Court as merely more than *de minimis*.
*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 363 (1991); *see also*
*Premier Dealer Servs., Inc. v. Allegiance Adm'rs*, LLC, 93 F.4th 985, 989 (6th Cir.
2024) ("Authors fulfill originality's requirement of minimal creativity by making
'non-obvious choices' from 'among more than a few options.'"). Surely, having a
"vital," "intrinsic" role in the creation of the Sound Recordings clears this low hurdle.

Defendants' record evidence purportedly to the contrary is of no moment.
First, their reliance on some of Clinton's testimony does not negate his other
testimony regarding Mr. Worrell's "pivotal" role in the creation of the Sound
Recordings. Second, Defendants seem to conflate Plaintiff's election *not* to move to
strike Elliott's opinions as agreement with them. Not so. While Plaintiff elected not
to clog the docket with a challenge to Mr. Elliott,[2] his opinions are still cross-
examinable, and largely support Plaintiff's claim for ownership. Furthermore,
Defendants speak from both sides of their mouths – while moving to strike Mr. Kohn

---

[1] *Gaiman v. McFarlane*, 360 F.3d 644, 658-659 (7th Cir. 2004) was cited
approvingly on a different matter by the Sixth Circuit in *Everly*, 958 F.3d at 450.
The Third Circuit cited *Gaiman* approvingly on this exact issue in *Brownstein*, 742
F.3d at 64-65 (relied upon in Defendants' Brief at p. 15).
[2] This all but confirms Plaintiff's theory that the challenges to Mr. Kohn and Dr.
Exner were at least in part improper arguments on the merits.

for purportedly improper legal conclusions, they have the gall to *quote* an impermissible legal conclusion from their own expert that the works were "made for hire". Opp. at p. 32 (quoting Elliot Rep. ¶ 32). This improper legal conclusion does not create a triable issue of fact. *Greiner v. Cadillac Accounts Receivable Mgmt.*, No. 2:19-cv-12479, 2020 U.S. Dist. LEXIS 234221, at *9 (E.D. Mich. Nov. 9, 2020) (citing *Medison Am. Inc. v. Preferred Med. Sys.*, LLC, 357 F. App'x 656, 662 (6th Cir. 2009)) ("Legal conclusions … do not suffice to create a genuine issue of material fact for trial.").

Likewise, as discussed in Plaintiff's Opposition, the "releases" in the record and other documents are insufficient to create a triable issue here. The two 1982 releases (not "novations" as discussed above), are expressly limited to past claims **_under the 1976 Agreement_** for royalties and thus do not and cannot have the global impact that Defendants claim that they have as Mr. Worrell did not know of his ownership claims at the time. *Watson Carpet & Floor Covering, Inc. v. Mohawk Indus.*, 648 F.3d 452, 454 (6th Cir. 2011) (applying Tennessee law, "a release 'cannot operate prospectively so as to defeat an action which arises at a time []after' the parties sign the release.").[3] This is confirmed by the quotations from Mr. Worrell that Defendants so heavily rely – they were all about *royalties* Clinton owed under

---

[3] Noticeably absent from either document is something akin to a waiver of unknown claims *a la* a reference to Cal. Civ. Cod § 1542.

these agreements. Defendants' cherry-picked quotation from *Gordon v. Vincent Youmans, Inc.*, 358 F.2d 261, 264 (2d Cir. 1965) is misleading, at best. There, *contemporaneous* to the release in question was an assignment detailing the rights at issue. *Id.* Put another way, the writings in the *Gordon* record when read in conjunction are what "cast[] doubt" precluding summary judgment there.

Here, Clinton is taking to his age-old litigation strategy: retroactive application of facts in a manner most favorable to his present litigation – absurdity be damned.[4] Clearly, when taken in context, all of these releases *must* have been, and were, regarding royalties owed under the 1976 Agreement given that all of the publicly-filed lawsuits, including those verified by Mr. Worrell all sought royalties under the 1976 Agreement. Defendants all-but admit this fact in their statement of facts which recount the numerous litigations between the parties seeking royalties under this Agreement. Defendants' Statement of Facts ¶¶ 4-9. That Mr. Worrell and Mr. Clinton were able to come to terms on *these* litigations which involved payment in exchange for releases has no bearing and casts no doubt as to their effect. Even if this Court were persuaded by the persuasive-only *Gordon*, there is not the same temporal privity of an assignment and release that would create the preclusive effect Defendants seek here. The only possible assignment in the record is the 1976

---

[4] *See* P's. Opp. at pp. 24-25, detailing that here, Mr. Clinton asserts being an employee of Westbound, while fifteen days prior, he filed a separate lawsuit against Westbound averring to have never been an employee.

