## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

ESTATE OF GEORGE BERNARD
WORRELL, JR.,

     Plaintiff,

v.

THANG, INC. and GEORGE
CLINTON,

     Defendants.

Case No. 4:22-cv-11009-FKB-DRG

District Judge F. Kay Behm

Magistrate Judge David R. Grand

| | |
|---|---|
| DICKINSON WRIGHT PLLC | SCHENK & BRUETSCH PLC |
| Daniel D. Quick (P48109) | James P. Allen, Sr. (P52885) |
| 2600 W. Big Beaver Road | Peter E. Doyle (P81815) |
| Suite 300 | 211 W. Fort Street, Suite 1410 |
| Troy, MI 48084 | Detroit, MI 48226 |
| (248) 433-7200 | (313) 774-1000 |
| dquick@dickinsonwright.com | james.allen@sbdetroit.com |
| *Attorneys for Plaintiff* | peter.doyle@sbdetroit.com |
| | *Attorneys for Defendants* |

## DEFENDANTS' MOTION FOR SANCTIONS

Defendants Thang, Inc. and George Clinton ("Defendants") move for sanctions against Plaintiff pursuant to Fed. R. Civ. P. 11, 28 U.S.C. § 1927, and this Court's inherent authority. In support of this motion, Defendants rely on the attached brief.

Dated: July 15, 2025

Respectfully submitted,

SCHENK & BRUETSCH PLC
By: /s/ James P. Allen
James P. Allen, Sr. (P52885)
Peter E. Doyle (P81815)
211 W. Fort Street, Suite 1410
Detroit, MI 48226
(313) 774-1000
james.allen@sbdetroit.com
peter.doyle@sbdetroit.com
*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

ESTATE OF GEORGE BERNARD
WORRELL, JR.,

       Plaintiff,

v.

THANG, INC. and GEORGE
CLINTON,

       Defendants.

Case No. 4:22-cv-11009-FKB-DRG

District Judge F. Kay Behm

Magistrate Judge David R. Grand

| | |
|---|---|
| DICKINSON WRIGHT PLLC | SCHENK & BRUETSCH PLC |
| Daniel D. Quick (P48109) | James P. Allen, Sr. (P52885) |
| 2600 W. Big Beaver Road | Peter E. Doyle (P81815) |
| Suite 300 | 211 W. Fort Street, Suite 1410 |
| Troy, MI 48084 | Detroit, MI 48226 |
| (248) 433-7200 | (313) 774-1000 |
| dquick@dickinsonwright.com | james.allen@sbdetroit.com |
| *Attorneys for Plaintiff* | peter.doyle@sbdetroit.com |
| | *Attorneys for Defendants* |

## **DEFENDANTS' BRIEF IN SUPPORT OF MOTION FOR SANCTIONS**

## <u>TABLE OF CONTENTS</u>

**TABLE OF AUTHORITIES** ................................................................ i

**STATEMENT OF QUESTIONS PRESENTED** ................. iii

**CONTROLLING OR MOST APPROPRIATE AUTHORITY** ...................... iv

**INTRODUCTION** ................................................................1

**FACTUAL BACKGROUND** ................................................5

   **A.**  **The Current Litigation** ...........................................5

   **B.**  **Dismissal of other Defendants.** ...............................6

   **C.**  **Prior dispositive briefing.** ....................................8

   **D.**  **Discovery and pending summary judgment motions.**................9

**LEGAL STANDARD** .......................................................10

   **A.**  **Fed. R. Civ. P. 11** .............................................10

   **B.**  **28 U.S.C. § 1927** ..............................................12

   **C.**  **The Court's Inherent Authority** .........................12

**ARGUMENT** ....................................................................13

   **A.**  **Plaintiff's claims for any pre-1976 sound recording are meritless.** ........13

   **B.**  **The Court should sanction Plaintiff under Rule 11.**................15

   **C.**  **The Court should also issue sanctions under § 1927 and the Court's inherent authority.** ........17

   **D.**  **The monetary sanctions should be both punitive and compensatory.**.....19

**CONCLUSION**................................................................21

**CERTIFICATE OF SERVICE** .........................................22

i

# TABLE OF AUTHORITIES

**Federal Cases**

*Brandt v. Schal Assoc., Inc.*,
  960 F.2d 640 (7th Cir. 1992) ............................................................ 21

*Corwin v. Quinonez*,
  858 F. Supp. 2d 903 (N.D. Ohio 2012) ........................................... 13

