UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

ESTATE OF GEORGE BERNARD
WORRELL, JR.,

    Plaintiff,

v.

THANG, INC. and GEORGE
CLINTON,

    Defendants.

Case No. 4:22-cv-11009-FKB-DRG

District Judge F. Kay Behm

Magistrate Judge David R. Grand

| | |
|---|---|
| DICKINSON WRIGHT PLLC<br>Daniel D. Quick (P48109)<br>2600 W. Big Beaver Road<br>Suite 300<br>Troy, MI 48084<br>(248) 433-7200<br>dquick@dickinsonwright.com<br>*Attorneys for Plaintiff* | SCHENK & BRUETSCH PLC<br>James P. Allen, Sr. (P52885)<br>Peter E. Doyle (P81815)<br>211 W. Fort Street, Suite 1410<br>Detroit, MI 48226<br>(313) 774-1000<br>james.allen@sbdetroit.com<br>peter.doyle@sbdetroit.com<br><br>SCHARF APPELLATE GROUP<br>Erik W. Scharf<br>1395 Brickell Avenue, Suite 800<br>Miami, FL 33131<br>305-665-0475<br>erik@appealsgroup.com<br>*Attorneys for Defendants* |

# DEFENDANTS' SUPPLEMENTAL BRIEF ON MOTIONS TO STRIKE EXPERT WITNESS REPORTS AND PRECLUDE EXPERT TESTIMONY AT TRIAL [ECF NO. 128 AND 129]

After criticizing Defendants for infusing merits issues into their motions to strike, Plaintiff spends half its brief arguing merits, evading the issues the Court ordered briefed. Plaintiff asserts there shouldn't be a jury trial but fails to address two critical arguments. First, Plaintiff ignores its own complaint, which: seeks damages; seeks song-by-song percentage ownership determination; and demands a jury trial. Second, and most importantly, Plaintiff fails to address Defendants' affirmative defenses, which independently compel a jury trial. This alone is dispositive. As to whether district courts must abide by *Daubert* in bench trials, Plaintiff points to a few district court cases but ignores the Federal Rules themselves and the much greater weight of **Circuit authority**. And on the merits, Plaintiff still hasn't pointed to a single case anywhere adopting its approach of determination by sweeping generalization. Plaintiff itself demands a song-by-song determination of share of co-ownership; it cannot avoid an individual determination of co-authorship.

A. **Multiple Claims, Defenses, and Jury Demands Compel a Jury Trial.**

"The Seventh Amendment guarantees that a trial by jury be had in all federal cases presenting 'legal' claims over $ 20.00." *Hildebrand v. Bd. of Trs.*, 607 F.2d 705, 707 (6th Cir. 1979). In determining whether a jury trial right exists, courts "look to the nature of the action and to the relief sought." *Golden v. Kelsey-Hayes Co.*, 73 F.3d 648, 660 (6th Cir. 1996). Thus, "[d]eclaratory relief may be legal or equitable depending on the basic nature of the underlying issues." *Id.* at 661. Where "the relief

1

sought includes compensatory and/or punitive damages, then there does exist a right to trial by jury." *Hildebrand,* 607 F.2d at 708. Here, contrary to Plaintiff's characterization, there are multiple underlying legal issues.

Plaintiff's own complaint demands a jury trial (ECF No. 1, ¶ 66), as does Defendants' answer. (ECF No. 47, ¶ 66). More importantly, the Complaint expressly demands monetary and statutory damages. Before requesting injunctive relief, the Complaint demands a judgment "for the amount of damages proven at trial," exemplary damages, and attorneys' fees. ECF No. 1, at ¶67 (a)-(c). Plaintiff's only mechanism for such damages is the Copyright Act, and the Seventh Amendment provides a right to a jury on all issues relevant to statutory damages under the Copyright Act. *Feltner v. Columbia Pictures Tv*, 523 U.S. 340, 355 (1998).

Further, Plaintiff's demands for monetary damages arise from allegations that implicate law and ***not*** equity. Plaintiff alleges millions of dollars in unauthorized exploitation of the sound recordings. *See, e.g.* ECF No. 1 at ¶ 4 ("Works "have been reproduced and commercially exploited… have generated millions of dollars in revenue"); ¶ 19 ("Defendants have been exploiting, licensing, and making millions from the master recordings of the Works without ever sharing the profits with their rightful co-owner, Mr. Worrell"); ¶47 Defendants entered into "numerous lucrative third-party agreements… purporting to grant those third parties rights in recordings that are jointly owned by Mr. Worrell… without basis in law or fact"); and ¶¶ 48-50.

