# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN

ESTATE OF GEORGE BERNARD
WORRELL, JR.,

    Plaintiff,

vs.

THANG, INC. and
GEORGE CLINTON,

    Defendants.

Case No. 4:22-cv-11009-FKB-DRG
District Judge F. Kay Behm
Magistrate Judge David R. Grand

_____

## PLAINTIFF'S SUPPLEMENTAL BRIEF

_____

I.      **Defendants' Must Show Repudiation of Authorship, Not Ownership.**

At oral argument, the Court inquired as to the import of *Everly v. Everly*, 958 F.3d 442 (6th Cir. 2020). For its affirmative defense based on the statute of limitations, Clinton bears the burden of proof on establishing that he repudiated Worrell's claims prior to the three-year limitations period.[1] As laid out in Plaintiff's Opposition Brief,[2] until the 2020 disavowal of the 1976 Agreement in the New York Action, Defendants were not violating Plaintiff's **ownership** rights, because as the record proves, up to that point in time, all parties operated pursuant to the understanding that the 1976 Agreement had been executed and was the document which governed the parties' relationship. Pursuant thereto, Plaintiff had no ownership interest in the works.[3]

*Everly* holds that repudiation of copyright **ownership** requires knowledge that "the defendant was violating [plaintiff's] rights…by repudiating [the plaintiff's] **ownership** of copyright." 958 F.3d at 450 (quotation omitted, emphasis added).

---

[1] *See Stokes v. Brinor, Inc.*, 683 F. Supp. 3d 713, 719 (N.D. Ohio 2023)(citing *Henry v. Norfolk S. Ry. Co.*, 605 F. App'x 508, 510 (6th Cir. 2015)). He must do so by preponderance of the evidence. *See Garza v. Everly*, 59 F.4th 876, 880 (6th Cir. 2023).

[2] ECF No. 144 at PageId. 4591-95.

[3] As the 1976 Agreement makes clear: "All masters recorded hereunder and all matrices and derivatives manufactured therefrom, together with the performances embodied thereon, shall be entirely and forever the property of Company [Thang, Inc.], free from any claims whatsoever by Artist [Worrell]…" Ex. 5, the 1976 Agreement at ¶ 3. The rights granted by Worrell in this language was necessary for Defendants to enter into record label agreements.

1

"Repudiation in this copyright context resembles the doctrine of adverse possession in real property." *Id.* (quoting 3 Nimmer on Copyright § 12.05[C][1]). "[T]he copyright statute of limitations starts to run *when the plaintiff learns, or should as a reasonable person have learned, that the defendant was violating his rights*, in this case by repudiating [the plaintiff's] ownership of copyright." *Id.* Here, the record is unequivocal; any actions that could have been considered a repudiation of Mr. Worrell's **ownership** interest in the Works between 1976 and Clinton's 2020 Declaration are irrelevant, because such actions would not have been in violation of Plaintiff's rights as everyone understood them to be.[4]

*Everly* makes clear that there is a distinction between co-authorship and co-ownership. While a claim for co-ownership does typically arise from a claim of co-authorship in the usual course, the two are not one-in-the-same. *Id* at 449. The *Everly* Court continued, explaining that express repudiation of **ownership** is not one-in-the-same as repudiation of **authorship**:

> All of these examples, however, concern claims for copyright ownership, which is not at issue in this case, which involves copyright authorship. … [A]n authorship claim will not accrue until the putative author's status **as an author** is expressly repudiated; actions repudiating **ownership** are irrelevant to begin the statute of limitations for an authorship claim because repudiation of ownership is not adverse to the author's claim as such.

---

[4] Further, as explained in Plaintiff's Opposition to Clinton's Motion to Dismiss (ECF 34, Page.ID 222), Mr. Worrell did not sue between the bankruptcy and the New York Action under the 1976 Agreement as Clinton did not acquire rights until 2006 and publicly professed that he did not have any money to pay anyone.

2

*Id.* at 453 (emphasis added). *Everly* went on to stress the act of repudiation of authorship (unlike ownership) must come from the co-author – here, Clinton. *Id.* at 453-4. There is no evidence of this on the record, not even Clinton's self-serving and ambiguous affidavit (see refutation at ECF No. 144, PageID.4589-90, 4594-5).

## II. Until the New York Action, Defendants Intentionally Led Mr. Worrell, Plaintiff and Third Parties to Believe that the 1976 Agreement, Which Covers All Works at Issue, was Binding.

