# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

ESTATE OF GEORGE BERNARD
WORRELL, JR.,

        Plaintiff,

v.

THANG, INC., and GEORGE
CLINTON,

        Defendants.

Case No. 4:22-cv-11009

District Judge F. Kay Behm

Magistrate Judge David R. Grand

_____/

## DEFENDANTS' SUPPLEMENTAL SUMMARY JUDGMENT BRIEF

## ISSUES PRESENTED

During the August 20, 2025 hearing on the parties' summary judgment motions, the Court authorized five pages of supplemental briefing on any issues raised in oral argument. Defendants' brief presents the following questions and attaches the slides used at the hearing:

1. Was Worrell's status as co-author repudiated no later than 1976, where the "1976 Agreement" stated that Thang (not Worrell) owned the sound recordings, and Worrell consented to Defendants' ownership?

   Defendants answer: Yes.

2. Is Plaintiff barred from asserting equitable tolling in response to Defendants' motion for summary judgment where Plaintiff failed to plead the requisite elements or allege any facts that could toll a copyright claim and Plaintiff's oral argument failed to address this shortcoming?

   Defendants answer: Yes.

3. Is there any material factual dispute that the "1976 Agreement" is only prospective where the plain language of the document states the agreement is "commencing on the date hereof"?

   Defendants answer: No.

4. Is Plaintiff's new request for a declaration that Worrell is a 50% owner of each of the 264 sound recordings improper and violative of due process because it directly contradicts Plaintiff's relief requested in its Motion?

   Defendants answer: Yes.

5. Does *Siegel v. Time Warner*, a case involving joint authorship over a single comic strip, provide any support to Plaintiff's unprecedented copyright claims, where the *Siegel* court did not even make a ruling on joint authorship because it could not determine whether the alleged contributions were independently copyrightable?

   Defendants answer: No.

## <u>MOST CONTROLLING AUTHORITY</u>

- *Ritchie v. Williams*, 395 F.3d 283 (6th Cir. 2005)

- *Everly v. Everly*, 958 F.3d 442 (6th Cir. 2020)

- *Garza v. Everly*, 59 F.4th 876 (6th Cir. 2023)

- *Campbell v. Upjohn Co.*, 676 F.2d 1122 (6th Cir. 1982)

**1. *Plaintiff's Use of the 1976 Agreement as Copyright Repudiation Was Exposed at the Hearing – That Document Confirms Worrell's Acknowledgement That Repudiation Had occurred.***

The Court expressed frustration with the concept of "self-repudiation." It is better understood as demonstrated acknowledgment by a putative co-author that they are not a co-author. Regardless, it is sufficient to trigger the running of the statute of limitations. In the copyright co-author context, "the statutory period for any action to establish ownership begins to run whenever there is a 'plain and express repudiation' of ownership by one party as against the other." *Ritchie v. Williams*, 395 F.3d 283, 288 n.5 (6th Cir. 2005). The 1976 "Agreement" provided that Thang, ***not*** Worrell, owned the Sound Recordings. Plaintiff **admits** that Worrell consented to non-ownership of the Works: "Regardless, the Plaintiff's theory is that while the 1976 Agreement was in place (and adhered to), ***Mr. Worrell consented to Clinton's ownership of the Sound Recordings*** as part of the bargained-for consideration." ECF 153, PageID.4908 (emphasis added) (*See also* **Ex. 1**, PowerPoint at 6).

That concession ends the case. Once Clinton asserted that he was the sole owner of the Works ***and Worrell agreed with that statement***, Worrell's status as co-author was repudiated, and the limitations period began to run no later than 1976. Plaintiff seeks reset of the limitations period when Clinton allegedly "repudiated" the 1976 document in 2019, but that finds no support in the law. In the Sixth Circuit, as everywhere else, co-ownership claims accrue once and once only: "Such a claim

accrues *only once*, at the time of repudiation." *Garza v. Everly*, 59 F.4th 876, 880

(6th Cir. 2023) (internal quotes and cites omitted, emphasis added).

### 2. The Hearing Made Clear: Plaintiff can't use equitable tolling.

To avoid its concession, Plaintiff mud-slings, repeatedly accusing Clinton of

inequitable conduct and/or "fraud" concerning the "1976 Agreement." This was

Plaintiff's sole focus at hearing. Defendants disagree with these allegations and have

rebutted them. What's important now, however, is for the Court to recognize the low-

hanging fruit for summary judgment. Even if Plaintiff were ***factually*** justified in

these charges, they don't toll the running of the statute of limitations because such

tolling has a strict legal framework that Plaintiff hasn't invoked and can't meet. And

the recent hearing confirmed this when Plaintiff's counsel avoided any mention of

Defendants' careful recitation of the exacting standards for equitable tolling, much

less how Plaintiff could possibly meet them. This is the weak link in Plaintiff's

argument – even if it is right ***factually***, that does not ***legally*** toll the statute of

limitations, and the rebuttal is nonexistent.