Agreement, while the lawsuits seeking enforcement thereof and the releases that follow spanned decades through 2019. *Id.*

The AFM Contracts fare no better. Again, Clinton cannot have it both ways. He relies heavily on the fact that Worrell is listed as an "employee" meaning he must have been working as a work-made-for-hire musician. However, Clinton ignores the fact that he too is listed as an employee. So how can he claim ownership of the same subject sound recordings if he too was an employee making works for hire? He cannot. Mr. Clinton is not even listed as the employer! Opp. at p. 29 (admitting that the labels are listed as employer). Defendants also claim that Mr. Worrell "signed" them. Defendants cite ECF 88-7 PageID.1138, 1139, 1142, 1148 for the proposition that "Worrell signed several of these contracts as an employee of the record label." He did not sign them confirming his status as an employee-for-hire. Rather, like on PageID.1139, he signed as the Band Leader, merely confirming his role as musical director. Furthermore, these agreements in and of themselves merely confirm the obligation to pay union scale wages and do not speak to ownership of the recordings. The Parties agree that AFM-representative Cafagna, testified that such rights would be handled under separate agreement. Ex. 20, Cafagna Depo. Tr. at 10:8-15; 12:14-13:1; 14:10-20; 17:23-18:13; 28:8-19; 29:12-19.

Further, as discussed in Plaintiff's Opposition, the Westbound Release does not preclude any claims here. Defendants charge Plaintiff with "subterfuge". This is

just whataboutism, and unfounded whataboutism at that. First, there is no subterfuge here. These are the exact same arguments advanced by Defendants in their Motion for Sanctions summarily denied by the Court. ECF 125. Second, the plain language of the Westbound Release make it clear that it is a "new grant" which expressly anticipates future rights, *e.g.* by way of this lawsuit. Future grants are par for the course under copyright law. Indeed, under the 1909 Act which provides for two separate periods of copyright protection, the initial and renewal periods – the latter which required formal written renewal. Authors routinely would assign rights to this future interest in the renewal period. *See Stewart v. Abend*, 495 U.S. 207, 219 (1990).

### D. THE COURT HAS *ALREADY* DETERMINED THAT A DECLARATORY JUDGMENT WOULD BE APPROPRIATE HERE.

Defendants allege that the motion for partial summary judgment would not meet the declaratory judgment standard, in what can only be described as a hodgepodge argument that conflates the standards for Declaratory Judgment and complete summary judgment, ignoring the fact that the present motion is only that - for partial summary judgment. The simple reason that Plaintiff did not detail the standards for whether **complete** declaratory judgment was appropriate is, unshockingly, that Plaintiff does not by way of the instant motion seek complete declaratory judgment.

Regardless, the Court has *already ruled* that the matters before the Court *are* ripe and appropriate for declaratory relief. ECF 46 at pp. 15-19. That the present

motion would not dispose of *all* issues does not preclude the judgment it seeks here. Indeed, this is *precisely* what Rule 56 contemplates. *See* FED. R. CIV. P. 56(g) ("If the court does not grant all the relief requested by the motion, it may enter an order stating any material fact — including an item of damages or other relief — that is not genuinely in dispute and treating the fact as established in the case."). That is, regardless of the words Defendants try to put into the Plaintiff's mouth (*see* Opp. at p. 36), if the Court in its sound discretion determines that Mr. Worrell is entitled to a non-zero percentage, it of course may issue such an Order and provide such an instruction to the jury. Indeed, this happens routinely where a Defendant is found liable on motion for partial summary judgment where a trial proceeds on damages. This isn't "procedural fencing" but rather streamlining the issues for trial. *See W. World Ins. Co. v. Hoey*, 773 F.3d 755, 761 (6th Cir. 2014) (defining procedural fencing as forum shopping, forum racing, or an effort to cause delay).

## <u>CONCLUSION</u>

Plaintiff's motion should be granted and Defendants' Cross-Motion denied.

Respectfully Submitted,

DICKINSON WRIGHT PLLC

*/s/ Daniel D. Quick*
Daniel D. Quick (P48109)
*Attorney for Plaintiff*
2600 W. Big Beaver Road, Suite 300
Troy, MI 4804
Dated: April 30, 2025                          248-433-7200

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 30, 2025 the foregoing document was electronically filed with the Clerk of the Court using the ECF System, which will send notification of such filing upon all registered counsel, and serve same.

By: <u>*/s/ Nancy Cohen*</u>
Legal Secretary, Dickinson Wright PLLC

4920-0934-17563[101112-1]