*Craig v. UMG Recordings, Inc.*,
  380 F. Supp. 3d 324 (S.D.N.Y. 2019) ............................................. 19

*Driskell v. GMC*,
  CIVIL ACTION NO. 04-40224, 2006 U.S. Dist. LEXIS 99907 (E.D. Mich.
  Mar. 27, 2006) ................................................................................. 21

*Elsman v. Std. Fed. Bank*,
  238 F. Supp. 2d 903 (E.D. Mich. 2003) .......................................... 16

*First Bank v. Hartford Underwriters Ins. Co.*,
  307 F.3d 501 (6th Cir. 2002) ........................................... 12-13, 13, 18

*Hall v. Liberty Life Assur. Co.*,
  595 F.3d 270 (6th Cir. 2010) ........................................................... 12

*Hall v. Liberty Life Assurance Co.*,
  595 F.3d 270 (6th Cir. 2010) ........................................................... 12

*Mann v. G & G Mfg., Inc.* ,
  900 F.2d 953 (6th Cir. 1990) ........................................................... 16

*Merritt v. Int'l Ass'n of Machinists & Aero. Workers* ,
  613 F.3d 609 (6th Cir. 2010) ...................................................... 15, 16

*Neitzke v. Williams*,
  490 U.S. 319 (1989) ......................................................................... 15

*Red Carpet Studios Div. of Source Advantage, Ltd. v. Sater*,
  465 F.3d 642 (6th Cir. 2006) ....................................................... 18, 19

*Rentz v. Dynasty Apparel Indus.*,
  556 F.3d 389 (6th Cir. 2009) ................................. iv, 11, 12, 17, 19, 21

*Tang v. Putruss*,
    521 F. Supp. 2d 600 (E.D. Mich. 2007) ...................................................... 13, 14

*Thomson v. Larson*,
    147 F.3d 195 (2d Cir. 1998) ............................................................... 13

*Union Planters Bank v. L & J Dev. Co.* ,
    115 F.3d 378 (6th Cir. 1997) ............................................................ 16

**Federal Statutes**

17 U.S.C. § 507 ............................................................................... 14, 15

28 U.S.C. § 1927 ................................................. 1, iv, 4, 5, 6, 7, 12, 17, 18

**Rules**

Fed. R. Civ. P. 11 .................................... 1, iv, 4, 8, 9, 10, 11, 12, 15, 16, 17, 19, 21

Fed. R. Civ. P. 12 .......................................................................... 8

Fed. R. Civ. P. 56 .......................................................................... 9

**Other**

S.C.S. Fed. Rules Civ. Proc. R. 11 ...................................................... 20

## STATEMENT OF QUESTIONS PRESENTED

1. Should the Court issue sanctions against Plaintiff for its refusal to dismiss claims relating to pre-1976 sound recordings, where discovery has revealed that Plaintiff has no good faith basis to argue that these claims are timely or could satisfy the joint authorship test?

   Defendants Clinton and Thang, Inc. answer:          **Yes**
   Plaintiff answers:                                  **No**

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

Fed. R. Civ. P. 11

28. U.S.C. § 1927

*Rentz v. Dynasty Apparel Indus.*, 556 F.3d 389 (6th Cir. 2009)

## INTRODUCTION

George Clinton, a music legend who helped create the genre of funk, is still touring at 83-years-old because he has been mired in litigation for decades over the royalties derived from his life's work. In this long line of cases involving unscrupulous industry actors and bad faith litigation tactics, this action stands out. Discovery and summary judgment briefing have made clear that Plaintiff has insisted on maintaining baseless claims solely to maximize the financial harm to George Clinton.

Plaintiff seeks a blanket declaration of co-ownership over hundreds of P-Funk songs recorded between 1969 and 1981 based on a theory that has no precedent in copyright law. Defendants have briefed in detail the various reasons why Plaintiff's claims fail in their entirety. But the most glaring defect in Plaintiff's theory is that the entire case hinges on the alleged repudiation of the unsinged 1976 agreement between Bernie Worrell and Thang, Inc. Plaintiff relies on this 1976 agreement for both the timeliness of its claims (arguing that they did not accrue until Clinton "repudiated" an unexecuted contract in a 2019 lawsuit) and as the sole evidence of intent for co-authorship. Yet the 1976 agreement is plainly prospective – there is no argument that it could relate to any song recorded before January 1, 1976. The document cannot revive untimely claims or offer any evidence of intent for songs that predate its existence. Discovery has shown that, at a minimum, Plaintiff has no

good faith ownership claim to any sound recording made between 1969 and 1976. Plaintiff's continued refusal to dismiss these claims warrants sanctions.