Similarly, the Complaint alleges concealment, bad faith, self-dealing, and other wrongful acts that sound in fraud. *Id.* at ¶¶ 5, 14-15, 20-21, 55-57, and 60-62.

The Complaint goes beyond a request for declaratory relief. It seeks damages for wrongful exploitation, concealment, self-dealing, and infringement. These are legal claims triable to a jury, as Plaintiff itself demanded. *See e.g., SCO Grp., Inc. v. Novell, Inc.*, 578 F.3d 1201, 1227 (10th Cir. 2009) (remanding for jury trial on copyright ownership claim and exploitation-related damages).

**B.    Defendants' Legal Affirmative Defenses Compel a Jury Trial That Will Implicate Both Experts' Testimony.**

Assume that Plaintiff is correct that it can secure a bench trial on its copyright/declaratory judgment claim. Even in that scenario, the trial would still have a constitutionally-required jury component --the heart of Clinton's defense is his affirmative defenses, several of which are legal.[1] Legal affirmative defenses ***must*** be tried to a jury even where other issues are bench-tried. Further, the expert testimony is inextricably intertwined with several of these legal defenses, meaning admissibility concerns run to what ***jurors*** will hear, not just what the Court will hear.

Legal – as opposed to equitable – affirmative defenses, such as statute of limitations and waiver, must be tried to a jury where, as here, a jury trial has been properly demanded. The Seventh Amendment preserves the right to trial by jury of

---

[1] Defendants legal defenses include: 1(statute of limitations); 4 (waiver/release/prior settlements); 12(fraud); 17 (standing *i.e.* Plaintiff sold its purported co-ownership interests); and 23 (prior payment or release). ECF No. 47, PageID.365.

3

all legal claims. This right extends to affirmative defenses that are legal in nature. *Elam v. Menzies*, 594 F.3d 463, 467 (6th Cir. 2010) ("disputed issues of fact respecting the running of a statute of limitations should be resolved by a jury.").

The Court's instruction here was to explain the likely trial proceedings and how the experts would influence them. If the proceedings were a hybrid with the legal defenses tried to a jury, there are more procedural concerns. "When legal and equitable claims are joined in the same action, discretion...must, wherever possible, be exercised to preserve the jury trial." *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 510 (1959). "[O]nly under the most imperative circumstances...can the right to a jury trial of legal issues be lost through prior determination of equitable claims." *Id.* at 510-11. Thus, "where there are issues common to both the equitable and legal claims, 'the legal claims involved in the action must be determined prior to any final court determination of [the] equitable claims.'" *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 479 (1962). When deciding equitable claims, the Court is "bound by the jury's determination of the [legal claims]." *Korte v. Diemer*, 909 F.2d 954, 957 (6th Cir. 1990). Thus, the Court determines the equitable claim only after the jury decides the legal claims. *Id.* [2]

---

[2] The Seventh Amendment's proposition that legal defenses require a jury trial has been applied by circuits across the country. *See, Meléndez-Arroyo v. Cutler-Hammer de P.R. Co.,* 273 F.3d 30, 38 (1st Cir. 2001); *Bertha Building Corp. v. Nat'l Theatres Corp.*, 248 F.2d 833, 835-36 (2d Cir. 1957); *Fowler v. Land Mgmt. Groupe, Inc.*, 978 F.2d 158, 162 (4th Cir. 1992); *Chambliss v. Simmons*, 165 F. 419, 423 (5th Cir. 1908).

Here, the practical effect of hybrid proceedings is that a jury will hear both Kohn's and Exner's testimony, and it will influence their consideration of the legal defenses. A full analysis of their testimony's effect on *all* the legal defenses is impossible in the ten pages allocated. But the overlap on statute of limitations and waiver shows that admissibility is *not* a bench-only issue.