Plaintiff's claims were brought within three years of the first date upon which anyone would have known Defendants were repudiating Plaintiff's rights, which in this case means that Clinton had to first repudiate the 1976 Agreement – because as long as that was in place, Plaintiff understood he was a co-author but had no ownership rights. The record is replete with evidence – uncontested – that Plaintiff consistently believed, and was led to believe, that his ownership rights had been signed away in 1976. What gave Mr. Worrell the right to conduct an audit of Thang, Inc. in 1979?[5] How did Defendants enter into agreements with third-party record labels acknowledging that they could assign Mr. Worrell's rights, including the rights to Mr. Worrell's own *solo* record?[6] What was the basis of Mr. Worrell's lawsuit against Defendants in 1981? Why did Defendants settle lawsuits with Mr.

---

[5] Ex. 8
[6] *See* Ex. 10, 1979 Warner Bros. Records Agreement at ¶ 6; Ex. 11, 1980 Casablanca Agreement at ¶¶ 14.3, 14.6, 14.11, Ex. E (thereto) at p. 1.

3

Worrell in 1982 through what Defendants now, common sense to the wind, claim are "novations" if Clinton already had all the rights to the sound recordings? What was the basis of Mr. Worrell's suit against Defendants in 1984? How did Clinton come to list $150,000.00 in "royalty commissions" owed to Mr. Worrell in his Bankruptcy proceedings?[7] The answer to all is the same, the 1976 Agreement.

With the 1976 Agreement repudiated by Clinton in 2020, Mr. Worrell has established the requite showing of co-authorship and that is the vehicle for his claims of co-ownership. And, for all the same reasons that Mr. Worrell's claim of co-ownership has not been repudiated, Mr. Worrell's claim of co-authorship was not previously repudiated. Indeed, far from repudiating, or in any meaningful way minimizing, Mr. Worrell's authorship contributions, Clinton's filings, credits received and expert testimony actually bolster Worrell's claims for authorship. Clinton acknowledged that, "Clinton and Worrell, retained joint authorship of the compositions embodied on the sounds recordings…" (ECF No. 81, pg. 2). Further, Clinton acknowledged that Mr. Worrell retained authorship – at least to his solo album – by stating he should be able to "get that record back in copyright recapture" (attached Ex. 1, Clinton Depo. 39:10-24), a right only afforded to authors *see* 17 U.S.C. §§ 203, 304.

---

[7] ECF 162-3 at PageID 5082.

The record indisputably proves that Defendants did not disavow the 1976 Agreement until Clinton filed his declaration in 2020.[8] In this unusual factual situation, the somewhat analogous facts of *Everly* support Plaintiff, where the Court held:

> However, accepting Phil's version of the facts about the nature of the 1980 Release, it is possible that the right to receive public credit (in addition to simply financial compensation) was included in the bundle of rights that he voluntarily transferred to Don to settle other copyright disputes. In this unusual situation in which Phil has introduced a plausible alternative explanation for Don's actions, Don's receiving sole credit would not be adverse to Phil's claim of authorship. Just as a tenant cannot adversely possess an owner's property, Don could not have repudiated Phil's authorship if he took credit for the work pursuant to Phil's voluntary grant of the right to do so.

Clinton should not be able to both repudiate the contract and then say it is too late for Worrell to make his co-ownership claim. Unlike *Everly* (on remand, 536 F.Supp.2d 276, 283-4), all evidence supports Worrell's refutation of this affirmative defense, as well as the fact that estoppel bars Clinton's attempt to play "gotcha." (See ECF No. 83, PageID.963). At a minimum, it is an issue of fact.

                                                   */s/ Daniel D. Quick*
                                                   Daniel D. Quick (P48109)
                                                   *Attorneys for Plaintiff*

Dated: August 27, 2025

---

[8] And, as further detailed in Plaintiff's Response in Opposition to Defendants' Motion For Sanctions, the 1976 Agreement was not merely prospective as it codifies the earlier understanding that Mr. Worrell "was a part of Thang" and as such, provides royalties for "derivatives of Artist's performances sold", language which is plainly not limited to derivatives of Artist's performances sold *after* the agreement. ECF 133-6 at PageID#3646-48.

5

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 27, 2025, the foregoing document was electronically filed with the Clerk of the Court using the ECF System, which will send notification of such filing upon all registered counsel, and serve same.

                                              By: */s/ Nancy Cohen*
                                              Legal Secretary, Dickinson Wright PLLC

4906-5646-78113[101112-1]