When Plaintiff invoked its theory in response to Summary Judgment,

Defendants' Reply cited considerable authority it could only be recognized as a sort

of equitable tolling. *See* ECF 152, PageID.4893-94. We explained, "Three elements

must be pleaded … to establish fraudulent concealment: (1) wrongful concealment

of their actions by the defendants; (2) failure of plaintiff to discover the operative

facts that are the basis of his cause of action within the limitations period; and (3) plaintiff's due diligence until discovery of the facts." *Id*. at 4893 n.2 (citing *Campbell v. Upjohn*, 676 F.2d 1122, 1126 (6th Cir. 1982)). The circumstances giving rise to such tolling must be pled "with particularity." *Id*. Tolling can be based only on "egregious" misconduct, and reliance must be reasonable with "due diligence." Relying on an unsigned document, in the face of multiple lawsuits, while constantly complaining that one is not getting royalties, and faulting a counterparty for pointing out that the document is unexecuted could *never* meet this test, even if pled.[1] But, it was never pled, much less with particularity. At hearing, Plaintiff forewent an opportunity to even try to rebut the Reply's analysis. Any rejoinder is now waived.[2]

### 3. Plaintiff has no argument as to pre-1976 Sound Recordings.

Plaintiff has no non-frivolous argument that could save its claims for the pre-1976 Works from being time-barred. Its argument – repeated at hearing – is pure

---

[1] The Court asked about the subject matter of the 1984 litigation between Worrell and Clinton (*See* Defendants' Motion Ex. E, ECF 134-6). That complaint demanded payment "for services performed by Worrell at the special request of defendants … as recording artist, co-producer, session leader, writer/composer/arranger and entertainer." *Id.* at PageID.4156. He also demanded an accounting of record sales to determine the exact amount owed under the 1982 Novation. *Id.* at PageID.4158.

[2] Further, alleged actions leading Worrell to believe the 1976 Agreement was valid couldn't possibly represent the kind of fraud **that could toll a copyright claim**. Tolling a copyright claim involves misleading the plaintiff into believing that he owned the copyrights and thus there was no reason to sue for co-authorship. That's not alleged here. Worrell alleges that Clinton led him to believe **Worrell had no co-authorship rights** because the contract was valid. There may be circumstances in which those allegations might have tolled a **contract** claim, but they could never toll a **copyright** claim. The point is fatal to Plaintiff's entire theory.

assertion: "nothing in the plain language of the 1976 Agreement clearly and expressly limits its application to being *only* prospective." ECF 162, PageID.5047 (emphasis original). That is demonstrably false. The document recites that it was "made and entered into as of the 1st day of January, 1976" (ECF 133-6, PageID.3643) and that its terms apply for "a period of one (1) year ***commencing on the date hereof***," subject to renewal. *Id*. The document operates prospectively only.

### 4. Plaintiff's Claim for 50% Ownership is Procedurally Defaulted/Improper.

Defendants repeatedly pointed out that Plaintiff sought a declaration Worrell was a co-author of 264 Sound Recordings followed by proceedings to set percentage of ownership. Plaintiff's own Motion demands "summary judgment on liability, leaving the only triable issues for trial to be: (1) the percentage of ownership for each Sound Recording…" ECF 133, PageID.3462. But, at the hearing, Plaintiff's counsel for the first time argued co-authorship creates a tenancy-in-common and the Court should, in one fell swoop, declare Worrell across-the-board to be a 50% owner of 264 Works at issue. This is: i) procedurally improper; ii) factually unavailing; and iii) violative of due process. It is procedurally improper because it alters the relief sought in Plaintiff's motion for summary judgment. It is factually and legally unavailing because copyright law doesn't simply award co-authors 50% rights, and here there are multiple songs on which Worrell played absolutely no role whatsoever.

4

It violates due process because it seeks relief without giving Defendants a chance to file formal, full, written opposition papers and statements of disputed, material facts.

### 5. Siegel *is not an example of oeuvre-wide co-authorship analysis.*

During oral argument, Plaintiff - for the first time - cited *Siegel v. Time Warner Inc.*, 496 F. Supp.2d 1111 (C.D. Cal. 2007) (Ex. 2), as a purported example of a court awarding joint authorship across a collection of works without individually assessing each work. Plaintiff's description is wrong in every respect. The case involved the two creators of Superman and a dispute over the "Superboy" character. In 1944, the publisher issued a "five-page comic strip" illustrated by Shuster that was allegedly based on Siegel's previously-rejected Superboy pitches.

The joint authorship analysis didn't involve a collection of works; it focused solely on the 1944 comic strip and whether Siegel's prior pitch "submissions were contributions to a joint work with Shuster." *Id*. at 1144. Stunningly, **there was no joint authorship finding.** The court needed supplemental briefing to first determine whether Siegel's submissions were independently copyrightable, "otherwise that material could not have formed a predicate contribution to render Superboy a joint work." *Id*. at 1149. Thus, the case does **nothing** to advance Plaintiff's unprecedented copyright theory. Rather, it exemplifies the granular analysis of identifiable copyrightable contributions to a single joint work that is fatal to Plaintiff's claims.

|  |  |
|---|---|
|  | Respectfully submitted: |
| August 27, 2025 | By: /s/ James P. Allen, Sr. |

## CERTIFICATE OF SERVICE

I hereby certify that on August 27, 2025, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send notification of such filing to the attorneys of record.

/s/ Veronica Sanford