Plaintiff has steadfastly refused to drop the pre-1976 sound recordings because this lawsuit is not about the merits or an attempt to upend decades of copyright co-authorship case law with some novel theory. It is about maximizing financial harm to George Clinton and pressuring him to sign away his rights to Westbound Records, the real party in interest that purchased the outcome of this case.

Plaintiff first revealed its improper motive early in the litigation, when it dismissed certain record company defendants on the condition that those companies withhold payment of any royalties to Clinton for the duration of this case. Plaintiff asserted that it had only named these entities as defendants out of an "abundance of caution," even though Plaintiff knew that the record companies (and not Clinton) own the vast majority of sound recordings at issue. The order of dismissal, which Plaintiff falsely represented as having been "stipulated to by all parties," was a violation of due process that was withdrawn following Defendants' motion to vacate. But Plaintiff achieved its goal of triggering clauses in Clinton's recording contracts that escrowed royalty payments during litigation. Thus, Clinton has been denied hundreds of thousands of dollars in sound recording royalties throughout the three years this case has been pending.

Tellingly, Westbound Records was absent from the initial agreement to dismiss the record company defendants. That is because Plaintiff was secretly negotiating a settlement agreement with Westbound, pursuant to which Plaintiff received a large lump sum payment and a stream of future royalties in exchange for transferring to Westbound any rights Plaintiff may have in the sound recordings. And unlike its agreements with the other record company defendants, Plaintiff agreed to a dismissal "solely as to Westbound, with prejudice."

Plaintiff has refused to disclose how much Westbound paid for these rights, presumably because it would undermine Plaintiff's repeated claims of impecunity – claims that would be impossible to square with the hundreds of thousands of dollars already expended on this litigation.

Meanwhile, in discovery, Plaintiff produced a few dozen documents and said that all other relevant files had been lost in a storm. Plaintiff thus placed the entire cost of discovery on Defendants, who were forced to trawl through hundreds of boxes of physical files in a warehouse, searching for any agreements or correspondence that could relate to any of the sound recordings alleged in the Complaint. Clinton produced thousands of documents dating back five decades. Plaintiff groused about insufficient discovery responses while knowing that there was no viable theory for co-ownership of pre-1976 recordings. The aim was simply

to increase costs by alleging hundreds of older songs that would necessarily be more difficult, timely, and costly to investigate.

Plaintiff so far has managed to explain away its alleged discovery violations and avoid dismissal by relying on supposed factual disputes over the accrual of its claims and joint authorship intent. But now there are no further facts to develop, and the record is clear that Plaintiff has never had any good faith basis to maintain ownership claims for sound recordings made between 1969 and 1976.

The Court can and should sanction Plaintiff for this conduct. First, Plaintiff has violated Rule 11's continuing obligation to refrain from pursuing meritless or frivolous claims at any stage of the proceedings. Second, 28 U.S.C. § 1927 authorizes sanctions for continuing to litigate a claim that an attorney knows or reasonably should know is frivolous. Third, the Court possesses the inherent authority to sanction any party that litigates in bad faith, vexatiously, wantonly, or for oppressive reasons.

The Court should issue a sanctions award that is punitive, compensatory, and sufficient to deter this type of litigation in the future. Plaintiff's baseless claim for a blanket declaration of co-ownership of every P-Funk song dating to 1969 significantly increased the costs of this case and the harm to Clinton by needlessly denying him royalties from sound recordings that should never have been in dispute. Sanctions are the only appropriate redress.

## FACTUAL BACKGROUND

### A. The Current Litigation

The Court is familiar with the claims and the procedural history of this case. Plaintiff alleges that, on January 1, 1976, Worrell signed a recording contract with Thang. ECF No. 1. Prior to this agreement, Plaintiff alleged that Worrell received a weekly salary from Clinton for his musical services, "regardless as to whether Mr. Worrell performed that week or not." ECF No. 133, PageID.3456.