Plaintiff's experts' testimony is on subjects that are inextricably intertwined with the affirmative defenses. In all the briefing concerning the admissibility of Kohn's testimony, Plaintiff provides exactly one sentence as to why it is relevant to the trier of fact: "Mr. Kohn's expert opinion will be relevant to industry custom and practice in the recording industry *as it pertains to how recording artists manifested intent to be co-authors or not*." ECF 136, PageID.4316 (emphasis added). Thus, Plaintiff wants Kohn to convince the trier of fact that Worrell (according to the industry customs and practices in which Kohn claims expertise) manifested his intent to be a co-author of the sound recordings at issue *at the time they were created*. But that issue is absolutely central to Defendants' legal affirmative defenses. One of Defendants' primary arguments on statute of limitations is that, if Worrell were a co-author, he knew or should have known that he was a co-author at the moment the sound recordings were created, meaning that each instance he wasn't treated or compensated in the manner a co-author would be constituted a repudiation of his status that triggered his claims. ECF No. 134. Similarly, that testimony is central to

5

Defendants' legal waiver defense. If the industry customs and practices indicated that Worrell was a co-author when the sound recordings were created, then he knew he was releasing his co-author status when he executed the 1982 Novation, thereby waiving his current claims. *Id.* at PageID.3819. The Seventh Amendment therefore requires that a jury evaluate Kohn's testimony.

The argument is also true for Exner. Plaintiff argues that this testimony is relevant to Worrell's "decision making authority," how "the parties regarded themselves in relation to the work"; and may be "additional pertinent evidence" of co-authorship. ECF No. 137, PageID.4419 *citing Tang v. Putruss*, 521 F. Supp. 2d 600, 606 (E.D. Mich. 2007). But those factors are used "to determine whether there was an ***intent*** to be co-authors." *Tang*, 521 F. Supp at 606 (emph. added). Like Kohn, Exner's testimony on Worrell's "musical leadership position" and status within music groups to show a co-authorship intent also goes to the heart of legal defenses.

C.     **Experts Failing *Daubert* Analysis Must Still Be Excluded in Bench Trials.**

Neither Kohn nor Exner survive *Daubert* scrutiny. That is because they purport to offer testimony about Worrell's overall contribution to various "bands" associated with Clinton between 1969 and 1981. As Defendants have repeatedly noted, to be relevant to any co-authorship question, testimony about what Worrell did must be directed to discrete "copyrightable contributions," *i.e.*, the reduction of music to discrete recording media, or, put more bluntly, demonstrable input into

6

individual sound recordings. ***In every other instance of music copyright claims, expert testimony has taken this form, as demonstrated in the Defendants' prior briefs on these motions and summary judgment.*** Further, Defendants have now challenged both the experts in depositions and counsel for Plaintiff – multiple times – to provide even a single example of such broad brush "expertise" being deemed admissible. The silence – including at the most recent hearing on July 30, 2025 – is so acute as to leave no doubt: Plaintiff is asking this Court to bless a new and utterly un-sanctioned form of expert testimony. Plaintiff does so without laying any scientific or methodological foundation. The testimony therefore lacks any *Daubert* rigor or reliability and is inadmissible. The question whether the proceedings will partake of bench or jury, while interesting, does not alter admissibility analysis.

Even where proceedings are 100% bench, experts without sufficient *Daubert* rigor must be excluded. "Evidence Rule 702 does not distinguish between jury and bench trials." *In re Nissan N. Am., Inc. Litig.,* 122 F.4th 239, 254 (6th Cir. 2024). Thus, although judges have latitude, the basic inquiry remains one of admissibility because "***Rule 702 applies whether the trier of fact is a judge or a jury.***" *UGI Sunbury LLC v. A Permanent Easement for 1.7575 Acres*, 949 F.3d 825, 832-33 (3d Cir. 2020) (emphasis added). Notably, "the text of Rule 702 contains no exception to these requirements, so if they are not satisfied, an expert cannot testify before the 'trier of fact.'" *Id*. at 825 (citing Fed. R. Evid. 702).

7

The Court is required to consider only admissible and reliable expert testimony. "Though the 'usual concerns' about shielding a jury from unreliable expert testimony are not present in a bench trial, the Court must not allow expert testimony that fails to meet *Daubert* standards." *Niblock v. Univ. of Ky.*, No. 5:19-394-KKC, 2023 U.S. Dist. LEXIS 130823, at *3 (E.D. Ky. July 28, 2023) citing *Gonzales v. Nat'l Bd. of Med. Exam'rs*, 225 F.3d 620, 635 (6th Cir. 2000).