Plaintiff alleges that Worrell believed the "1976 agreement" was fully executed and operative from 1976 through Worrell's death in 2016. ECF No. 1., ¶ 6. In 2019, when Plaintiff sued Clinton and Thang in New York state court, Plaintiff allegedly first became aware that the 1976 agreement was never countersigned. *Id.*, ¶ 12. Thus, Plaintiff contends that Worrell never transferred his copyright interests to Clinton or Thang and therefore, "Worrell was at all times a joint owner of the master recordings of the Works whose interest therein now rightfully belongs to Plaintiff." *Id.*

The alleged "Works" consist of approximately 264 songs across 30 albums created by various bands, including Funkadelic, Parliament, Bootsy's Rubber Band, Eddie Hazel, Parlet, and Brides of Funkenstein. ECF No. 1-2, PageID.56; ECF No. 145-2.  Nearly half of the Works were recorded prior to January 1, 1976. *See*, ECF

No. 145-2, listing Works by year. This includes the two compilation albums, *Finest* and *Toys*, which contain songs recorded in the late 1960s and early 1970s. *Id.*

### B. Dismissal of other Defendants.

The Complaint initially named Sony Music Entertainment ("Sony"), Universal Music Group ("UMG"), Warner Brothers Records ("Warner") and Westbound Records ("Westbound") as Defendants. ECF No. 1, PageID.2. Plaintiff stated these "Record Label Defendants" were "included in this Complaint in an abundance of caution as they have ownership interest in certain Works" at issue. *Id.*

On August 29, 2023, the Court entered a stipulated order to dismiss Sony, Warner, and UMG without prejudice. ECF No. 60. The order falsely stated that it had "been stipulated to by all parties," when in fact, neither Clinton nor Thang consented to its terms. *Id.* at PageID.598. In exchange for the dismissal, these music company defendants agreed to "hold and not pay to the Clinton Defendants (or any person or entity associated therewith) any royalties or other amounts otherwise payable to the Clinton Defendants related to the recordings at issue in the litigation." *Id.* at PageID.600.

Clitnon and Thang filed a motion to vacate the stipulated order on the grounds that it deprived them of a property interest in their ongoing royalty payments without notice or opportunity to be heard. ECF No. 63. In response to the motion, Plaintiff

agreed to strike the August 29, 2023 order, and entered an unconditional dismissal of Sony, UMG, and Warner without prejudice. ECF No. 67.

Although the August 29, 2023 order was vacated, Plaintiff still achieved its goal of cutting off royalty payments to Clinton and Thang for the duration of the litigation. The record company defendants have withheld payment of sound recording royalties to Clinton for the past three years, resulting in hundreds of thousands of dollars of lost income to Clinton. Former defendant SoundExchange, Inc., which distributes digital performance sound recording royalties, has also placed "all future royalties" for the sound recordings "on hold" until this case is resolved. ECF No. 54, PageID.406.

On December 27, 2023, Plaintiff entered into a separate Settlement Agreement with Westbound. ECF No. 112-6. Plaintiff agreed "to take the steps necessary to request and effectuate a voluntary dismissal of the Action, solely as to Westbound, with prejudice." *Id*. at PageID.2061, ¶ 1. Westbound agreed to make a lump sum settlement payment to Plaintiff. *Id.* at PageID.2063. Plaintiff transferred a substantial portion of its interest in this litigation to Westbound, irrevocably granting, assigning, and transferring "to Westbound all of Worrell Estate's present and future rights, title, interests, control, and benefits in and to Worrell's Share of the Subject Recordings." *Id.* Plaintiff belatedly produced a redacted version of the Settlement Agreement after the close of discovery. ECF No. 112, PageID.1996.

7

### C. Prior dispositive briefing.

Clinton and Thang first moved for dismissal of the Complaint under Fed. R. Civ. P. 12(b)(6) on September 8, 2022. Defendants argued, *inter alia*, that Plaintiff's co-ownership claims are barred by the Copyright Act's three-year statute of limitations. ECF No. 33. Defendants – seeing straight through Plaintiff's improper motive – asserted that Plaintiff "should not be entitled to inflict hundreds of thousands of dollars in discovery costs to leverage a settlement out of such generalized, threadbare, and amorphous allegations in the hopes that they might turn something – anything – up to justify hauling Defendants into court to rehash ancient history." *Id.* at PageID.197.

On April 25, 2023, the Court denied Defendants' motion to dismiss. ECF No. 46. On the statute of limitations issue, the Court noted, "the Complaint alleges that there was no repudiation of Worrell's ownership/authorship rights until Clinton filed his Declaration on January 10, 2020, in the New York action disavowing the existence of a binding agreement between Worrell and Clinton." *Id.* at PageID.350. The Court held that any attempt to dispute these allegations would be "best left to a motion for summary judgment on the issue of statute of limitations." *Id.* at PageID.351.