**D.    Triers of Fact Must Conduct a Track-by-Track Analysis to Determine Co-Authorship, and Plaintiff Cannot Present Untimely Expert Testimony.**
Despite repeatedly mischaracterizing Defendants' *Daubert* motions and pending Rule 11 motion as improper merits briefing, Plaintiff itself spends half its supplement brief arguing the merits. ECF No. 165. Even with these additional pages on top of the expanded summary judgment briefing, Plaintiff still cannot point to any precedent for a blanket declaration of co-authorship over entire catalogs of sound recording created by multiple bands across multiple decades. As Defendants have extensively briefed, the only way to make a finding of co-authorship for a copyrighted work is for the plaintiff to show contemporaneous mutual intent and an independently copyrightable contribution to that ***work***. ECF No. 134, PageID.3824 (citing cases). Plaintiff does not possess this evidence, which is why it is asking the Court to make a co-authorship ruling that has no precedent in copyright law.

Further, even if Plaintiff were correct that it did not need to show an "independently copyrightable contribution" and could simply show that Worrell was

8

involved in "capturing and electronically processing the sounds, and compiling and editing them to make the final sound recording," that still would not alleviate Plaintiff's burden of a track-by-track analysis. ECF No. 165, PageID.5120 citing 1 Nimmer on Copyright § 2.10 (2025). Professor Nimmer (a critic of the independently copyrightable contribution requirement applied in the Sixth Circuit) still states that "a party who claims to be a joint author **must identify with sufficient specificity the details about its own contribution.**" 1 Nimmer on Copyright § 6.07 (emphasis added). The only way to detail a contribution with sufficient specificity is to analyze what a co-author contributed to a specific sound recording. There is no case holding otherwise.

Exner's report and testimony highlight Plaintiff's shortcomings. Her report detailed Worrell's contributions for only 2 of the 264 sound recordings at issue. At oral argument, the Court questioned whether she could offer trial testimony on Worrell's specific contributions to the other recordings. She cannot. Such testimony would be outside her report and prejudicial because Defendants could not question those opinions at deposition.

An expert report must contain "a complete statement **of all opinions** the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B)(i) (emph. added). A party that fails to disclose such information cannot use that evidence at trial "unless the failure was substantially justified or is

9

harmless." Fed. R. Civ. P. 37(c)(1). Failure to disclosure "will be deemed harmless where the opposing party had all the information relevant in its possession and had a full opportunity during the deposition to question about the relevant issue." *Adkins v. Marathon Petro. Co. LP*, 672 F. Supp. 3d 483, 506 (S.D. Ohio 2023) quoting *Jordan v. City of Cleveland*, 464 F.3d 584, 601 n.22 (6th Cir. 2006). Here, Defendants could only depose Dr. Exner regarding Worrell's contributions to two songs. It is impermissible and prejudicial to permit new expert testimony after discovery, *Daubert* motions, and briefing of summary judgment.[3]

Finally, Plaintiff has absurdly requested a multi-stage process that would necessitate an analysis of each individual Work. Plaintiff argues that Worrell is "entitled to summary judgment on liability, leaving the only triable issues for trial to be: (1) the percentage of ownership **for each Sound Recording**, and (2) once those percentages are determined, the accounting of past royalties due to Mr. Worrell." ECF 133, PageID.3462 (emphasis added). But Plaintiff has no admissible expert testimony on Worrell's contributions to 262 of the 264 sound recordings. The Court should grant Defendants' motions to strike Plaintiff's experts.

August 13, 2025

Respectfully submitted:
By: /s/ James P. Allen, Sr.

---

[3] *Al Qari v. Am. S.S. Co.*, No. 21-cv-10650, 2023 U.S. Dist. LEXIS 141427, at *35-36 (E.D. Mich. Aug. 14, 2023) (expert "not permitted to proffer any new or additional opinions" because it's "unfairly prejudicial to permit Plaintiff to present important expert opinion evidence that Defendant has not had an opportunity to explore and test during discovery.").

10

## CERTIFICATE OF SERVICE

I hereby certify that on August 13, 2025, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send notification of such filing to the attorneys of record.

<div align="right">/s/ Peter E. Doyle</div>