8

**D. Discovery and pending summary judgment motions.**

On November 15, 2023, Plaintiff served responses to Defendants' first set of discovery requests. Plaintiff produced a total of approximately 90 pages of documents based on the explanation that "the Worrells lost a significant amount of documentation in 2015" when a tree fell during a storm and destroyed several boxes of Plaintiff's files. ECF No. 89-1, PageID.1178.

Plaintiff's alleged lack of relevant documents forced Defendants to locate and digitize thousands of files from old storage boxes. ECF No. 89-2, PageID.1180. Defendants bore the burden of identifying any relevant agreements, royalty statements, accountings, assignments, licenses, copyright registrations, correspondence, and prior litigation relating to each of the 264 Works alleged in the Complaint. *Id.* Defendants produced thousands of pages of documents throughout discovery, while Plaintiff produced a little over 100 pages in total.

On March 26, 2025, Defendants filed their Rule 56 motion for summary judgment. ECF No. 134. In addition to arguments regarding the impact of the Westbound Settlement Agreement, Defendants argued that (1) the Copyright Act's three-year statute of limitations bars Plaintiff's claims; and (2) Plaintiff cannot satisfy the elements of mutual intent and individual copyrightable contribution to be deemed a joint author of each of the Works. *Id.*

9

Plaintiff attempted to refute Defendants' multiple forms of repudiation by relying solely on the "1976 Agreement." Plaintiff claimed "there was no express repudiation of the 1976 Agreement – the terms under which Mr. Worrell would not have claimed ownership – until 2020. His claims for ownership are thus timely—no matter how many pages Defendants spend talking past the issue." ECF No. 144, PageID.4595.

As for joint authorship, Plaintiff again based its argument for the validity of its claims entirely on the 1976 Agreement:

> Defendants allege that there was no evidence of intent to be co-authors. Of course there is: the 1976 Agreement. *But for* this agreement, Mr. Worrell would have had a claim to co-authorship given his contributions.

ECF No. 144, PageID.4597 (emphasis in original).

Plaintiff made no attempt to explain how the 1976 Agreement could possibly evidence contemporaneous mutual intent of joint authorship for any sound recording made prior to January 1, 1976.

## LEGAL STANDARD

### A. Fed. R. Civ. P. 11

Under Rule 11, an attorney presenting papers to the court certifies that:

(1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b).

Further, Rule 11 imposes a "continuing duty of candor" upon litigants, and sanctions may be warranted "for continuing to insist upon a position that is no longer tenable." *Rentz v. Dynasty Apparel Indus.*, 556 F.3d 389, 395 (6th Cir. 2009) (quoting *Ridder v. City of Springfield*, 109 F.3d 288, 293 (6th Cir. 1997)).

If the court finds a violation of Rule 11(b), "the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c)(1). A sanction "imposed on motion and warranted for effective deterrence" may include "an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation." Fed. R. Civ. P. 11(c)(4).

Thus, while Rule 11 is not "intended to be a compensatory mechanism in the first instance," the Sixth Circuit holds that "effective deterrence sometimes requires compensating the victim for attorney fees arising from abusive litigation." *Rentz*, 556 F.3d at 400.

## B. 28 U.S.C. § 1927

Section 1927 warrants sanctions where an attorney "falls short of the obligations owed by a member of the bar to the court and which, as a result, causes additional expense to the opposing party." *Rentz*, 556 F.3d at 396. "A court may sanction an attorney under § 1927 for unreasonably and vexatiously multiplying the proceedings even in the absence of any conscious impropriety." *Hall v. Liberty Life Assurance Co.*, 595 F.3d 270, 275 (6th Cir. 2010). Thus, "[Section] 1927 sanctions require a showing of something less than subjective bad faith, but something more than negligence or incompetence." *Rentz*, 556 F.3d at 396. Absent bad faith, Section 1927 sanctions are appropriate "when an attorney knows or reasonably should know that a claim pursued is frivolous, or that his or her litigation tactics will needlessly obstruct the litigation of nonfrivolous claims." *Id.* (quoting *Ridder v. City of Springfield*, 109 F.3d 288, 298 (6th Cir. 1997)). Unlike Rule 11, courts are not permitted to consider a party's ability to pay when fashioning a monetary sanction under Section 1927. *Hall v. Liberty Life Assurance Co.*, 595 F.3d 270, 276 (6th Cir. 2010).

## C. The Court's Inherent Authority

The Sixth Circuit has stated that "in addition to Rule 11 and 28 U.S.C. § 1927, a district court may award sanctions pursuant to its inherent powers when bad faith occurs." *First Bank v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 512 (6th Cir.

12

2002) (citation omitted). The court has the "inherent authority to award fees when a party litigates 'in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Id.* quoting *Big Yank Corp. v. Liberty Mut. Fire Ins. Co.*, 125 F.3d 308, 313 (6th Cir. 1997) "In order to award attorney fees under this bad faith exception, a district court must find that 'the claims advanced were meritless, that counsel knew or should have known this, and that the motive for filing the suit was for an improper purpose such as harassment.'" *Id.*

## ARGUMENT

### A. Plaintiff's claims for any pre-1976 sound recording are meritless.

As Defendants have previously briefed, a party claiming joint authorship must "show that (1) each party intended to be joint authors, and (2) each party made an independently copyrightable contribution to the work." *Corwin v. Quinonez*, 858 F. Supp.2d 903, 910 (N.D. Ohio 2012) (citing *Childress v. Taylor*, 945 F.2d 500, 505-06 (2d Cir. 1991)); *Thomson v. Larson*, 147 F.3d 195, 202 (2d Cir. 1998).

Crucially, the plaintiff must show that "the parties intend[ed] to be joint authors **at the time**" the sound recording was created. *Tang v. Putruss*, 521 F. Supp.2d 600, 605 (E.D. Mich. 2007) (emphasis added). Thus, even a "significant" contribution "to a work does not automatically suffice to confer co-author status on the contributor…a specific finding of mutual intent remains necessary." *Id.* at 606 quoting *Thomson*, 147 F.3d at 202.

13

Plaintiff's **only** purported evidence of mutual intent is the "1976 Agreement." ECF No. 144, PageID.4597. Plaintiff claims that "but for" this agreement, "Worrell would have had a claim to co-authorship given his contributions." *Id.* But even if Plaintiff could show that Worrell contributed to each of the Works (which Plaintiff has made no attempt to do), there is no evidence or argument that the parties intended to be joint authors when recording any sound recording between 1969 and 1976. The "1976 Agreement" commenced on January 1, 1976 (*See* ECF No. 133-6, PageID.3643, ¶ 1) and has no relevance to any sound recording predating this initial period. Plaintiff has conceded a lack of intent for all sound recordings made before 1976 yet has refused to dismiss those Works from this litigation.

Nor does Plaintiff have any valid argument that the pre-1976 sound recordings are not barred by the Copyright Act's three-year statute of limitations. 17 U.S.C. § 507(b). Defendants' summary judgment motion detailed the various events over the last 50 years that independently show accrual of Plaintiff's time-barred claims. ECF No. 134. These include (i) the copyright registrations each omitting Worrell as a co-author; (ii) the royalty payments and audits which show that Worrell was not deemed a co-author; (iii) the 1982 Novation which necessarily settled any claim by Worrell that he was a co-author of the sound recordings; and (iv) Clinton's 2014 autobiography, which attributed authorship of the sound recordings to Clinton. *Id.* at PageID.3804-2822.

14

Plaintiff's response again bases everything on the 1976 Agreement. Plaintiff contends that from 1976 until Worrell's death in 2016, "Mr. Worrell was under the impression that the 1976 Agreement was in place." ECF No. 144, PageID.4595. Plaintiff argues that "Worrell and the Estate believed in the validity of the 1976 Agreement until" Clinton filed his affidavit in the 2019 New York action, so the "claims for ownership are thus timely." *Id.*

Even if it were plausible that Worrell could ignore all of the binding forms of accrual because he believed in the purported authenticity of the unsigned 1976 Agreement, that would still leave untimely all of Plaintiff's claims for the sound recordings between 1969 and 1976. Plaintiff's only argument for timeliness is the 1976 Agreement, and that document only covers recordings made after January 1, 1976. Plaintiff's assertion that its copyright claims for the sound recordings between 1969 and 1976 did not accrue until 2019 is meritless.

## B. The Court should sanction Plaintiff under Rule 11.

A claim is frivolous when it "lacks an arguable basis, either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *Merritt v. International Ass'n of Machinists & Aerospace Workers*, 613 F.3d 609, 627 (6th Cir. 2010) ("Rule 11 imposes a continuing obligation on attorneys to refrain from pursuing meritless or frivolous claims at any stage of proceedings."). "Under Rule 11, sanctions may be imposed if a reasonable inquiry would have disclosed that the pleading, motion or

15

other paper was not well-grounded in fact." *Mann v. G & G Mfg., Inc.*, 900 F.2d 953, 959 (6th Cir. 1990).

Any reasonable inquiry would show that Plaintiff did not possess any evidence or viable theory to obtain co-authorship of the pre-1976 sound recordings. Plaintiff should have known this when it was drafting the list of Works for its initial complaint. And Plaintiff, at a minimum, should have withdrawn the claims when discovery made clear that there was no evidence of timeliness or mutual intent for the pre-1976 songs. But instead, Plaintiff forged ahead with its meritless claims solely to keep the case as complex and expensive as possible for Defendants. This continued pursuit of frivolous claims is sanctionable. *See Union Planters Bank v. L & J Dev. Co.*, 115 F.3d 378, 384-85 (6th Cir. 1997) (imposing sanctions for "knowingly bringing and pursuing claims devoid of evidentiary support"); *Elsman v. Standard Fed. Bank*, 238 F. Supp. 2d 903, 910 (E.D. Mich. 2003) (finding a sanctions award of total fees was necessary to deter  future similar conduct of bringing unsupported claims).

For instance, in *Merritt v. Int'l Ass'n of Machinists & Aero. Workers*, The Sixth Circuit affirmed Rule 11 sanctions for bringing claims on behalf of 179 plaintiffs, "several of whom were revealed after discovery to have no claim for relief, but nevertheless had claims pending almost two years later." *Merritt v. Int'l Ass'n of Machinists & Aero. Workers*, 613 F.3d 609, 626 (6th Cir. 2010). The court

16

found that "counsel's failure to adequately research the factual basis for the claims asserted in the complaint at the time of filing, and counsel's continued failure to refrain from pursuing meritless claims well over a year into the litigation" to warrant Rule 11 sanctions. *Id*.

Plaintiff's failure to withdraw the claims for pre-1976 sound recordings three years into this litigation warrants sanctions.

### C. The Court should also issue sanctions under § 1927 and the Court's inherent authority.

"A court may sanction an attorney under  Section 1927 for unreasonably and vexatiously multiplying the proceedings despite the absence of any conscious impropriety."  *Rentz v. Dynasty Apparel Indus.*, 556 F.3d 389, 396 (6th Cir. 2009) (citing *Jones v. Cont'l Corp.*, 789 F.2d 1225, 1230 (6th Cir. 1986)) (internal quotations omitted). Thus, conduct is sanctionable "without a finding of bad faith at least when an attorney knows or reasonably should know that a claim pursued is frivolous or that his or her litigation tactics will needlessly obstruct the litigation of nonfrivolous claims." *Id. (*quoting *Ridder,* 109 F.3d at 298)(internal quotations omitted). Section 1927 requires a "showing of something less than subjective bad faith but more than negligence or incompetence." *Id.* (quoting *Red Carpet Studios Div. of Source Advantage, Ltd. v. Sater*, 465 F.3d 642, 646 (6th Cir. 2006)).

The purpose of § 1927 is to "punish aggressive tactics that far exceed zealous advocacy" by requiring the attorney to "personally satisfy the excess costs attributable to his misconduct." *Red Carpet Studios Div. of Source Advantage, Ltd. v. Sater*, 465 F.3d 642, 646 (6th Cir. 2006).

The Court's inherent authority also includes broad sanctioning power. The Sixth Circuit has explained that while "each of the other mechanisms reaches only certain individuals or conduct, the inherent power extends to a full range of litigation abuses" and allows courts to fill in the gaps in order to "control the litigants before it and to guarantee the integrity of the court and its proceedings." *First Bank v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 511-12 (6th Cir. 2002) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43, 46 (1991)).

In *Red Carpet Studios Div. of Source Advantage, Ltd. v. Sater*, an action for copyright infringement, the court imposed sanctions under Section 1927 and the Court's inherent authority. 465 F.3d 642, 647 (6th Cir. 2006). The court justified the sanctions by finding that the attorney's actions were taken "at the very least, in the face of an obvious risk that he was increasing the work on the other party without advancing the litigation." *Id*. These actions included "[s]everal attendant misrepresentations as to the true nature of the transfer of the copyrights" which the Sixth Circuit agreed "was vexatious conduct and rendered the motion frivolous."

18

*Id.* at 646. Other sanctionable conduct included "moving for an injunction based on nothing more than bare-bones allegations" *Id.* at 644 (internal quotations omitted).

Likewise, here Plaintiff vastly increased the work on Defendants by advancing meritless co-authorship claims for pre-1976 sound recordings. The claims are so devoid of merit that the Court may infer bad faith on Plaintiff's part. *See Craig v. UMG Recordings, Inc.*, 380 F. Supp. 3d 324 (S.D.N.Y. 2019) ("Bad faith can be inferred if the action is completely without merit.")

**D. The monetary sanctions should be both punitive and compensatory.**

While the goal of Rule 11 sanctions is deterrence, the Sixth Circuit has emphasized that compensation and deterrence are not mutually exclusive. *Rentz v. Dynasty Apparel Indus.*, 556 F.3d 389, 400 (6th Cir. 2009). "If compensation was not a recognizable basis for Rule 11 awards, aggrieved litigants would have little incentive to pursue sanctions thus diminishing the important deterrent effect of Rule 11." *Id.* (citation omitted).

The Advisory Committee Notes provide a list of considerations for determining appropriate Rule 11 sanctions, including:

> Whether the improper conduct was willful, or negligent; whether it was part of a pattern of activity, or an isolated event; whether it infected the entire pleading, or only one particular count or defense; whether the person has engaged in similar conduct in other litigation; whether it was intended to injure; what effect it had on the litigation process in time or expense; whether the responsible person is trained in the law; what amount, given the financial resources of the responsible person, is needed to deter that person from repetition in the same case; what

19

amount is needed to deter similar activity by other litigants: all of these
may in a particular case be proper considerations.

U.S.C.S. Fed. Rules Civ. Proc. R. 11. Advisory Committee Notes (1993

Amendments).

Here, Plaintiff's baseless claims infected the entire case by significantly

increasing the number of sound recordings at issue and forcing Defendants to incur

substantial expenses investigating and defending against meritless claims. As

explained above, discovery into the pre-1976 sound recordings was particularly

burdensome given the lack of electronic data and record keeping, and the difficulty

in identifying and producing any potentially relevant documents.

Additionally, Plaintiff's purpose in including the pre-1976 Works despite not

having any valid claim to them, was to maximize the cost to Defendants and the

financial harm incurred by the withholding of sound recording royalties. For this

reason, the Court should not only award the attorneys' fees attributable to

Plaintiff's misconduct, but also issue sanctions that compensate Clinton for the

three years of lost royalty income from sound recording royalties that should never

have been escrowed.

The Court has the authority to fashion a sanctions award that compensates

Defendants beyond the amount of attorneys' fees expended on the frivolous claims.

For instance, the Sixth Circuit has noted that courts "may include a 'delay factor'

as part of a sanctions award in order to account for the opportunity cost of money

20

that could have been allocated to other purposes but instead went to pay attorney fees to defend against frivolous claims." *Rentz*, 556 F.3d at 402 citing *FDIC v. MAXXAM, Inc.*, 523 F.3d 566, 596 (5th Cir. 2008); *Brandt v. Schal Assocs., Inc.*, 960 F.2d 640, 652 (7th Cir. 1992). This is consistent with the "make-whole" approach to compensatory sanctions. *See*, *Driskell v. GMC*, No. 04-40224, 2006 U.S. Dist. LEXIS 99907, at *16 (E.D. Mich. Mar. 27, 2006) citing Wright and Miller, Federal Practice and Procedure: Civil 3rd §1336.3, n.23 ("The use of monetary sanctions was thought to be consistent with the policy of providing a 'make-whole' remedy that put the party prevailing on a sanctions motion in the position in which it would have been had the Rule 11 violation not occurred.").

But for Plaintiff's sanctionable conduct, Defendants would have spent far less defending this action and would have continued receiving sound recording royalties for all of the pre-1976 Works. The Court's award of sanctions should therefore not be limited to the excess attorney's fees, but should also include the opportunity cost of those fees and the withheld royalties.

## CONCLUSION

For the foregoing reasons, the Court should issue an Order sanctioning Plaintiff and its counsel, including monetary sanctions that compensate Defendants for all costs incurred from the frivolous claims.

Respectfully submitted:
SCHENK & BRUETSCH PLC

By: /s/ James P. Allen, Sr.
Peter E. Doyle (P81815)
James P. Allen, Sr. (P52885)
211 W. Fort Street, Suite 1410
Detroit, MI 48226
(313) 774-1000
james.allen@sbdetroit.com
peter.doyle@sbdetroit.com
*Attorneys for Defendants*

July 15, 2025

## CERTIFICATE OF SERVICE

I hereby certify that on July 15, 2025, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send notification of such filing to the attorneys of record. Further, a copy of the foregoing Rule 11 motion was served on Plaintiff's counsel via email on June 18, 2025.

/s/ Dana Schultz
Dana Schultz

22